**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MIGUEL GARCIA,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | **JURY TRIAL DEMANDED** |
| **WIND CREEK BETHLEHEM LLC** | : | |
| **d/b/a WIND CREEK BETLEHEM,** | : | |
| | : | |
| **&** | : | |
| | : | |
| **KENT JENKINS, individually and** | : | |
| **in his capacity as Wind Creek** | : | |
| **Surveillance Operator,** | : | |
| | : | |
| **&** | : | |
| | : | |
| **JOHN DOE SECURITY OFFICERS** | : | |
| **1-10 individually and as Security** | : | |
| **Officers for Wind Creek Bethlehem,** | : | |
| | : | |
| **&** | : | |
| | : | |
| **TPR. JOHNNY RODRIGUEZ,** | : | |
| | : | |
| **&** | : | |
| | : | |
| **COL. ROBERT EVANCHICK,** | : | |
| | : | |
| **Defendants.** | : | |

**COMPLAINT**

AND NOW comes Plaintiff Miguel Garcia, by and through his undersigned counsel, and

files this Complaint.  In support thereof, Plaintiff avers as follows:

**Parties**

1.      Plaintiff Miguel Garcia is a citizen of the United States and a resident of Totowa, Passaic

County, NJ.  In said County, he resides at: 190 Union Blvd., Totowa, NJ, 07512.

2.      Plaintiff Miguel Garcia is an adult individual of Hispanic Descent.  He was born in Houston, TX and is of Mexican nationality.

3.      Defendant Wind Creek Bethlehem LLC d/b/a Wind Creek Bethlehem ("Wind Creek") is a limited liability corporation organized under the laws of the Commonwealth of Pennsylvania, with its principal place of business being located at 77 Wind Creek Blvd, Bethlehem, Northampton County, PA 18015.  Wind Creek is registered to do business and does conduct business in the State of Pennsylvania.

4.      At its premises located at 77 Wind Creek Blvd, Wind Creek operates and/or oversees, amongst other things, a casino.   On its website, Wind Creek markets that their "casino offers over 150 table games, state-of-the-art slot machines, live dealer stadium gaming and more."

5.      Defendant Kent Jenkins ("Jenkins") is identified, in a General Offense Report prepared by the Pennsylvania State Police ("PSP"), as a Wind Creek Surveillance Operator. Per the PSP report, Jenkins was responsible for reviewing and providing (to PSP) the subject matter surveillance footage and information which falsely implicated Plaintiff as a criminal and/or wrongdoer.

6.      In addition to acting as an employee and/or contractor and/or agent for Wind Creek, Jenkins is also being sued in his individual capacity for engaging in illegal and unconstitutional activities including false arrest, false imprisonment, discrimination and violation of civil rights as guaranteed under the 4th and 14th Amendments of the Constitution of the United States and Article I, §8 of the Commonwealth of Pennsylvania.

7.      Defendant(s) John Doe Security Officers 1-10 individually and as security officers for Wind Creek Bethlehem ("Casino Security") are individuals who work security at the casino.

8.     At all times material hereto, Casino Security, amongst other things, was (a) responsible to investigate the identity of individuals entering the casino; (b) conduct and/or overlook video surveillance of activities on the casino floor; and (c) interact with individuals recreating or doing otherwise on the casino floor.

9.     The exact employment relationship, working capacities and specific identities of Casino Security is known only to Wind Creek and may only be obtained by Plaintiff through initial disclosure and/or discovery practice.

10.    Wind Creek, Jenkins and Casino Security shall be collectively referred to as the "Casino Defendants" herein.

11.    Defendant Trooper Johnny Rodriguez ("Rodriguez") is a state police trooper with the Pennsylvania State Police ("PSP").

12.    At all times material hereto, Defendant Rodriguez was acting under color of state law. His assigned affiant identification and badge number(s) were: 533520/08832 (PSP/MPOETC).

13.    Defendant Rodriguez is being sued both in his individual and official capacity.

14.    Defendant Rodriguez is being sued in his individual capacity for engaging in unlawful and unconstitutional activities including abuse of authority, malicious prosecution (which lead to the false arrest and false imprisonment of Plaintiff) and discrimination.  Ultimately, these wrongdoings resulted in violating Mr. Garcia's civil rights as guaranteed to him under the 4th and 14th Amendments of the Constitution of the United States and Article I, §8 of the Commonwealth of Pennsylvania.

15.    Defendant Colonel Robert Evanchick ("Evanchick") is the Commissioner of the PSP.

16.    At all times material hereto, Evanchick was the Commissioner of the PSP.

17.     At all times material hereto, Evanchick was acting within the scope of his employment and under color of state law.

18.     On 5/1/17, Major George L. Bivens, Director for the Bureau Gaming Enforcement of the PSP ("Bivens"), testified before the House Gaming Oversight Committee.  At said time, Bivens testified, in relevant part, that "[s]*ince the first casinos opened in 2006, the Pennsylvania State Police (PSP) has been providing law enforcement services at each of the casino locations across the Commonwealth*."  At all times material hereto, PSP was providing law enforcement services to Wind Creek.

19.     At all times material hereto, Evanchick was charged with the duty to supervise, manage and control PSP troopers, like Rodriguez, to prevent the violation of the civil rights of its citizens

20.      At all times material hereto, Evanchick was charged with the duty to train, educate and correct misconduct of PSP troopers, like Rodriguez, to prevent the violation of the civil rights of its citizens.

21.     Rodriguez and Evanchick shall be collectively referred to as "PSP Defendants" herein.

22.     Wind Creek, Casino Security, Rodriguez and Evanchick shall be collectively referred to as "Defendants" herein.

**Jurisdiction and Venue**

*Original Jurisdiction*

23.     This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331, 1334(1), (2), (3), (4) in that it raises questions of federal law, pursuant to the United States Constitution and other federal laws governing civil rights, including 42 U.S.C. §§ 1983 and 1988.

24.     This Court has supplemental jurisdiction over the related common-law and state-law claims raised pursuant to 28 U.S.C. §1367.

25.     Venue is proper pursuant to 28 U.S.C. §1391 in so far as the following alleged unlawful conduct that forms the factual and legal bases of this Complaint occurred within the geographical limits of this District.

*Diversity*

26.     Plaintiff is resident of New Jersey.

27.     Defendants are residents of Pennsylvania.

28.     Given the nature of his injuries and damages, Plaintiff seeks to recover an amount in excess of $150,000.00 as set forth in his claims (counts) below.

29.     This Court has jurisdiction pursuant to 28 U.S.C. §1332(a)(1) which, in relevant part, provides that "…(a) [t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between (1) citizens of different States."

30.     Venue is proper in this judicial district under 28 U.S.C. §1391(b)(1).

**Factual Allegations**

31.     Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Complaint as if fully set forth herein.

32.     At all times material hereto, Plaintiff was employed by Lohman Therapy Systems ("LTS") which is located in West Caldwell, NJ.

33.     At all times material hereto, Plaintiff was a loyal patron of the Wind Creek Casino.

34.     At all times material hereto, Plaintiff was registered at the casino as a Wind Creek Rewards Member (Reward# 5751008484986).

35.     At all times material hereto, the Casino Defendants had knowledge that Plaintiff was a

loyal patron and Wind Creek Rewards Member considering (a) he was registered with their

casino; and (b) the rewards which Wind Creek had awarded him given his patronage and play.

*10/3/20 visit to Wind Creek*

36.     On 10/3/20, in the early morning (approximately 12:21am), Plaintiff entered the Wind

Creek casino.

37.     Plaintiff entered the casino from his customary entry point, the entrance closest to the

parking deck.  This entrance is commonly referred to as the "Bus Entrance" by the Casino

Defendants.

38.     Upon entry to the casino from the Bus Entrance, Plaintiff waited in line so Casino

Security could verify his identification by checking his driver's license.

39.     While waiting in line, certain other male individuals who were situated in front of

Plaintiff appeared to be Hispanic in nature just like Mr. Garcia.  These individuals shall be

referred to as the "Hispanic Males" herein.

40.     At all times material hereto, Plaintiff Miguel Garcia neither knew nor recognized the

Hispanic Males in any way whatsoever.

41.     After the Hispanic Males were verified and afforded entry, Plaintiff provided his driver's

license to Casino Security for inspection and verification.  Plaintiff's identification was

inspected/verified and thereafter, Mr. Garcia was permitted entry onto the casino floor by Casino

Security.  Nothing seemed unusual to Plaintiff; everything appeared customary just like every

other visit Mr. Garcia had taken to the Wind Creek Casino.

42.     Thereafter, Plaintiff began recreating by playing the slot machines; just like any other

visit Mr. Garcia had experienced as a Wind Creek Rewards Member.

- 6 -

43.     On that particular visit (10/3/20), Plaintiff recreated in the casino for approximately 3 hours.

44.     Unbeknownst to Mr. Garcia, one of the Hispanic Males stole another casino patron's wallet.  That patron was later identified as Stephen Saganowich, III ("Saganowich").  According to the PSP's General Offense Report (authored by Defendant Rodriguez), Saganowich indicated that the contents of his stolen wallet included "…a few credit/debit cards, PA driver's license and $470.00 in cash…"

45.     Have not committed any wrongdoing, Mr. Garcia was wholly unaware that the Casino Defendants had falsely identified and falsely accused him of being the perpetrator who stole the subject matter wallet.

46.     At all times material hereto, a reasonable and thorough investigation of the casino surveillance by any of the Defendants, including Rodriguez, would have revealed that Mr. Garcia had not committed any wrongdoing on that particular evening (10/3/20).

47.     All Defendants discriminated against Mr. Garcia, based on his race and/or color and/or national origin, by clustering him with the Hispanic Males, the actual thieves who stole and/or conspired to steal the subject matter wallet.

48.     All Defendants discriminated against Mr. Garcia, based on his race and/or color and/or national origin, by not conducting a reasonable and/or thorough review of the casino's surveillance footage.

49.     Based on the foregoing, the Casino Defendants formulated a false report regarding Mr. Garcia which they titled "Incident File Full Report" and which shall be referred to as the "False Incident Report" herein.

50.     Subsequent to formulating the False Incident Report, the Casino Defendants conveyed the false accusations and false information relating Mr. Garcia to the following individuals: (a) Defendant Rodriguez; and (b) Michelle Martinez, a Pennsylvania Gaming Control Board Agent.

51.     According to his General Offense Report, Rodriguez interviewed Jenkins from Wind Creek who conveyed the false accusations regarding Mr. Garcia, *i.e.* that Plaintiff was the thief who stole the subject matter wallet from an unoccupied chair at the slots parlor.

*Malicious Prosecution - 12/10/20 Plaintiff Charged with Crime*

52.     On 12/10/20, Defendant Rodriguez, via sworn affidavit, falsely charged Mr. Garcia with the following crime: theft of property lost, mislaid, or delivered by mistake pursuant to §18 C.S.A. 3924 of the Pennsylvania crimes code.

53.     Defendant Rodriguez charged Mr. Garcia despite never investigating and/or reviewing the actual surveillance footage.

54.     In his Affidavit of Probable Cause, Defendant Rodriguez falsely alleged that Wind Creek Casino surveillance identified Mr. Garcia as the perpetrator based by identification which Plaintiff provided while entering the casino.

55.     In his Affidavit of Probable Cause, Defendant Rodriguez falsely alleged that after Mr. Garcia stole the victim's wallet and quickly exited the casino.

56.     At all times material hereto, there was <u>no</u> probable cause to charge Plaintiff for theft of property (§18 C.S.A. 3924).  Rodriguez, knew or should have known, through the exercise of reasonable caution that no reasonable basis existed for the aforementioned criminal charge (§18 C.S.A. 3924) to be brought against Mr. Garcia.

57.     At all times material hereto, Rodriguez's Affidavit of Probable Cause lacked probable cause to charge Plaintiff with theft of property (§18 C.S.A. 3924).

- 8 -

58.     At all times material hereto, Defendant Rodriguez failed to include exculpatory evidence in his Affidavit of Probable Cause, including but not limited to (a) Mr. Garcia's emphatic pleas to David (member of Casino Security) that the casino had misidentified him and/or (b) the accurate depiction of the subject matter surveillance as is more fully set forth below.

59.     At the time of formulating his General Offense Report and/or Affidavit of Probable Cause and/or Criminal Complaint, Defendant Rodriguez had access to the subject matter surveillance to determine whether there was actual probable cause to charge Plaintiff with theft of property (§18 C.S.A. 3924).  In fact, had any of the Defendants, including Rodriguez, conducted even a cursory review of the subject matter surveillance they would have expeditiously and definitely determined that (a) Mr. Garcia had committed zero wrongdoing; and (b) that the true perpetrator of the crime was one of the Hispanic Males who conspired with another.

60.     Defendant Rodriguez included utterly false information in his Affidavit of Probable Cause including but not limited to (a) [c]asino surveillance was able to identify the defendant [Mr. Garcia] by the identification he provided upon entering the casino; and (b) [a]fter the defendant [Mr. Garcia] took the wallet from the slot machine chair the victim was gaming on, he [Mr. Garcia] quickly exited the casino.

61.     Moreover, Defendant Rodriguez, who is identified as a PSP Bureau of Gaming Enforcement Trooper, specializes in investigating criminal activity at the Wind Creek Casino. As such, Defendant Rodriguez knew, or should have known that there was no probable cause to charge Mr. Garcia with theft of property (§18 C.S.A. 3924).

62.     In light of Defendants being in immediate possession of exonerating evidence (surveillance footage), Plaintiff believes and therefore avers that the Casino Defendants and

Defendant Rodriguez conspired against Mr. Garcia to discriminate, maliciously prosecute, falsely arrest and falsely imprison him without any probable cause.

*1/21/21 Preliminary Hearing*

63.     Plaintiff never received notice that a Preliminary Hearing had been scheduled for 1/21/21 to address the false criminal charge which had been asserted against him by Defendants.

64.     Plaintiff had no idea that any criminal proceeding had been initiated against him since he had never committed any wrongdoing.

65.     It is believed that Notice of this 1/21/21 Preliminary Hearing had been incorrectly mailed to Plaintiff's old mailing address.

66.     Having no notice of alleged wrongdoing and/or actual notice of the scheduled hearing, Mr. Garcia did not appear for the 1/21/21 Hearing.

67.     As a result of his absence, a bench warrant was issued against Mr. Garcia.

*2/14/21 Visit to Wind Creek*

68.     On 2/14/21, unaware of the false criminal charges as well as the bench warrant issued against him, Mr. Garcia went to the Wind Creek casino to recreate as usual.

69.     On that night, Mr. Garcia customarily entered the casino by first going through the security podium at the Bus Entrance and then proceeded to begin recreating at a slot machine area.  He placed his Wind Creek Rewards Member Card into the slot machine and began to play.

70.     Approximately 20 minutes into Mr. Garcia playing the slot machine, he was confronted by one of the Wind Creek's Casino Security guards.  This certain member of Casino Security wore a badge with the name "David Supervisor Security" prescribed therein.  Said badge also had the following number "47633" inscribed therein.  The specific identity (first, last name) of

this member of Casino Security and the significance of the number is currently unknown to Plaintiff. This individual shall be referred to as "David" herein.

71.     Upon confrontation, David indicated to Mr. Garcia that he had been previously evicted from Wind Creek for stealing another patron's wallet during one of his previous casino visits. In a feeble attempt to support his false accusations, David showed Mr. Garcia an image (photo) of the alleged wrongdoer who was, unequivocally, one of the Hispanic Males; not Mr. Garcia. In fact, a mere glance of said image showed that the true perpetrator was one of the Hispanic Males and not Mr. Garcia. David discriminated Mr. Garcia by clustering him as one of the Hispanic Males (the actual wrongdoers) based upon his race and/or color and/or national origin.

72.     Plaintiff exhaustively tried to explain to David that he had never done anything wrong at Wind Creek. Mr. Garcia emphatically stated to David that "Wind Creek had identified the wrong guy!" To make matters worse, Mr. Garcia even asked David to simply look at the image in his hands which clearly was not Mr. Garcia, rather, it unequivocally showed one of the Hispanic Males.

73.     At all times material hereto, David, as well as other Casino Security, utterly disregarded and showed deliberate indifference to Mr. Garcia's pleas for the truth.

74.     At all times material hereto, David as well as other Casino Security discriminated against Mr. Garcia by clustering him as one of the Hispanic Males (the actual wrongdoers), based upon his race and/or color and/or national origin, and characterized him as a thief.

75.     Seeing that attempts to reason with Casino Security were futile and that he was being discriminated, Mr. Garcia stepped out of the Casino to voluntarily contact the Bethlehem Police Department ("BPD") so he could explain to them that he was being falsely accused of theft.

76.     BPD responded to the casino. Initially, BPD officers went into the casino to be briefed by Casino Security.

77.     Casino Security conveyed false information to the BPD relating to Mr. Garcia, including but not limited to him being a thief and that he should be arrested.

78.     The BPD returned to Mr. Garcia to be inform him that he was being placed under arrest due to an outstanding bench warrant from the 1/21 Hearing relating to theft charges which had been falsely asserted against him by Wind Creek and through Rodriguez of the PSP.

79.     Officers Brailo, Heaton and Holschwander of the BPD, working in conjunction, placed Mr. Garcia under arrest and transported him to the BPD facility.

*False Arrest, Unlawful Detainment & False Imprisonment*

80.     After being falsely arrested, Mr. Garcia was placed in a holding cell at the Bethlehem Police Department from 8:30pm to 11:00pm while he awaited for further false imprisonment; he was waiting for a deputy from the Northampton County Sheriff to transport him to Northampton County Prison.

81.     On that same evening, Mr. Garcia was transferred to Northampton County Prison by the Sheriff's Department so he could commence a further period of false imprisonment.

82.     Mr. Garcia was wrongfully imprisoned in Northampton County Prison from 2/14/21 to 2/16/21 for a total of THREE (3) days.

83.     At all times material hereto, Plaintiff was unlawfully detained without justification.

84.     At all times material hereto, Plaintiff was unlawfully imprisoned without justification.

*Criminal Charges against Mr. Garcia are Dropped*

85.     After a diligent investigation of the surveillance footage and photographs by the District

Attorney, Mr. Garcia was fully exonerated of the criminal charge(s) against him which had been

falsely asserted against him by the Defendants.

86.     On 4/23/21, Northampton County Assistant District Attorney Patricia Turzyn ("ADA

Turzyn") was authorized to agree to a *Nolle Prosequi* as to Mr. Garcia's false criminal charge.

87.     On 4/27/21, the *Nolle Prosequi* was entered onto the criminal docket and the action was

formally discontinued against Mr. Garcia.

88.     The *Nolle Prosequi* reflects "mis-identification" as its basis.

*Subject Matter Surveillance*

89.     At all times material hereto, all Defendants failed to reasonably and/or properly review

the Subject Matter Surveillance which would have expeditiously exonerated Mr. Garcia from

any wrongdoing.

90.     According to documents provided by the Northampton County District Attorney's office,

the Subject Matter Surveillance, used to charge Mr. Garcia, was in the control and maintenance

of (a) the Casino Defendants; and (b) the PSP (through Rodriguez).

91.     The Subject Matter Surveillance from the underling date of incident (10/3/20) reveals, in

relevant part, that:

       a.  21:39 (12:21 am) - the actual thief (one of the Hispanic Males) entered the
casino at on or about 21:39 (12:21 am); mere moments before Mr. Garcia and
within the vantage point from the Bus Entrance's security podium;

       b.  26:57 (12:26 am) – Mr. Garcia went to play slot machines separately and
distinctly from the Hispanic Males and Saganowich;

       c.  26:57 (12:26 am) - 39:26 (12:39am) – the actual thief (one of the Hispanic
Males) is in direct proximity to the victim (Saganowich).  In the same
surveillance vantage point, Mr. Garcia is seated separately and distinctly while
continuing to play his slot machine;

d. 39:00 (12:39 am) - the victim (Saganowich) departs the slot machine area but leaves his wallet behind.  In the same surveillance vantage point, Mr. Garcia is seated separately and distinctly while continuing to play his slot machine;

e. 39:26 (12:39am) – the actual thief (one of the Hispanic Males) begins casing the victim's wallet which now is laying on an unoccupied slot-machine chair and.  In the surveillance same vantage point, Mr. Garcia is seated separately and distinctly while continuing to play his slot machine;

f. 39:26 (12:39am) – the actual thief (one of the Hispanic Males) steals the wallet.  In the same surveillance vantage point, Mr. Garcia is seated separately and distinctly while continuing to play his slot machine;

g. 39:42 (12:39 am) -  the actual thief (one of the Hispanic Males) leaves the slot parlor area in possession of victim's wallet.  In the same surveillance vantage point, Mr. Garcia is seated separately and distinctly while continuing to play his slot machine; and

h. 45:12 (12:45 am) – in a different area of the casino floor, the actual thief (one of the Hispanic Males) uses a voucher from the victim's wallet to participate in a game of chance.  Mr. Garcia is nowhere to be seen in this surveillance vantage point.

92.    Had any of the Defendants even conducted a cursory review of the subject matter surveillance, they would have immediately determined that Mr. Garcia had not committed any wrongdoing whatsoever.

93.    However, the Defendants did not conduct a reasonable investigation, rather, they discriminated Mr. Garcia by clustering him as one the Hispanic Males (the actual thieves) and labeled him a thief.

*Damage of Reputation & Lost Wages*

94.    Upon being release from Northampton County Prison, Mr. Garcia, an engineer, was compelled to inform his employer (LTS) that he had been falsely arrested and falsely imprisoned and that he was being malicious prosecuted for a crime which he never committed.

95.    During the pendency of the malicious prosecution initiated against him, the shift manager ("Manager") became aware of the foregoing.  In doing so, the Manager began to refer to Mr.

Garcia as the "criminal" openly in the workplace.  In publicly referring to Mr. Garcia, the Manager would make comments like: "Hey Criminal, come over here" around Mr. Garcia's co-workers in the workplace.

96.     Said comments had such a damning effect to Mr. Garcia's reputation in the workplace that he was compelled to transfer from second shift (2:20pm – 10:20pm) to third shift (10:20pm – 6:20am).

97.     Prior to the incidents which form the subject matter of this lawsuit, Mr. Garcia's reputation at LTS was impeccable.  Without any doing of his own, rather, by the collective wrongdoing of the Defendants, Mr. Garcia's workplace reputation became irreparably damaged and he suffered humiliation and embarrassment as a result thereof.

98.     As a result of the malicious prosecution, false arrest and false imprisonment, Mr. Garcia was compelled to miss five (5) days at work.

## COUNT I

## [PLAINTIFF v. ALL DEFENDANTS]

## VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS, SPECIFICALLY, 42 U.S.C. §1983 AND THE FOURTH AMENDMENT TO THE U.S. CONSTITUTION

## <u>MALICIOIUS PROSECUTION</u>

99.     Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Complaint as if fully set forth herein.

100.    Plaintiff claims and seeks recovery of damages for the injuries set forth herein under 42 U.S.C. §1983 against Defendants for violations of Plaintiff's constitutional rights under color of law.

101.    At all times relevant hereto, pursuant to 42 U.S.C. §1983 and the Fourth Amendment to the United States Constitution, Plaintiff had the right to be free from prosecution without probable cause.

102.    As averred above, Defendant Rodriguez was an active member of the PSP and acting under the color of state law.

103.    As averred above, at all times material hereto, PSP was providing law enforcement services to Wind Creek.

104.    As factually alleged above, Defendant Rodriguez intentionally charged Mr. Garcia without probable cause.

105.    As factually alleged above, Defendant Rodriguez initiated the unjustified prosecution of the Plaintiff.

106.    As factually alleged above, Defendant Rodriguez knew, or should have known, through the exercise of reasonable caution, that no reasonable basis existed for criminal charges to be brought against Mr. Garcia.

107.    As factually alleged above, Defendant Rodriguez knew, or should have known, through security surveillance footage evidence, which was readily accessible to him as a member of the PSP Bureau of Gaming Enforcement Trooper, that no probable cause existed for prosecution of the Plaintiff.

108.    Charging Mr. Garcia without probable cause constituted malice on the part of Defendant Rodriguez.

109.    The arrest, seizure and subsequent prosecution of the Plaintiff by Defendant Rodriguez constituted a malicious prosecution and was in violation of Mr. Garcia's rights under 42 U.S.C. § 1983 and the Fourth Amendment of the U.S. Constitution.

110.    As more fully set forth below, via separate count, Plaintiff believes and therefore avers, that Defendant Rodriguez and the Casino Defendants conspired against Mr. Garcia to unlawfully arrest, detain and prosecute him without any probable cause because of Plaintiff's race and/or color and/or national origin.

111.    The actions of Jenkins and Casino Security were done within the scope of their employment with and/or in their capacity as representatives and/or agents of Defendant Wind Creek.

112.    The actions of Defendants constituted malicious prosecution in that:

      a.  Defendant Rodriguez initiated criminal proceedings against the Plaintiff without probable cause which was based (i) on the intentional and/or recklessly conveyed information of the Casino Defendants; and (ii) without conducting a reasonable investigation of readily available and accessible exonerating evidence;

      b.   the criminal proceedings ended in the Plaintiff's favor;

      c.  the arrest, seizure and prosecution of the Plaintiff were initiated without probable cause;

      d.  Defendants acted maliciously and/or for the purpose other than brining the Plaintiff to justice; and

      e.  Plaintiff suffered an unlawful seizure of his person in violation of Plaintiff's rights under 42 U.S.C. §1983 and the Fourth Amendment to the U.S. Constitution.

113.    The actions of Defendants, and each of them, were willful, wanton and/or done with a reckless disregard for the rights of Plaintiff, thereby subjecting these Defendants to punitive damages.

114.    As a direct and proximate result of the acts committed and/or perpetrated by Defendants, Plaintiff suffered the following injuries and damages:

      a.  Plaintiff's rights under the Fourth Amendment were violated;

    b.   fright, horror and shock;

    c.   emotional trauma and suffering;

    d.   damage to Plaintiff's reputation;

    e.   economic damages in the form of lost wages; and

    f.   economic damages related to any other consequential cost.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against All Defendants, jointly and severally, in an amount in excess of the $150,000.00 arbitration limit for the United States District Court for the Eastern District of Pennsylvania, together with punitive damages, and other relief, including costs of suit, reasonable attorney and expert fees as well as all such further relief as this Honorable Court deems just and proper.

## COUNT II

## [PLAINTIFF v. ALL DEFENDANTS]

## VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS, SPECIFICALLY, 42 U.S.C. §1983 AND THE FOURTH AMENDMENT TO THE U.S. CONSTITUTION

## <u>FALSE ARREST</u>

115.    Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Complaint as if fully set forth herein.

116.    Plaintiff claims and seeks recovery of damages for the injuries set forth herein under 42 U.S.C. §1983 against Defendants for violations of Plaintiff's constitutional rights under color of law.

117.    At all times relevant hereto, pursuant to 42 U.S.C. §1983 and the Fourth Amendment to the United States Constitution, Plaintiff had the right to be free from unreasonable seizure of his person and free from arrest without probable cause.

118.    As averred above, Defendant Rodriguez was an active member of the PSP and acting under the color of state law.

119.    As averred above, at all times material hereto, PSP was providing law enforcement services to Wind Creek.

120.    As factually alleged above, Defendant Rodriguez intentionally caused Mr. Garcia to be arrested without probable cause.

121.    As factually alleged above, Defendant Rodriguez initiated the unjustified arrest of the Plaintiff.

122.    As factually alleged above, Defendant Rodriguez knew, or should have known, through the exercise of reasonable caution, that no reasonable basis existed for Mr. Garcia to be detained and/or arrested.

123.    As factually alleged above, Defendant Rodriguez knew, or should have known, through security surveillance footage evidence, which was readily accessible to him as a member of the PSP Bureau of Gaming Enforcement Trooper, that no reasonable suspicion existed for Mr. Garcia to be detained and/or arrested.

124.    As factually alleged above, Defendant Rodriguez knew, or should have known, through security surveillance footage evidence, which was readily accessible to him as a member of the PSP Bureau of Gaming Enforcement Trooper, that no reasonable justification existed for Mr. Garcia to be detained and/or arrested.

125.    Causing Mr. Garcia to be detained and/or or arrested without probable cause constituted malice on the part of Defendant Rodriguez.

126.    Causing Mr. Garcia to be detained and/or or arrested without reasonable suspicion constituted malice on the part of Defendant Rodriguez.

127.    Causing Mr. Garcia to be detained and/or or arrested without reasonable justification constituted malice on the part of Defendant Rodriguez.

128.    The arrest, seizure and subsequent prosecution of the Plaintiff by Defendant Rodriguez constituted a false arrest and was in violation of Mr. Garcia's rights under 42 U.S.C. § 1983 and the Fourth Amendment of the U.S. Constitution.

129.    Initiating the unreasonable seizure of Plaintiff's person by Defendant Rodriguez and his subsequent false arrest constituted an unreasonable deprivation of the Plaintiff liberty in violation of the Fourth Amendment.

130.    Defendant Rodriguez, by initiating the Criminal Complaint, caused Mr. Garcia to be arrested without the requisite probable cause to do so.

131.    Defendant Rodriguez by affirming the Criminal Complaint, through his sworn Affidavit of Probable Cause, caused Mr. Garcia to be arrested without the requisite probable cause to do so.

132.    As more fully set forth below, via separate count, Plaintiff believes and therefore avers, that Defendant Rodriguez and the Casino Defendants conspired against Mr. Garcia to unlawfully arrest, detain and prosecute him without any probable cause.

133.    The actions of Jenkins and Casino Security were done within the scope of their employment with and/or in their capacity as representatives and/or agents of Defendant Wind Creek.

134.    The actions of Defendants were willful, wanton and/or done with a reckless disregard for the rights of Plaintiff, thereby subjecting Defendants to punitive damages.

135.    The conduct of the Defendants deprived the Plaintiff of his right to be free from unreasonable and unlawful detention and arrest.

136.    Pursuant to 42 U.S.C. §1983 and the Fourth Amendment to the U.S. Constitution,

Defendants had a duty and/or were required to avoid the use of unlawful detention and arrest

against Mr. Garcia without probable cause.  As factually averred above, Mr. Garcia emphatically

tried to explain to David, a member of Casino Security, that he had been misidentified.

137.    As a direct and proximate result of the acts committed and/or perpetrated by Defendants,

Plaintiff suffered the following injuries and damages:

        a.   Plaintiff's rights under the Fourth Amendment were violated;

        b.   fright, horror and shock;

        c.   emotional trauma and suffering;

        d.   damage to Plaintiff's reputation;

        e.   economic damages in the form of lost wages; and

        f.   economic damages related to any other consequential cost.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment

against All Defendants, jointly and severally, in an amount in excess of the $150,000.00

arbitration limit for the United States District Court for the Eastern District of Pennsylvania,

together with punitive damages, and other relief, including costs of suit, reasonable attorney and

expert fees as well as all such further relief as this Honorable Court deems just and proper.

**COUNT III**

**[PLAINTIFF v. ALL DEFENDANTS]**

**VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS, SPECIFICALLY, 42
U.S.C. §1983 AND THE FOURTH AMENDMENT TO THE U.S. CONSTITUTION**

**<u>FALSE IMPRISONMENT</u>**

138.    Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Complaint as

if fully set forth herein.

139.    The subsequent detainment of Plaintiff pursuant to his false arrest constituted false imprisonment of Mr. Garcia and violated his rights as guaranteed to him by the Fourth Amendment of the U.S. Constitution.

140.    As more fully set forth below, via separate count, Plaintiff believes and therefore avers, that Defendant Rodriguez and the Casino Defendants conspired against Mr. Garcia to unlawfully arrest, detain and prosecute him without any probable cause.

141.    The actions of Jenkins and Casino Security were done within the scope of their employment with and/or in their capacity as representatives and/or agents of Defendant Wind Creek.

142.    The actions of Defendants were willful, wanton and/or done with a reckless disregard for the rights of Plaintiff, thereby subjecting Defendants to punitive damages.

143.    The conduct of the Defendants deprived the Plaintiff of his right to be free from unjustified imprisonment.

144.    As a direct and proximate result of the acts committed and/or perpetrated by Defendants, Plaintiff suffered the following injuries and damages:

      a.  Plaintiff's rights under the Fourth Amendment were violated;

      b.  fright, horror and shock;

      c.  emotional trauma and suffering;

      d.  damage to Plaintiff's reputation;

      e.  economic damages in the form of lost wages; and

      f.  economic damages related to any other consequential cost.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against All Defendants, jointly and severally, in an amount in excess of the $150,000.00

arbitration limit for the United States District Court for the Eastern District of Pennsylvania, together with punitive damages, and other relief, including costs of suit, reasonable attorney and expert fees as well as all such further relief as this Honorable Court deems just and proper.

## COUNT IV

## [PLAINTIFF v. ALL DEFENDANTS]

## VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS, SPECIFICALLY, 42 U.S.C. §1983 AND THE FOURTH AMENDMENT TO THE U.S. CONSTITUTION

## CONSPIRACY

145.    Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Complaint as if fully set forth herein.

146.    The aforementioned actions of Defendants Rodiguez, Jenkins and Casino Security constituted a conspiracy to arrest, detain and/or prosecute Mr. Garcia.

147.    The subsequent detainment of Plaintiff pursuant to his false arrest constituted false imprisonment of Mr. Garcia and violated his rights as guaranteed to him by the Fourth Amendment of the U.S. Constitution.

148.    Plaintiff believes and therefore avers, that Defendant Rodriguez and the Casino Defendants conspired against Mr. Garcia to unlawfully arrest, detain and prosecute him without any probable cause.

149.    The actions of Rodriguez were done within the scope of his employment with PSP and under color of state law.

150.    The actions of Jenkins and Casino Security were done within the scope of their employment with and/or in their capacity as representatives and/or agents of Defendant Wind Creek.

151.    The actions of Defendants were willful, wanton and/or done with a reckless disregard for the rights of Plaintiff, thereby subjecting Defendants to punitive damages.

152.    The conduct of the Defendants deprived the Plaintiff of his right to be free from unjustified imprisonment.

153.    As a direct and proximate result of the acts committed and/or perpetrated by Defendants, Plaintiff suffered the following injuries and damages:

      a.   Plaintiff's rights under the Fourth Amendment were violated;

      b.   fright, horror and shock;

      c.   emotional trauma and suffering;

      d.   damage to Plaintiff's reputation;

      e.   economic damages in the form of lost wages; and

      f.   economic damages related to any other consequential cost.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against All Defendants, jointly and severally, in an amount in excess of the $150,000.00 arbitration limit for the United States District Court for the Eastern District of Pennsylvania, together with punitive damages, and other relief, including costs of suit, reasonable attorney and expert fees as well as all such further relief as this Honorable Court deems just and proper.

## COUNT V

## [PLAINTIFF v. ALL DEFENDANTS]

## DISCRIMINATION ON THE BASIS OF RACE, COLOR, NATIONAL ORIGIN

## <u>VIOLATION OF 42 U.S.C. §1981</u>

154.    Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Complaint as if fully set forth herein.

155.    As averred above, Mr. Garcia is of Mexican nationality.

156.    Defendants intentionally discriminated against Mr. Garcia, based on his race and/or color and/or national origin, by clustering him with the Hispanic Males, the actual thieves who stole and/or conspired to steal Saganowich's wallet.

157.    Defendants intentionally discriminated against Mr. Garcia, based on his race and/or color and/or national origin, by not conducting a reasonable and/or thorough review of the casino's surveillance footage.

158.    Upon confrontation, David indicated to Mr. Garcia that he had been previously evicted from the Wind Creek Casino for stealing another patron's wallet during one of his previous casino visits.  In a feeble attempt to support his false accusations, David showed Mr. Garcia an image (photo) of the alleged wrongdoer who was one of the Hispanic Males.  A mere glance of said image showed that the true perpetrator was one of the Hispanic Males and not Mr. Garcia. David discriminated Mr. Garcia by clustering him as one of the Hispanic Males (the actual wrongdoers) based upon race and/or color and/or national origin.

159.    Defendants' conduct violated Plaintiff's equal right to recreate (make and enforce a contract) at the Casino as is enjoyed by white citizens.

160.    Defendants' conduct violated Plaintiff's equal right to recreate (make and enforce a contract) at the Casino as is enjoyed by white citizens who, unlike Mr. Garcia, were free from malicious prosecution.

161.    Defendants' conduct violated Plaintiff's equal right to recreate (make and enforce a contract) at the Casino as is enjoyed by white citizens who, unlike Mr. Garcia, were free from false arrest.

162.    Defendants' conduct violated Plaintiff's equal right to recreate (make and enforce a contract) at the Casino as is enjoyed by white citizens who, unlike Mr. Garcia, were free from false imprisonment.

163.    As a direct and proximate result of the intentional discrimination perpetrated by Defendants, Plaintiff suffered the following injuries and damages:

     a.    Plaintiff's rights under the Fourth Amendment were violated;

     b.    fright, horror and shock;

     c.    emotional trauma and suffering;

     d.    damage to Plaintiff's reputation;

     e.    economic damages in the form of lost wages; and

     f.    economic damages related to any other consequential cost.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against All Defendants, jointly and severally, in an amount in excess of the $150,000.00 arbitration limit for the United States District Court for the Eastern District of Pennsylvania, together with punitive damages, and other relief, including costs of suit, reasonable attorney and expert fees as well as all such further relief as this Honorable Court deems just and proper.

**COUNT VI**

**[PLAINTIFF v. ALL DEFENDANTS]**

**DISCRIMINATION ON THE BASIS OF RACE, COLOR, NATIONAL ORIGIN**

**<u>VIOLATION OF 42 U.S.C. §1982</u>**

164.    Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Complaint as if fully set forth herein.

165.    As averred above, Mr. Garcia is of Mexican nationality.

166.    Defendants intentionally discriminated against Mr. Garcia, based on his race and/or color and/or national origin, by clustering him with the Hispanic Males, the actual thieves who stole and/or conspired to steal Saganowich's wallet.

167.    Defendants intentionally discriminated against Mr. Garcia, based on his race and/or color and/or national origin, by not conducting a reasonable and/or thorough review of the casino's surveillance footage.

168.    Upon confrontation, David indicated to Mr. Garcia that he had been previously evicted from the Wind Creek Casino for stealing another patron's wallet during one of his previous casino visits.  In a feeble attempt to support his false accusations, David showed Mr. Garcia an image (photograph) of the alleged wrongdoer who happened to be one of the Hispanic Males.  A mere glance of said image showed that the true perpetrator was one of the Hispanic Males and not Mr. Garcia.  David discriminated Mr. Garcia by clustering him as one of the Hispanic Males (the actual wrongdoers) based upon race and/or color and/or national origin.

169.    Defendants' conduct violated Plaintiff's equal right to recreate (purchase personal property) at the Casino as is enjoyed by white citizens.

170.    Defendants' conduct violated Plaintiff's equal right to recreate (purchase personal property) at the Casino as is enjoyed by white citizens who, unlike Mr. Garcia, were free from malicious prosecution.

171.    Defendants' conduct violated Plaintiff's equal right to recreate (purchase personal property) at the Casino as is enjoyed by white citizens who, unlike Mr. Garcia, were free from false arrest.

172.   Defendants' conduct violated Plaintiff's equal right to recreate (purchase personal property) at the Casino as is enjoyed by white citizens who, unlike Mr. Garcia, were free from false imprisonment.

173.   As a direct and proximate result of the intentional discrimination perpetrated by Defendants, Plaintiff suffered the following injuries and damages:

   a.   Plaintiff's rights under the Fourth Amendment were violated;

   b.   fright, horror and shock;

   c.   emotional trauma and suffering;

   d.   damage to Plaintiff's reputation;

   e.   economic damages in the form of lost wages; and

   f.   economic damages related to any other consequential cost.

   WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against All Defendants, jointly and severally, in an amount in excess of the $150,000.00 arbitration limit for the United States District Court for the Eastern District of Pennsylvania, together with punitive damages, and other relief, including costs of suit, reasonable attorney and expert fees as well as all such further relief as this Honorable Court deems just and proper.

**COUNT VII**

**[PLAINTIFF v. ALL DEFENDANTS]**

**DEPRAVATION OF RIGHT OR PRIVILEGE**

**VIOLATION OF 42 U.S.C. §1985**

174.   Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Complaint as if fully set forth herein.

175.   In relevant part, 42 U.S.C. §1985 (3) provides:

> "in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having or exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against one or more of the conspirators." 42 U.S.C. §1985 (3)

176.    Count IV above is a conspiracy claim.

177.    As averred above, Defendants intentionally discriminated against Mr. Garcia on the absis of race and/or color a d/or national origin.

178.    As a result of the Defendants discriminatory conduct, Mr. Garcia was (a) maliciously prosecuted; (b) falsely arrested; and (c) falsely imprisoned.

179.    As averred above, Major George L. Bivens, Director for the Bureau Gaming Enforcement of the PSP ("Bivens"), testified before the House Gaming Oversight Committee. At said time, Bivens testified, in relevant part, that "[s]*ince the first casinos opened in 2006, the Pennsylvania State Police (PSP) has been providing law enforcement services at each of the casino locations across the Commonwealth*."  At all times material hereto, PSP was providing law enforcement services to Wind Creek.

180.    At all times material hereto, there was substantial cooperation between the Casino and the Pennsylvania State Police.

181.    At all times material hereto, the Casino's security operations, including surveillance, are intricately intertwined with those of the Pennsylvania State Police as evidenced by the Defendants' collective deliberate indifference and willful disregard to Mr. Garcia's emphatic pleas to check the surveillance footage so his name could be cleared.

182.    Through the collective acts of the Defendants, Mr. Garcia was (a) maliciously prosecuted; (b) falsely arrested; and (c) falsely imprisoned.

183.    Despite the existence of physical evidence (video surveillance), Mr. Garcia was (a) maliciously prosecuted; (b) falsely arrested; and (c) falsely imprisoned.

184.    Rodriguez accepted the representations of Jenkins as true without ever conducting even a cursory review of the physical evidence (video surveillance) which was readily accessible to all Defendants.

185.    The actions of Defendants Rodriguez, Jenkins and Casino Security constituted a conspiracy to arrest, detain and/or prosecute Mr. Garcia and deprive him of his constitutional rights.

186.    As a direct and proximate result of Defendants' violation of 42 U.S.C. §1985, Plaintiff suffered the following injuries and damages:

      a.   Plaintiff's rights under the Fourth Amendment were violated;

      b.   fright, horror and shock;

      c.   emotional trauma and suffering;

      d.   damage to Plaintiff's reputation;

      e.   economic damages in the form of lost wages; and

      f.   economic damages related to any other consequential cost

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against All Defendants, jointly and severally, in an amount in excess of the $150,000.00 arbitration limit for the United States District Court for the Eastern District of Pennsylvania, together with punitive damages, and other relief, including costs of suit, reasonable attorney and expert fees as well as all such further relief as this Honorable Court deems just and proper.

## COUNT VIII

## [PLAINTIFF v. RODRIGUEZ]

## RACIAL & COLOR DISCRIMINATION UNDER COLOR OF STATE LAW

## VIOLATION OF 42 U.S.C. §1983

187.    Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Complaint as if fully set forth herein.

188.    As averred numerous times above, at Rodriguez maliciously prosecuted Mr. Garcia.

189.    As a result of Rodriguez's malicious prosecution, Mr. Garcia was falsely arrested and falsely imprisoned.

190.    As averred numerous times above, at Rodriguez intentionally discriminated against Mr. Garcia based on race and/or color and/or national origin.

191.    At all times material hereto, Rodriguez (a member of the PSP), was acting under color of state law.

192.    Rodriguez, acting under color of state law, deprived Mr. Garcia of his federal rights when he maliciously prosecuted Mr. Garcia.

193.    Rodriguez, acting under color of state law, deprived Mr. Garcia of his federal rights when he intentionally discriminated against him based on race and/or color and/or national origin.

194.    As a direct and proximate result of Defendants' violation of 42 U.S.C. §1983, Plaintiff suffered the following injuries and damages:

      a.  Plaintiff's rights under the Fourth Amendment were violated;

      b.  fright, horror and shock;

      c.  emotional trauma and suffering;

      d.  damage to Plaintiff's reputation;

      e.  economic damages in the form of lost wages; and

      f.  economic damages related to any other consequential cost

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Rodriguez in an amount in excess of the $150,000.00 arbitration limit for the United States District Court for the Eastern District of Pennsylvania, together with punitive damages, and other relief, including costs of suit, reasonable attorney and expert fees as well as all such further relief as this Honorable Court deems just and proper.

**COUNT IX**

**[PLAINTIFF v. EVANCHICK]**

**FAILURE TO INSTRUCT, SUPERVISE AND/OR CONTROL**

**<u>VIOLATION OF 42 U.S.C. §1983</u>**

195.    Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Complaint as if fully set forth herein.

196.    As averred above, Major George L. Bivens, Director for the Bureau Gaming Enforcement of the PSP ("Bivens"), testified before the House Gaming Oversight Committee. At said time, Bivens testified, in relevant part, that "[s]*ince the first casinos opened in 2006, the Pennsylvania State Police (PSP) has been providing law enforcement services at each of the casino locations across the Commonwealth*." At all times material hereto, PSP was providing law enforcement services to Wind Creek.

197.    As averred above, Evanchick is/was the Commissioner of the PSP.

198.    At all times material hereto, Evanchik would have oversight and/or command over the PSP's Bureau of Gaming Enforcement including Rodriguez.

199.    Within the Bureau of Gaming Enforcement there exist policies, customs, practices and/or usages that are so pervasive that they constitute the policy of the PSP which ultimately caused the constitutional deprivations to Mr. Garcia.

200.    Upon information and belief, these policies, customs, practices and/or usages that exist

and/or existed encouraged and/or tolerated and/or ratified and/or had been deliberately

indifferent to a pattern and/or custom of:

      a.  Failure of PSP to train troopers, like Rodriguez, to properly act as Bureau of
Gaming Enforcement members;

      b.   Failure of PSP to supervise troopers, like Rodriguez, to ensure that they are
acting properly as Bureau of Gaming Enforcement members;

      c.  Failure of PSP to instruct its Bureau of Gaming Enforcement troopers, like
Rodriguez, to not limit their investigation solely on the information provided
to them by the Casino;

      d.  Failure of Bureau of Gaming Enforcement troopers, like Rodriguez, to
independently ascertain facts to determine whether patrons, like Plaintiff,
were acting lawfully at the Casino;

      e.  Failure of Bureau of Gaming Enforcement troopers, like Rodriguez, to
independently ascertain evidence to determine whether patrons, like Plaintiff,
were acting lawfully at the Casino; and

      f.  Failure of Bureau of Gaming Enforcement troopers, like Rodriguez, to
independently review surveillance footage to determine whether patrons, like
Plaintiff, were acting lawfully at the Casino.

201.    Evanchick is tasked with the duty of commanding and/or overseeing the screening and/or

training of PSP troopers, including members of the Bureau of Gaming Enforcement.

202.    Upon information and belief, Evanchick has effectively abrogated or delegated the power

to screen and/or train and/or supervise and/or control members of the Bureau of Gaming

Enforcement by failing to act in the face of transgressions of which Evanchick knew or should

have known.

203.    Evanchick has the power, duty and responsibility to prevent the existence of any policies,

customs, practices or usage which manifests injustice such as the constitutional violations and

deprivations sustained by Mr. Garcia.

204.   The failure of Evanchick to act to prevent constitutional violations by actions or conduct caused the constitutional deprivations sustained by Mr. Garcia.

205.   Had Evanchick affirmatively acted to ensure proper training and/or oversee and/or supervise members of the Bureau of Gaming Enforcement, like Rodriguez, the constitutional deprivations sustained by Mr. Garcia would not have occurred.

206.   Evanchick is aware, or should have been aware, that maliciously prosecuting (criminally charging) Mr. Garcia without probable cause would have resulted in constitutional violations, however, he did nothing to prevent said practices.

207.   Evanchick is aware, or should have been aware, that maliciously prosecuting (criminally charging) Mr. Garcia without first conducting a reasonable investigation would have resulted in constitutional violations, however, he did nothing to prevent said practices.

208.   Evanchick is aware, or should have been aware, that maliciously prosecuting (criminally charging) Mr. Garcia based solely on unilateral information provided by the Casino to the member Bureau of Gaming Enforcement, like Rodriguez, would have resulted in constitutional violations, however, he did nothing to prevent said practices.

209.   In light of his reckless failures, Evanchick intentionally disregarded known facts, or, was deliberately indifferent to a risk of the constitutional violation of which he knew or should have known and its culpability caused the constitutional deprivations sustained by Mr. Garcia.

210.   As a direct and proximate result of the foregoing Evanchick's constitutional violations, Plaintiff suffered the following injuries and damages:

      a.   Plaintiff's rights under the Fourth Amendment were violated;

      b.   fright, horror and shock;

      c.   emotional trauma and suffering;

    d.   damage to Plaintiff's reputation;

    e.   economic damages in the form of lost wages; and

    f.   economic damages related to any other consequential cost.

211.    If Plaintiff prevails, he is entitled to an award of attorney fees pursuant to 42 U.S.C.

§1988.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Evanchick in an amount in excess of the $150,000.00 arbitration limit for the United States District Court for the Eastern District of Pennsylvania, together with punitive damages, and other relief, including costs of suit, reasonable attorney and expert fees as well as all such further relief as this Honorable Court deems just and proper.

## COUNT X

## [PLAINTIFF v. WIND CREEK]

## RESPONDEAT SUPERIOR

212.    Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Complaint as if fully set forth herein.

213.    Wind Creek has a duty to oversee the activities of its employees and/or representatives and/or agents and is responsible for their actions and/or inactions during the scope of their employment at/with the Casino.

214.    These Wind Creek employees and/or representatives and/or agents include Jenkins and Casino Security as well as any other individual or entity whose identity is discovered during the course of litigation.

215.    The unlawful and/or tortious and/or negligent actions of Wind Creek's employees and/or representatives and/or agents were completed during the scope of their employment at/with the Casino.

216.    As a direct and proximate result of the unlawful and/or tortious and/or negligent actions of Wind Creek's employees and/or representatives and/or agents, Plaintiff suffered the following injuries and damages:

> a.  Plaintiff's rights under the Fourth Amendment were violated;
>
> b.  fright, horror and shock;
>
> c.  emotional trauma and suffering;
>
> d.  damage to Plaintiff's reputation;
>
> e.  economic damages in the form of lost wages; and
>
> f.  economic damages related to any other consequential cost

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Wind Creek in an amount in excess of the $150,000.00 arbitration limit for the United States District Court for the Eastern District of Pennsylvania, together with punitive damages, and other relief, including costs of suit, reasonable attorney and expert fees as well as all such further relief as this Honorable Court deems just and proper.

**COUNT XI**

**[PLAINTIFF v. WIND CREEK]**

**<u>NEGLIGENCE</u>**

217.    Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Complaint as if fully set forth herein.

218.   Wind Creek, by and through its employees and/or representatives and/or agents, including but not limited to Jenkins and Casino Security, was negligent in one or more of the following respects:

    a.   failed to adequately train and/or educate its security personnel in the proper methods to conduct security at the entry point of the Casino;

    b.   failed to adequately train and/or educate its security personnel to check and/or verify the identification of incoming patrons;

    c.   failed to adequately train and/or educate its security personnel in the proper methods to conduct surveillance of the entry point of the Casino;

    d.   failed to adequately train and/or educate its security personnel in the proper methods to conduct surveillance of the Casino floor;

    e.   failed to adequately train and/or educate its security personnel in the proper methods to conduct an investigation of any complaints made by a patron;

    f.   failed to adequately train and/or educate its security personnel in the proper methods to conduct an investigation of a theft complaint made by a patron;

    g.   failed to adequately train and/or educate its security personnel in the areas of prudence, discretion and reasonable cause to evidence or support physical restraining/detaining persons;

    h.   failed to adequately train and/or educate its security personnel in the care and custody given to persons physically restrained or detained;

    i.   failed to adequately train and/or educate its security personnel in providing for the safety, health or well being of persons being detained;

    j.   failed to adequately train and/or educate its security personnel to take into account the physical and/or mental condition of a person in determining when and whether a person should be detained;

    k.   knew or should have known there was a reasonable likelihood of causing physical and/or mental injury to persons at the hands of the security personnel without proper training;

    l.   failed to adequately train and/or educate its security personnel to refrain from or avoid verbal abuse of persons being detained;

m.  failed to adequately train and/or educate its security personnel to avoid discriminating and/or intimidating and/or instilling fear and/or manifesting mental abuse of persons being detained;

n.  failed to train and/or educate its security personnel to properly spot and/or recognize false identification and/or provide training, education or equipment in order to verify the authenticity of identification presented to gain access to the casino floor.

o.  failed to adequately train and/or educate its security personnel in the areas of prudence, discretion to consider the emphatic pleas of a patron who claims that he has been unlawfully restrained/detained;

p.  failed to adequately train and/or educate its security personnel in the areas of prudence, discretion to consider the emphatic pleas of a patron who claims that he has been unlawfully restrained/detained through false identification;

q.  failed to adequately train and/or educate its security personnel in the areas of prudence, discretion to review video surveillance so the emphatic pleas of a patron who claims that he has been unlawfully restrained/detained may be taken into consideration;

r.  failed to adequately train and/or educate its security personnel in the areas of prudence, discretion and reasonable cause to initiate a Wind Creek Eviction of a patron;

s.  failed to adequately train and/or educate its security personnel in the areas of prudence, discretion and reasonable cause to initiate a Wind Creek Eviction of a rewards member;

t.  failed to implement and/or follow the rules and/or regulations of the Pennsylvania Gaming Control Board relating to security;

u.  failed to adequately train and/or educate its security personnel in providing accurate information and/or documentation to members of the Bureau of Gaming Enforcement;

v.  failed to adequately train and/or educate its security personnel in providing truthful information and/or documentation to the Bureau of Gaming Enforcement;

w.  failed to adequately train and/or educate its security personnel the significance and/or consequence of providing inaccurate information to the Bureau of Gaming Enforcement;

x.  failed to adequately train and/or educate its security personnel the significance and/or consequence of providing false information to the Bureau of Gaming Enforcement; and

y.  failed to adequately train and/or educate its security personnel to perform their security duties in a manner which prevents manifest injustice.

219.   At the time and place herein mentioned, Wind Creek, by and through its employees and/or representatives and/or agents, had a duty to the general public, including Mr. Garcia, to be adequately trained, educated, supervised, to avoid manifesting conduct which results in injuries and damages as those sustained by Plaintiff.

220.   At the time and place herein mentioned, Wind Creek, by and through its employees and/or representatives and/or agents, had a duty to the general public, including Mr. Garcia, to be adequately trained, educated, supervised, to avoid manifesting conduct which results in constitutional violations and deprivations as those sustained by Plaintiff.

221.   At the time and place herein mentioned, Wind Creek, by and through its employees and/or representatives and/or agents, had a duty to the general public, including Mr. Garcia to follow minimum polices and procedures which prevent injuries and/or damages as those sustained by Plaintiff.

222.   At the time and place herein mentioned, Wind Creek, by and through its employees and/or representatives and/or agents, had a duty to the general public, including Mr. Garcia to follow minimum polices and procedures which prevent constitutional violations and deprivations as those sustained by Plaintiff.

223.   As a direct and proximate result of the negligence and/or actions or omissions of one or more of Wind Creek's employees and/or representatives and/or agents, Plaintiff was (a) maliciously prosecuted; (b) falsely arrested; and (c) falsely imprisoned.

224.   As a direct and proximate result of the negligence and/or actions or omissions of one or more of Wind Creek's employees and/or representatives and/or agents, Plaintiff suffered injuries and sustained damages.

225.   As a direct and proximate result of the negligence and/or actions or omissions of one or more of Wind Creek's employees and/or representatives and/or agents, Plaintiff, as more fully set forth below, suffered humiliation and mental anguish.

226.   As a direct and proximate result of Wind Creek's negligence, Plaintiff suffered the following injuries and damages:

        a.   Plaintiff's rights under the Fourth Amendment were violated;

        b.   fright, horror and shock;

        c.   emotional trauma and suffering;

        d.   damage to Plaintiff's reputation;

        e.   economic damages in the form of lost wages; and

        f.   economic damages related to any other consequential cost

227.   As a further direct and proximate result of Casino's conduct which was outrageous because of Wind Creek's evil motive or reckless indifference to the rights of others and/or which showed complete indifference to or conscious disregard for the safety of others. Plaintiff is entitled to punitive/exemplary damages which will serve to punish Wind Creek and to deter it and other casinos from like conduct in an amount to be determined at trial.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Wind Creek in an amount in excess of the $150,000.00 arbitration limit for the United States District Court for the Eastern District of Pennsylvania, together with punitive damages,

and other relief, including costs of suit, reasonable attorney and expert fees as well as all such

further relief as this Honorable Court deems just and proper

## COUNT XII

## [PLAINTIFF v. WIND CREEK]

## <u>INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>

228.    Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Complaint as if fully set forth herein.

229.    At all times material hereto, the Casino Defendants had exonerating evidence in their immediate possession by and through their immediate possession.  Said evidence would have unequivocally exonerated Mr. Garcia from any wrongdoing within minutes.  Despite this, the Casino manifested deliberate indifference and showed utter disregard thereto.

230.    The conduct and/or actions of the Casino Defendants was extreme and outrageous.

231.    The conduct and/or actions of the Casino Defendants which was extreme and outrageous occurred during the scope of their employment at Wind Creek.

232.    The conduct and/or actions of the Casino Defendants to forego reviewing its own surveillance was intentional, or, at the very least, reckless.

233.     The conduct and/or actions of the Casino Defendants caused Mr. Garcia to be (a) maliciously prosecuted; (b) falsely arrested; and (c) falsely imprisoned.

234.    The conduct and/or actions of the Casino Defendants intended to create significant emotional distress for Plaintiff.  In the alternative, the Casino Defendants acted in deliberate disregard of a high degree of probability that emotional distress would occur.

235.    Mr. Garcia did experience grave emotional distress (a) immediately when he was falsely arrested and falsely imprisoned; (b) when his reputation at his workplace became known as the

"criminal" during the pendency of the malicious prosecution; (c) continues until this day and it such that no reasonable person should be reasonably expected to endure.

236.    Mr. Garcia's response to the extreme and outrageous conduct of the Casino Defendants is consistent with the response of the average person placed in such an unjust situation.

237.    The aforementioned actions of Defendants Rodiguez, Jenkins and Casino Security constituted a conspiracy to arrest, detain and/or prosecute Mr. Garcia.

238.    As a direct and proximate result of the extreme and outrageous conduct of the Casino Defendant, Plaintiff suffered the following injuries and damages:

      a.   Plaintiff's rights under the Fourth Amendment were violated;

      b.   fright, horror and shock;

      c.   emotional trauma and suffering;

      d.   damage to Plaintiff's reputation;

      e.   economic damages in the form of lost wages; and

      f.   economic damages related to any other consequential cost.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against All Defendants, jointly and severally, in an amount in excess of the $150,000.00 arbitration limit for the United States District Court for the Eastern District of Pennsylvania, together with punitive damages, and other relief, including costs of suit, reasonable attorney and expert fees as well as all such further relief as this Honorable Court deems just and proper.

## COUNT XIII

## [PLAINTIFF v. ALL DEFENDANTS]

## LOST WAGES

239.    Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Complaint as if fully set forth herein

240.    As a result of the malicious prosecution, false arrest and false imprisonment, Mr. Garcia was compelled to miss five (5) days at work.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against All Defendants, jointly and severally, in an amount that makes Plaintiff whole for his lost wages together with punitive damages, and other relief, including costs of suit, reasonable attorney and expert fees as well as all such further relief as this Honorable Court deems just and proper.

### **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.


KOTSATOS LAW, PLLC

Date: <u>01/22/22</u>                              */s/ John E. Kotsatos*

By:    _____
         John E. Kotsatos, Esquire
         PA Identification No.: 92807
         Kotsatos Law, PLLC
         717 Washington St.
         Easton, PA 18042
         Phone: 484-403-6214
         Fax: 610-438-6351
         Email: jk@lawjek.com

         *Counsel for Plaintiff*