**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MIGUEL GARCIA, | : | CIVIL ACTION |
| | : | |
| **Plaintiff,** | : | No.: 5:22-cv-00292-JFL |
| | : | |
| v. | : | |
| | : | **JURY TRIAL DEMANDED** |
| WIND CREEK BETHLEHEM LLC | : | |
| d/b/a WIND CREEK BETLEHEM, | : | |
| | : | |
| **&** | : | |
| | : | |
| KENT JENKINS, individually and | : | |
| in his capacity as Wind Creek | : | |
| Surveillance Operator, | : | |
| | : | |
| **&** | : | |
| | : | |
| JOHN DOE SECURITY OFFICERS | : | |
| 1-10 individually and as Security | : | |
| Officers for Wind Creek Bethlehem, | : | |
| | : | |
| **&** | : | |
| | : | |
| TPR. JOHNNY RODRIGUEZ, | : | |
| | : | |
| **&** | : | |
| | : | |
| COL. ROBERT EVANCHICK, | : | |
| | : | |
| **Defendants.** | : | |

### AMENDED COMPLAINT

Pursuant Fed. R. Civ. P. 15(a)(1)(B)[1], Plaintiff Miguel Garcia, by and through his

undersigned counsel, files this Amended Complaint as a matter of course.  In support thereof,

Plaintiff avers as follows:

---

[1] The PSP Defendants filed their Motion to Dismiss pursuant to 12(b) on 3/9/22 and the Casino Defendants filed their Motion to Dismiss pursuant to 12(b) on 3/24/22.

**Parties**

1.      Plaintiff Miguel Garcia is a citizen of the United States and a resident of Totowa, Passaic County, NJ.  In said County, he resides at: 190 Union Blvd., Totowa, NJ, 07512.

2.      Plaintiff Miguel Garcia is an adult individual of Hispanic Descent.  He was born in Houston, TX and is of Mexican nationality.

3.      Defendant Wind Creek Bethlehem LLC d/b/a Wind Creek Bethlehem ("Wind Creek") is a limited liability corporation organized under the laws of the Commonwealth of Pennsylvania, with its principal place of business being located at 77 Wind Creek Blvd, Bethlehem, Northampton County, PA 18015.  Wind Creek is registered to do business and does conduct business in the State of Pennsylvania.

4.      At its premises located at 77 Wind Creek Blvd, Wind Creek operates and/or oversees, amongst other things, a casino.   On its website, Wind Creek markets that their "casino offers over 150 table games, state-of-the-art slot machines, live dealer stadium gaming and more."

5.      Defendant Kent Jenkins ("Jenkins") is identified, in a General Offense Report prepared by the Pennsylvania State Police ("PSP"), as a Wind Creek Surveillance Operator.

6.      In addition to acting as an employee and/or contractor and/or agent for Wind Creek, Jenkins is also being sued in his individual capacity for engaging in illegal and unconstitutional activities including false arrest, false imprisonment, discrimination, bias-based policing (bias-based law enforcement) and violation(s) of Mr. Garcia's civil rights as guaranteed to him under the 4th and 14th Amendments of the Constitution of the United States and Article I, §8 of the Commonwealth of Pennsylvania.

7.      As more fully set forth below (Factual Allegations section), Jenkins, at all times material hereto, was acting under acting under color of state law.

8.      As more fully set forth below, Jenkins, at all times material hereto, willfully participated in joint action with, amongst others, Defendant Rodriguez to fabricate evidence to create probable cause against Mr. Garcia as a criminal suspect.

9.      At this juncture, the exact employment relationship, working capacity and job responsibilities of Jenkins is known only to Wind Creek and may only be obtained by Plaintiff through initial disclosure and/or discovery practice.

10.     Defendant(s) John Doe Security Officers 1-10 individually and as security officers for Wind Creek Bethlehem ("Casino Security") are individuals who work security at the casino.

11.     In addition to acting as employees and/or contractors and/or agents for Wind Creek, Casino Security are also being sued in their individual capacities for engaging in illegal and unconstitutional activities including false arrest, false imprisonment, discrimination, bias-based policing (bias-based law enforcement) and violation(s) of Mr. Garcia's civil rights as guaranteed to him under the 4th and 14th Amendments of the Constitution of the United States and Article I, §8 of the Commonwealth of Pennsylvania.

12.     As more fully set forth below (Factual Allegations section), Casino Security, at all times material hereto, was acting under color of state law.

13.     As more fully set forth below, Casino Security, at all times material hereto, willfully participated in joint action with Jenkins and Rodriguez to fabricate evidence to create probable cause against Mr. Garcia as a criminal suspect.

14.     At this juncture, the exact employment relationships, working capacities and specific identities of Casino Security is known only to Wind Creek and may only be obtained by Plaintiff through initial disclosure and/or discovery practice.

15.     Wind Creek, Jenkins and Casino Security shall be collectively referred to as the "Casino Defendants" herein.

16.     Defendant Trooper Johnny Rodriguez ("Rodriguez") is a state police trooper with the Pennsylvania State Police ("PSP").

17.     In his sworn Affidavit of Probable Cause, Rodriguez identified his himself as "a member of the Pennsylvania State Police Bureau of Gaming Enforcement stationed at the Wind Creek Casino, City of Bethlehem, Northampton County," PA.

18.     At the time of the subject matter incident, Rodriguez was working inside the Wind Creek Casino.

19.     After the filing of the instant lawsuit, Rodriguez was transferred from the Wind Creek Casino to the Belfast State Police Station located at 654 Bangor Road, Nazareth, Northampton County, PA 18064.

20.     At all times material hereto, Defendant Rodriguez was acting under color of state law. His assigned affiant identification and badge number(s) were: 533520/08832 (PSP/MPOETC).

21.     Defendant Rodriguez is being sued both in his individual and official capacity.

22.     Defendant Rodriguez is being sued in his individual capacity for engaging in unlawful and unconstitutional activities including abuse of authority, malicious prosecution (which lead to the false arrest and false imprisonment of Plaintiff) and discrimination, bias-based policing (bias-based law enforcement) and violation(s) of Mr. Garcia's civil rights as guaranteed to him under the 4th and 14th Amendments of the Constitution of the United States and Article I, §8 of the Commonwealth of Pennsylvania.

23.     At this juncture, the exact working capacity and/or job responsibilities of Rodriguez, while stationed at the Wind Creek Casino, is known only to PSP and may only be obtained by Plaintiff through initial disclosure and/or discovery practice.

24.     Defendant Colonel Robert Evanchick ("Evanchick") is the Commissioner of the PSP.

25.     At all times material hereto, Evanchick was the Commissioner of the PSP.

26.     At all times material hereto, Evanchick was acting within the scope of his employment and under color of state law.

27.     On 5/1/17, Major George L. Bivens, Director for the Bureau Gaming Enforcement of the PSP ("Bivens"), testified before the House Gaming Oversight Committee.  At said time, Bivens testified, in relevant part, that "[s]*ince the first casinos opened in 2006, the Pennsylvania State Police (PSP) has been providing law enforcement services at each of the casino locations across the Commonwealth*."

28.     At all times material hereto, PSP was providing law enforcement services to Wind Creek.

29.     At all times material hereto, the PSP maintained and operated an office located inside the Wind Creek Casino.

30.     As averred above, at all times material hereto, Rodriguez stationed within the PSP office located in the Wind Creek Casino.  As more fully set forth below, including through documentary proof referenced in the Factual Allegations section below, Rodriguez, indicated in his Affidavit of Probable Cause, that he was stationed within the Wind Creek Casino.

31.     At all material hereto, PSP, through its Gaming Enforcement Division, has exclusive law enforcement jurisdiction relating to crimes and offenses committed within the Casino.

32.     As more fully set forth below, including through documentary proof referenced in the Factual Allegations section below (Wind Creek's Fabricated Report), shows that PSP troopers

stationed in their Wind Creek office, like Rodriguez, worked hand in hand with Wind Creek's

Casino Security at all times material hereto.

33.    At all times material hereto, Evanchick was charged with the duty to supervise, manage

and control PSP troopers, like Rodriguez, to prevent the violation of the civil rights of its citizens

34.     At all times material hereto, Evanchick was charged with the duty to train, educate and

correct misconduct of PSP troopers, like Rodriguez, to prevent the violation of the civil rights of

its citizens.

35.    As more fully set forth below, Evanchick, at all times material hereto, has refused to

implement annual anti-bias training ("ABT") for PSP troopers, while serving in his capacity as

Commissioner of the PSP, despite receiving recommendation from the State Law Enforcement

Citizens Advisory Commission; formed by Governor Tom Wolf as part of a nationwide

movement for racial injustice and equality[2].

36.    ABT would prevent bias-based policing (the use of race, ethnicity, gender, sexual

orientation, religion, economic status, background, age, socio-economic status, or culture as the

sole basis for police activity).

37.    At this juncture, Evanchick's rationale and/or basis to forego immediate implementation

of an annual ABT for PSP troopers and may only be obtained by Plaintiff through initial

disclosure and/or discovery practice; specifically taking the deposition of Evanchick.

38.    Rodriguez and Evanchick shall be collectively referred to as "PSP Defendants" herein.

39.    As more fully set forth below, including with specific documented evidence as referenced

in the Factual Allegations Section herein, at all times material hereto, Jenkins and Casino

---

[2] *See* https://mcall.com/news/local/mc-nws-state-police-biased-training-recommendations-20220222-anheh3ck6vabnpkhid7yplohfy-story.html: "[[t]he State Law Enforcement Citizens Advisory Commission] advises on ways to improve law enforcement practices.  It meets quarterly to examine bias-based, critical-incident and use-of-force cases and submits findings and recommendations.

Security willfully participated in joint actions and/or conspiracy and/or in concert with the PSP

Defendants (state actors) to deprive Mr. Garcia of his constitutional rights.

40.     Wind Creek, Casino Security, Rodriguez and Evanchick shall be collectively referred to

as "Defendants" herein.

41.     At this juncture, the prevailing law does not impose a probability requirement, rather, the

filing of a Complaint or Amended Complaint simply calls for enough facts to raise reasonable

expectation that discovery will reveal evidence of the necessary elements to establish the

relationship which existed, at the material times, between the Defendants[3].

### Jurisdiction and Venue

*Original Jurisdiction*

42.     This Court has original jurisdiction over the subject matter of this action pursuant to 28

U.S.C. §§1331, 1334(1), (2), (3), (4) in that it raises questions of federal law, pursuant to the

United States Constitution and other federal laws governing civil rights, including 42 U.S.C. §§

1983 and 1988.

43.     This Court has supplemental jurisdiction over the related common-law and state-law

claims raised pursuant to 28 U.S.C. §1367.

44.     Venue is proper pursuant to 28 U.S.C. §1391 in so far as the following alleged unlawful

conduct that forms the factual and legal basis of this Complaint occurred within the geographical

limits of this District.

*Diversity*

45.     Plaintiff is resident of New Jersey.

46.     Defendants are residents of Pennsylvania.

---

[3] *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

47.     Given the nature of his injuries and damages, Plaintiff seeks to recover an amount in excess of $150,000.00 as set forth in his claims (counts) below.

48.     This Court has jurisdiction pursuant to 28 U.S.C. §1332(a)(1) which, in relevant part, provides that "…(a) [t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between (1) citizens of different States."

49.     Venue is proper in this judicial district under 28 U.S.C. §1391(b)(1).

## Factual Allegations

50.     Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Amended Complaint as if fully set forth herein.

51.     At all times material hereto, Plaintiff was employed by Lohman Therapy Systems ("LTS") which is located in West Caldwell, NJ.

52.     At all times material hereto, Plaintiff was a loyal patron of the Wind Creek Casino and registered at the casino as a Wind Creek Rewards Member (Reward# 5751008484986).

53.     At all times material hereto, the Casino Defendants had actual or imputed knowledge that Plaintiff was a loyal patron and Wind Creek Rewards Member considering (a) he was registered with their casino; and (b) the rewards which Wind Creek had awarded him given his patronage and play.

### *10/3/20 visit to Wind Creek*

54.     On 10/3/20, in the early morning (approximately 12:21am), Plaintiff entered the Wind Creek casino.

55.     Plaintiff entered the casino from his customary entry point, the entrance closest to the parking deck.  This entrance is referred to as the "Bus Entrance" by the Casino Defendants.

56.     Upon entry to the casino from the Bus Entrance, Plaintiff waited in line so Casino Security could verify his identification by checking his driver's license.

57.     While waiting in line, certain other male individuals who were situated in front of Plaintiff appeared to be Hispanic in nature just like Mr. Garcia. These individuals shall be referred to as the "Hispanic Males" herein.

58.     At all times material hereto, Plaintiff Miguel Garcia neither knew nor recognized the Hispanic Males in any way whatsoever.

59.     After the Hispanic Males were verified and afforded entry, Plaintiff provided his driver's license to Casino Security for inspection and verification. Plaintiff's identification was inspected/verified and thereafter, Mr. Garcia was permitted entry onto the casino floor by Casino Security. Nothing seemed unusual to Plaintiff; everything appeared customary just like every other visit Mr. Garcia had taken to the Wind Creek Casino.

60.     Thereafter, Plaintiff began recreating by playing the slot machines; just like any other visit Mr. Garcia had experienced as a Wind Creek Rewards Member which included utilizing his Wind Creek Rewards Member card.

61.     On that particular visit (10/3/20), Plaintiff recreated in the casino for approximately 3 hours.

62.     Unbeknownst to Mr. Garcia, one of the Hispanic Males stole another casino patron's wallet. That patron was later identified as Stephen Saganowich, III ("Saganowich").

63.     Having not committed any wrongdoing, Mr. Garcia was wholly unaware that Rodriguez working in tandem with (joint action) Jenkins and Casino Security had fabricated evidence, as more fully set forth below, to create probable cause against him.

64.    The conduct of fabricating evidence to create probable cause against Mr. Garcia, exercised by Rodriguez in tandem with (joint action) Jenkins and Casino Security as a criminal suspect goes far beyond any reasonableness standard, rather, such conduct is akin to wanton and/or willful and/or reckless and/or deliberately indifferent.

65.    Rodriguez working in tandem with (joint action) Jenkins and Casino Security to intentionally discriminate against Mr. Garcia, based on his race and/or color and/or national origin, by clustering him with the Hispanic Males, the actual thieves who stole the subject matter wallet, and, thereafter, collectively fabricated evidence to create probable cause against Mr. Garcia that he was a criminal suspect of the stolen wallet.

66.    Rodriguez working in tandem (joint action) with Jenkins and Casino Security utilized bias-based policing by clustering him with the Hispanic Males, the actual thieves who stole the subject matter wallet, and, thereafter, collectively fabricated evidence to create probable cause against Mr. Garcia that he was a criminal suspect of the stolen wallet.

67.    As more fully set forth Defendant Rodriguez, working in conjunction with Jenkins and Casino Security, fabricated evidence to create probable cause against Mr. Garcia.

*Fabrication of Evidence to Create Probable Cause against Mr. Garcia*

68.    As referenced in particularity below, based on the readily available information and/or documentation to Plaintiff (at this juncture) and without drawing assumptions and/or inferences, it is clear that Rodriguez working in tandem (joint action) with Jenkins and Casino Security fabricated evidence to create probable cause against Mr. Garcia which resulted in criminal charges being asserted against him.  Those criminal charges lead Mr. Garcia sustaining constitutional violations as well as a deprivation of his liberty when he was jailed for 3 days despite being a completely innocent individual.

69.     At no time material hereto did Rodriguez and/or Jenkins and/or the Casino Defendants have any probable cause to initiate the process of asserting criminal charges against Mr. Garcia.

70.     At no time material hereto did Rodriguez have any probable cause to ask that a warrant of arrest or a summons be issued so Mr. Garcia would be required to answer to criminal charges.

71.     On 12/10/20, Rodriguez falsely charged Mr. Garcia with the following crime: theft of property lost, mislaid, or delivered by mistake pursuant to §18 C.S.A. 3924.

72.     Defendant Rodriguez signed and filed a false Police Criminal Complaint in which he sought that a warrant of arrest or a summons be issued against Mr. Garcia so that he be required to answer the false charges which Defendant Rodriguez had formulated and fabricated along with the Casino Defendants.   The relevant portion of said Criminal Complaint, signed by Rodriguez under the penalty of perjury, is referenced below.

**POLICE CRIMINAL COMPLAINT**

| Docket Number | Date Filed 12/10/2020 | OTN/Live Scan Number | Complaint/Incident Number C631034502/PA 2020-1406385 |
| Defendant Name | Defendant's First Name MIGUEL | Middle Name | Last Name GARCIA |

2.   I ask that a warrant of arrest or a summons be issued and that the defendant be required to answer the charges I have made.

3.   I verify that the facts set forth in this complaint are true and correct to the best of my knowledge or information and belief. This verification is made subject to the penalties of Section 4904 of the Crimes Code (18 Pa.C.S.§4904) relating to unsworn falsification to authorities.

4.   This complaint consists of the preceding page(s) numbered 1 through   3

5.   I certify that this filing complies with the provisions of the   Case Records Public Access Policy of the Unified Judicial System of Pennsylvania   that require filing confidential information and documents differently than non-confidential information and documents.

The acts committed by the accused, as listed and hereafter, were against the peace and dignity of the Commonwealth of Pennsylvania and were contrary to the Act(s) of the Assembly, or in violation of the statute cited.

(Before a warrant of arrest can be issued, an affidavit of probable cause must be completed, sworn to before the issuing authority, and attached.)

12/10/20
(Date)

(Signature of Affiant)

73.     Paragraph 3 of the above referenced Police Criminal Complaint is patently false.

74.     As part of his Police Criminal Complaint, Rodriguez included a sworn Affidavit of Probable Cause where he fabricated therein, to create probable cause against Mr. Garcia, that (a) "[c]asino surveillance was able to identify the defendant [Mr. Garcia] by the identification he

[(Mr. Garcia)] provided upon entering the casino;" and (b) that "[a]fter the defendant [(Mr. Garcia)] took the wallet from the slot machine chair the victim was gaming on, he [(Mr. Garcia)] quickly exited the casino. The Affidavit of Probable Cause is referenced below.



POLICE CRIMINAL COMPLAINT

| Docket Number CR568-20 | Date Filed 12/10/2020 | OTN/Live Scan Number U941616-4 | Complaint/Incident Number O531034502/PA 2020-1400396 | |
| Defendant Name | First MIGUEL | | Middle | Last GARCIA |

**AFFIDAVIT of PROBABLE CAUSE**

1. Your affiant is a member of the Pennsylvania State Police Bureau of Gaming Enforcement stationed at Wind Creek Casino, City of Bethlehem, Northampton County.

2. On 10/03/20 at approximately 0100 hrs. I was contacted by Wind Creek Casino security and surveillance reference a theft of a wallet from a patron.

3. The victim reported that his wallet contained various cards and $470.00 in cash along with approximately $100.00 in slot vouchers.

4. Casino surveillance was able to identify the defendant by the identification he provided upon entering the casino.

5. After the defendant took the wallet from the slot machine chair the victim was gaming on, he quickly exited the casino.

6. Based on the aforementioned facts, I respectfully request a summons be mailed to the defendant to answer to the Theft of Mislaid Property charge.

75.    Defendant Rodriguez signed his Affidavit of Probable Cause under oath. Said relevant portion is referenced below.

I, TPR. JOHNNY RODRIGUEZ           BEING DULY SWORN ACCORDING TO THE LAW, DEPOSE AND SAY THAT THE FACTS SET FORTH IN THE FOREGOING AFFIDAVIT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

I CERTIFY THAT THIS FILING COMPLIES WITH THE PROVISIONS OF THE CASE RECORDS PUBLIC ACCESS POLICY OF THE UNIFIED JUDICIAL SYSTEM OF PENNSYLVANIA THAT REQUIRE FILING CONFIDENTIAL INFORMATION AND DOCUMENTS DIFFERENTLY THAN NON-CONFIDENTIAL INFORMATION AND DOCUMENTS.

(Signature of Affiant)

76.    Even a cursory review of Rodriguez's Affidavit of Probable Cause reveals that (a) he worked in tandem (joint action) with Casino Security; and (b) that paragraphs 4 and 5 of the Affidavit of Probable Cause were fabricated to create probable cause against Mr. Garcia since both of these paragraphs contain patently false allegations about Mr. Garcia.

77.     The Casino Defendants, amongst other things, formulated a false report regarding Mr. Garcia which they titled "Supplemental Report", and which shall be referred to as the "Fabricated Report" herein.  The relevant portion of said Fabricated Report is referenced below.

| Arrest ☐ <br> Crime ☒ <br> Non-Criminal ☐ | ***Wind Creek Bethlehem Security*** <br> 77 Wind Creek Blvd <br> Bethlehem, PA 18015 <br> **Supplemental Report** | CASE # <br> 2010B-0214 <br> PAGE <br> 1 OF 1 |
|---|---|---|

OFFENSE(S) <br> Theft Of Property <br> Theft Of Property

OFFENSE(S) cont'd.

| DATE, TIME AND DAY OF OCCURENCE <br> 10/03/20 00:52 Saturday | | DATE AND TIME REPORTED <br> 10/03/20 00:52 | | |
|---|---|---|---|---|
| LOCATION OF OCCURENCE <br> SLOT ZONE K | LOCATION NAME <br> SLOT ZONE K | TYPE OF LOCATION | BEAT | SECTOR |

CASE SUMMARY <br> Surveillance contacted Security Management for a confirmed Theft. POI departed property before Security contact. Victim filed with PSP. POI will receive a citation via mail and a permanent eviction from property.

NARRATIVE

On October 3rd, 2020 at approximately 0102 hours, I (Security Supervisor; Amy Lopez) was contacted by Surveillance; Kent Jenkins for a confirmed that. Victim; missing his wallet that contain $470, (3) $100 dollar bills and a voucher in the amount of $100. The amount totaling $870. The other contents were drivers license and credit cards.

Jenkins stated that the POI departed property and he was tracking back to identify him. In the mean time; Saganowich III requested to file a report with the Pennsylvania State Police. At this time, Trooper Rodriguez responded to the Security Podium to take Saganowich report.

Jenkins confirmed the POI's identity to be Miguel Garcia. Garcia will be cited by PSP and will receive eviction paperwork via certified mail.

PSP Incident# PA2020-1400396

Notifications:
Surveillance: Kent Jenkins
Pennsylvania State Police: Trooper Rodriguez
Pennsylvania Gaming Control Board: Michelle Martinez

78.     The foregoing Fabricated Report appears to be printed under "Wind Creek Bethlehem Security" letterhead.

79.     On the upper left side of the Fabricated Report, the "crime" box is checked off.

80.     On the upper right side of the Fabricated Report, a "case #" was designated.

81.     In certain blocked sections located in the upper middle, the Fabricated Report contains the following designated information: (a) Offenses: *Theft of Property* (noted twice); (b) Date, Time and Day of Occurrence: *10/03/20, 00:52 Saturday*; (c) Date and Time Reported: *10/03/20, 00:52*; (d) Location of Occurrence: *Slot Zone K*; (e) Location Name: *Slot Zone K*; (f) Type of Location; (g) Beat; (h) Sector; (i) Case Summary: *Surveillance contacted Security Management for a confirmed Theft.  POI Departed property before Security contact.  Victim filed with PSP. POI will receive a citation via mail and a permanent eviction from property*."

82.     The first substantive paragraph of Wind Creek's Fabricated Report identifies "Amy Lopez" as a security supervisor and describes the date of incident.  At this juncture, given the limited information available to him, Plaintiff is unaware whether said individual (Security Supervisor: Amy Lopez) is one of the Casino Security Defendants.  Only initial disclosure(s) and/or discovery would allow Plaintiff to obtain specific information relating to this individual. Said information may lead to said individual being named specifically as defendant herein.

83.     The second substantive paragraph[4] of the Fabricated Report unequivocally reveals that Jenkins and Rodriguez were working in tandem (joint action) and were in agreement to create probable cause against Mr. Garcia under false pretenses.

84.     Like the preceding paragraph, the third[5] substantive paragraph of the Fabricated Report, also unequivocally reveals that Jenkins and Rodriguez were working in tandem (joint action) to fabricate evidence to create probable cause against Mr. Garcia so formal criminal charges could be asserted against him.

---

[4] The 2nd substantive paragraph indicates: "*Jenkins stated that the POI departed property and he was tracking back to identify him.  In the meantime, Saganowich III requested to file a report with the Pennsylvania State Police.  At this time, Trooper Rodriguez responded to the Security Podium to take Saganowich report*"

[5] The 3rd substantive paragraph indicates: "*Jenkins confirmed the POI's identity to be Miguel Garcia.  Garcia will be cited by PSP and will receive eviction paperwork via certified mail.*"

85.     The facts relating to Mr. Garcia in the third substantive paragraph of the Fabricated Report are patently false.

86.     Right below the third substantive paragraph, the Fabricated Report prescribed the following PSP Incident No.: PA2020-1400396.  As referenced in paragraphs in 73 and 75 above in this Amended Complaint, the PSP Incident Number contained in the Fabricated Report is identical to those prescribed by Rodriguez in the Police Criminal Complaint and Affidavit of Probable Cause which he formally filed against Mr. Garcia.

87.     Right below the PSP Incident Number (PA2020-1400396), the Fabricated Report, contains a "Notifications" section with the following titles/names of individuals: "Surveillance: Kent Jenkins, Pennsylvania State Police: Trooper Rodriguez, and Pennsylvania Gaming Control Board: Michelle Martinez[6]."

*Conspiracy & Acting Under Color of State Law*

88.     At all times material hereto, Rodriguez (a PSP Trooper stationed in Wind Creek Casino) as well as Jenkins and Casino Security (willful participants) were acting under color of state law since they were all working in tandem (joint action).

89.     At all times material hereto, Rodriguez (a PSP Trooper stationed in Wind Creek Casino) as well as Jenkins and Casino Security (willful participants) agreed (conspired) to prosecute Mr. Garcia without probable cause since they were all working in tandem (joint action).

90.     As averred with particularity above, Rodriguez by working in tandem (joint action) with Jenkins and Casino Security had a meeting of the minds to charge/prosecute Mr. Garcia without probable cause.

---

[6] At this juncture, given the limited information available to him, Plaintiff is unaware of the specific identity and/or working capacity and/or participation of the following individual: Michelle Martinez, Pennsylvania Gaming Control Board.  Only initial disclosure(s) and/or discovery would allow Plaintiff to obtain specific information relating to this individual.  Said information may lead to said individual being named specifically as defendant herein.

91.     In light of the foregoing meeting of the minds, Rodriguez by working in tandem (joint action) with Jenkins and Casino Security deprived Mr. Garcia of his constitutional right under color of law.

92.     On its face, the Wind Creek's Fabricated Report has characteristics akin to a formal criminal report formulated for law enforcement purposes.  The Fabricated Report, even if read alone (independent of Rodriguez's formal Criminal Complaint and/or Affidavit of Probable Cause), appears to falsely create probable cause against Mr. Garcia and ultimately assert false theft criminal charges against him as well.

93.     In addition to its physical characteristics bearing those of a formal criminal report for law enforcement purposes, the Fabricated Report unequivocally shows that Jenkins as well as other members of Wind Creek's Casino Security willfully participated in joint action, in this specific instance, against Mr. Garcia.

94.     The Fabricated Report, through its substantive language coupled with its designations and notifications, demonstrates (a) the overlap, interplay and joint action between the Casino Defendants (Jenkins, Casino Security) and the PSP (Defendant Trooper Rodriguez); and (b) given this willful participation with PSP (Defendant Trooper Rodriguez), Jenkins and Casino Security were acting under color of state law.

95.     The Fabricated Report was used in conjunction with Rodriguez's falsified criminal documents (as referenced above) to create probable cause against Mr. Garcia.

96.     At all times material hereto, there was <u>no</u> probable cause to charge Mr. Garcia for theft of property (§18 C.S.A. 3924).

97.     In addition to the joint actions and/or willful participation, referenced above, Wind Creek, expects for its security officers, like Jenkins and/or Casino Security, to be qualified by

engaging and/or participating in law enforcement responsibilities akin to Pennsylvania State Troopers, like Rodriguez.

98.     Based on publicly accessible information (https://windcreek.com/careers/current-openings/security-officer/security-officer-ft-or-pt-bethlehem-8905), to qualify for a "security officer" position for its Bethlehem location, Wind Creek requires, amongst other things, that a security officer candidate recognize that <u>position responsibilities</u>, amongst others, include (a) monitoring and assisting in the enforcement of casino policies and procedures, federal, state and local laws; (b) developing a working knowledge of Pennsylvania Gaming Commission Board ("PGCB") rules, regulations and internal controls; and (c) completing paperwork in accordance with PGCB approved standards.

99.     Given the joint actions between Casino Security and PSP, Wind Creek, as reflected in their online job application (referenced above), requires that candidates for their security officer positions possess knowledge of federal, state and local laws as the PGCB rules, regulations and standards.

100.    Based on publicly accessible information (https://windcreek.com/careers/current-openings/security-officer/security-officer-ft-or-pt-bethlehem-8905), to qualify for a "security officer" position for its Bethlehem location, Wind Creek requires, amongst other things, that a security officer candidate have the following <u>specific position requirement</u> (a) prior experience in civilian or military law enforcement, casino/hotel security, or industrial security preferred.

101.    Given the joint actions between Casino Security and PSP, Wind Creek, as reflected in their online job application (referenced above), prefer that candidates for their security officer positions have a civilian or military law enforcement background.

102.   The job responsibilities of Wind Creek's security officers, like the Defendants named herein, go far beyond detaining a shoplifter, rather, they actively participate in law enforcement working in tandem with PSP who maintain an office in the Wind Creek Casino.

103.   In light of all of the foregoing, Jenkins and Casino Security, at all times material hereto were acting under color of state law.

*1/21/21 Preliminary Hearing*

104.   Plaintiff never received notice that a Preliminary Hearing had been scheduled for 1/21/21 to address the false criminal charge which had been asserted against him as set forth above.

105.   Plaintiff had no idea that any criminal proceeding had been initiated against him since he had never committed any wrongdoing.

106.   Plaintiff had no idea that any criminal proceeding had been initiated against him since he was unaware that Rodriguez and/or Jenkins and/or Casino Security and/or a combination of these individuals conspired (willfully participated) to fabricate evidence to create probable cause against him so a criminal case was initiated.

107.   Having no notice of alleged wrongdoing and/or actual notice of the scheduled hearing, Mr. Garcia did not appear for the 1/21/21 Hearing.

108.   As a result of his absence, a bench warrant was issued against Mr. Garcia.

*2/14/21 Visit to Wind Creek*

109.   On 2/14/21, unaware of the false criminal charges as well as issuance of a bench warrant against him, Mr. Garcia went to the Wind Creek casino to recreate as usual.

110.   On that night, Mr. Garcia customarily entered the casino by first going through the security podium at the Bus Entrance and then proceeded to begin recreating at a slot machine area.  He placed his Wind Creek Rewards Member Card into the slot machine and began to play.

111.    Approximately 20 minutes into Mr. Garcia playing the slot machine, he was confronted by one of the Wind Creek's Casino Security guards.  This certain member of Casino Security wore a badge with the name "David Supervisor Security" prescribed therein.  Said badge also had the following number "47633" inscribed therein.  The specific identity (first, last name) of this member of Casino Security and the significance of the number is currently unknown to Plaintiff.  This individual shall be referred to as "David" herein.

112.    Upon confrontation, David indicated to Mr. Garcia that he had been previously evicted from Wind Creek for stealing another patron's wallet during one of his previous casino visits.  In a feeble attempt to support his false accusations, David showed Mr. Garcia an image (photo) of the alleged wrongdoer who was, unequivocally, one of the Hispanic Males; not Mr. Garcia.  In fact, a mere glance of said image showed that the true perpetrator was one of the Hispanic Males and not Mr. Garcia.

113.    In light of the foregoing, David (a) discriminated Mr. Garcia by clustering him as one of the Hispanic Males (the actual wrongdoers) based upon his race and/or color and/or national origin; and/or (b) exercised bias-policing (bias law enforcement).

114.    Plaintiff exhaustively tried to explain to David that he had never done anything wrong at Wind Creek.  Mr. Garcia emphatically stated to David that "Wind Creek had identified the wrong guy!"  To make matters worse, Mr. Garcia even asked David to simply look at the image in his hands which clearly was not Mr. Garcia, rather, it unequivocally showed one of the Hispanic Males.

115.    At all times material hereto, David, as well as other Casino Security failed to convey to Mr. Garcia that Rodriguez and/or Jenkins and/or Casino Security and/or a combination of these

individuals had fabricated evidence on 10/3/20 to create probable cause against him so a criminal case was initiated against him.

116.    At all times material hereto, David, as well as other Casino Security, were reckless and/or utterly disregarded and/or showed deliberate indifference to Mr. Garcia's pleas for the truth.

117.    At all times material hereto, David as well as other Casino Security discriminated against Mr. Garcia by clustering him as one of the Hispanic Males (the actual wrongdoers), based upon his race and/or color and/or national origin, and characterized him as a thief.

118.    Seeing that attempts to reason with Casino Security were futile and that he was being discriminated, Mr. Garcia stepped out of the Casino to voluntarily contact the Bethlehem Police Department ("BPD") so he could explain to them that he was being falsely accused of theft.

119.    BPD responded to the casino. Initially, BPD officers went into the casino to be briefed by Casino Security.

120.    Casino Security conveyed false information to the BPD relating to Mr. Garcia, including but not limited to him being a thief and that he should be arrested.

121.    The BPD returned to Mr. Garcia to inform him that he was being placed under arrest due to an outstanding bench warrant from the 1/21 Hearing relating to theft charges which had been falsely asserted against him by Wind Creek and through Rodriguez of the PSP.

122.    Officers Brailo, Heaton and Holschwander of the BPD, working in conjunction, placed Mr. Garcia under arrest and transported him to the BPD facility.

*False Arrest, Unlawful Detainment & False Imprisonment*

123.    After being falsely arrested, Mr. Garcia was placed in a holding cell at the Bethlehem Police Department from 8:30pm to 11:00pm while he awaited for further false imprisonment; he

was waiting for a deputy from the Northampton County Sheriff to transport him to Northampton County Prison.

124.    On that same evening, Mr. Garcia was transferred to Northampton County Prison by the Sheriff's Department so he could commence a further period of false imprisonment.

125.    Mr. Garcia was wrongfully imprisoned in Northampton County Prison from 2/14/21 to 2/16/21 for a total of THREE (3) days.

126.    At all times material hereto, Plaintiff was unlawfully detained without justification.

127.    At all times material hereto, Plaintiff was unlawfully imprisoned without justification.

*Criminal Charges against Mr. Garcia are Dropped*

128.    After a diligent investigation of the actual surveillance footage and photographs by the District Attorney, Mr. Garcia was fully exonerated of the criminal charge(s) against him which had been falsely asserted against him by the Defendants.

129.    On 4/23/21, Northampton County Assistant District Attorney Patricia Turzyn ("ADA Turzyn") was authorized to agree to a *Nolle Prosequi* as to Mr. Garcia's false criminal charge.

130.    On 4/27/21, the *Nolle Prosequi* was entered onto the criminal docket and the action was formally discontinued against Mr. Garcia.

131.    The *Nolle Prosequi* reflects "mis-identification" as its basis.

*Subject Matter Surveillance*

132.    At all times material hereto, all Defendants failed to reasonably and/or properly review the Subject Matter Surveillance which would have expeditiously exonerated Mr. Garcia from any wrongdoing.

133.    According to documents provided to undersigned counsel by the Northampton County

District Attorney's office, the Subject Matter Surveillance, used to charge Mr. Garcia, was in the

control and maintenance of (a) the Casino Defendants; and (b) the PSP (through Rodriguez).

134.    The Subject Matter Surveillance from the underling date of incident (10/3/20) reveals, in

relevant part, that:

a.  21:39 (12:21 am) - the actual thief (one of the Hispanic Males) entered the
    casino at on or about 21:39 (12:21 am); mere moments before Mr. Garcia and
    within the vantage point from the Bus Entrance's security podium;

b.  26:57 (12:26 am) – Mr. Garcia went to play slot machines separately and
    distinctly from the Hispanic Males and Saganowich;

c.  26:57 (12:26 am) - 39:26 (12:39am) – the actual thief (one of the Hispanic
    Males) is in direct proximity to the victim (Saganowich).  In the same
    surveillance vantage point, Mr. Garcia is seated separately and distinctly while
    continuing to play his slot machine;

d.  39:00 (12:39 am) - the victim (Saganowich) departs the slot machine area but
    leaves his wallet behind.  In the same surveillance vantage point, Mr. Garcia is
    seated separately and distinctly while continuing to play his slot machine;

e.  39:26 (12:39am) – the actual thief (one of the Hispanic Males) begins casing
    the victim's wallet which now is laying on an unoccupied slot-machine chair
    and.  In the surveillance same vantage point, Mr. Garcia is seated separately
    and distinctly while continuing to play his slot machine;

f.  39:26 (12:39am) – the actual thief (one of the Hispanic Males) steals the
    wallet.  In the same surveillance vantage point, Mr. Garcia is seated separately
    and distinctly while continuing to play his slot machine;

g.  39:42 (12:39 am) -  the actual thief (one of the Hispanic Males) leaves the slot
    parlor area in possession of victim's wallet.  In the same surveillance vantage
    point, Mr. Garcia is seated separately and distinctly while continuing to play
    his slot machine; and

h.  45:12 (12:45 am) – in a different area of the casino floor, the actual thief (one
    of the Hispanic Males) uses a voucher from the victim's wallet to participate
    in a game of chance.  Mr. Garcia is nowhere to be seen in this surveillance
    vantage point.

135.    In light of being provided the foregoing information and evidence by the Northampton County's District Attorney's Office, Plaintiff believes and thus avers that the Wind Creek Casino Bethlehem is equipped with hundreds of security cameras and/or sophisticated surveillance which would provide the <u>best</u> information and evidence to either Rodriguez and/or Jenkins and/or Casino Security as to who the true perpetrator was on the date of incident.

136.    The <u>actual</u> footage obtained from Wind Creek's security cameras and/or sophisticated surveillance caused the Assistant District Attorney of Northampton County to terminate/dismiss the criminal charges against Mr. Garcia in his favor.

137.    Given the existence of the actual footage (obtained from Wind Creek's security cameras and/or sophisticated surveillance), Rodriguez and/or Jenkins and/or Casino Security and/or a combination of these individuals conspired (willfully participated) to fabricate evidence, through Rodriguez's false Criminal Complaint (referenced at ¶73), Rodriguez's false Affidavit of Probable Cause (referenced at ¶75), Wind Creek's Fabricated report (referenced at ¶78) to create probable cause against Mr. Garcia.

*Damage of Reputation & Lost Wages*

138.    Upon being release from Northampton County Prison, Mr. Garcia, an engineer, was compelled to inform his employer (LTS) that he had been falsely arrested and falsely imprisoned and that he was being maliciously prosecuted for a crime which he never committed.

139.    During the pendency of the malicious prosecution initiated against him, the shift manager ("Manager") became aware of the foregoing.  In doing so, the Manager began to refer to Mr. Garcia as the "criminal" openly in the workplace.  In publicly referring to Mr. Garcia, the Manager would make comments like: "Hey Criminal, come over here" around Mr. Garcia's co-workers in the workplace.

140.    Said comments had such a damning effect to Mr. Garcia's reputation in the workplace that he was compelled to transfer from second shift (2:20pm – 10:20pm) to third shift (10:20pm – 6:20am).

141.    Prior to the incidents which form the subject matter of this lawsuit, Mr. Garcia's reputation at LTS was impeccable.  Without any doing of his own, rather, by the collective wrongdoing of the Defendants, Mr. Garcia's workplace reputation became irreparably damaged and he suffered humiliation and embarrassment as a result thereof.

142.    As a result of the malicious prosecution, false arrest and false imprisonment, Mr. Garcia was compelled to miss five (5) days at work.

*Discrimination, Racial Profiling and Bias-Based Policing - PSP*

143.    By clustering Mr. Garcia with the Hispanic Males true perpetrators (Hispanic Males), Rodriguez discriminated Plaintiff, a Hispanic.  This discrimination lead to Rodriguez fabricating evidence to create probable cause of formal criminal wrongdoing against Mr. Garcia.  The result of Rodriguez's discrimination against Mr. Garcia, a Hispanic, violated his constitutional rights and deprived him liberty (sitting in jail for 3 days despite being a completely innocent individual).

144.    By clustering Mr. Garcia with the Hispanic Males true perpetrators (Hispanic Males), Rodriguez racially-profiled Plaintiff, a Hispanic.  This racial profiling lead to Rodriguez fabricating evidence to create probable cause of formal criminal wrongdoing against Mr. Garcia.  The result of Rodriguez's racial-profiling of Mr. Garcia, a Hispanic, violated his constitutional rights and deprived him liberty (sitting in jail for 3 days despite being a completely innocent individual).

145.     By clustering Mr. Garcia with the Hispanic Males true perpetrators (Hispanic Males),

Rodriguez exercised bias-based policing against Plaintiff, a Hispanic.  This bias-based policing

lead to Rodriguez fabricating evidence to create probable cause of formal criminal wrongdoing

against Mr. Garcia.  The result of Rodriguez's bias-based policing against Mr. Garcia, a

Hispanic, violated his constitutional rights and deprived him liberty (sitting in jail for 3 days

despite being a completely innocent individual).

146.     As averred above and as more fully set forth below, Defendant Evanchick

(Commissioner of the PSP) has refused to immediately implement annual training to prevent

bias-based policing.

*Discrimination, Racial Profiling and Bias-Based Policing – Wind Creek Casino*

147.     By clustering Mr. Garcia with the Hispanic Males true perpetrators (Hispanic Males),

Jenkins and/or Casino Security discriminated Plaintiff, a Hispanic.  This discrimination lead to

Jenkins and/or Casino Security working with Rodriguez to fabricate evidence to create probable

cause (as averred with particularity and specificity above) of formal criminal wrongdoing against

Mr. Garcia.  The result of such discrimination against Mr. Garcia, a Hispanic, violated his

constitutional rights and deprived him liberty (sitting in jail for 3 days despite being a completely

innocent individual).

148.     By clustering Mr. Garcia with the Hispanic Males true perpetrators (Hispanic Males),

Jenkins and/or Casino Security racially profiled Plaintiff, a Hispanic.  This discrimination lead to

Jenkins and/or Casino Security working with Rodriguez to fabricate evidence to create probable

cause (as averred with particularity and specificity above) of formal criminal wrongdoing against

Mr. Garcia.  The result of such racial profiling against Mr. Garcia, a Hispanic, violated his

constitutional rights and deprived him liberty (sitting in jail for 3 days despite being a completely innocent individual).

149.     By clustering Mr. Garcia with the Hispanic Males true perpetrators (Hispanic Males), Jenkins and/or Casino Security exercised bias-based policing against Plaintiff, a Hispanic.  This bias-based policing lead to Jenkins and/or Casino Security working with Rodriguez to fabricate evidence to create probable cause (as averred with particularity and specificity above) of formal criminal wrongdoing against Mr. Garcia.  The result of such bias-based policing against Mr. Garcia, a Hispanic, violated his constitutional rights and deprived him liberty (sitting in jail for 3 days despite being a completely innocent individual).

150.     Based on publicly accessible information (https://windcreek.com/careers/current-openings/security-officer/security-officer-ft-or-pt-bethlehem-8905), to qualify for a "security officer" position for its Bethlehem location, Wind Creek does not require and/or prefer that a candidate have knowledge and/or understanding and/or experience with anti-bias based policing training.

151.     Upon information and belief, Wind Creek Casino does not maintain and/or implement practices and/or policies and/or internal procedures to train its security personnel in a manner that would prevent bias-based policing and/or racial profiling.

*Evanchick's Refusal to Implement Annual Anti-Bias Training for Troopers*

152.     As averred above, Evanchick, at all times material hereto, has refused to implement annual anti-bias training ("ABT") for PSP troopers, while serving in his capacity as Commissioner of the PSP, despite receiving recommendation from the State Law Enforcement Citizens Advisory Commission; formed by Governor Tom Wolf as part of a nationwide movement for racial injustice and equality.

153.    On 2/22/22, the Morning Call (*See* https://mcall.com/news/local/mc-nws-state-police-biased-training-recommendations-20220222-anheh3ck6vabnpkhid7yplohfy-story.html) reported that the State Law Enforcement Citizens Advisory Commission recommended to Evanchick that the Pennsylvania State Police polices relating to bias-based policing such as:

    a.  Better define bias-based conduct against all protected classes and, where feasible, provide examples and descriptions of what may constitute such conduct;

    b.  Ban employee memberships and/or affiliations with groups that may interfere with the agency's operations, limit its ability to function and/or bring it into disrepute;

    c.  Ban employees from using social or other publicly accessible media to engage in bias-based or other discriminatory or offensive behavior against all protected classes;

    d.  Mandate employees to report co-workers engaging in bias-based policing and/or other discriminatory or offensive conduct. Require all investigations into bias-based policing complaints be completed in compliance with internal affairs policies and procedures, and require investigators to receive annual training in such complaints;

    e.  Mandate annual in-service bias-based or implicit-bias training for all employees; and

    f.  Reaffirm and mandate that all bias-based policing complaints are fully and properly investigated and judiciously acted on. And, if an underlying court case is pending against the complainant, notify the complainant in writing of the investigation's temporary suspension and how to refile their complaint once the case has been adjudicated.

154.    As noted in the news article, Evanchick believes that implementation of the foregoing recommendation is not necessary since (a) cadets receive anti-bias and implicit bias training at the academy; and (b) Internal Affairs Division and Heritage Affairs Section investigate bias complaints.

155.    One member of the State Law Enforcement Citizens Advisory Commission (Boyer) was quoted as saying the following in response to Evanchick's decision to not immediately implement the foregoing recommendations:

      a.  "I consider this to be really low-hanging fruit they can easily implement," said Boyer, who is also is active with the NAACP's Easton branch;

      b.  "What does 'adequate' mean?" asked Boyer, who chairs the bias-based policing committee. "How is one-time academy training for cadets, as opposed to annual training throughout their careers as troopers and investigators, sufficient in helping reduce the number of implicit-bias complaints against state police?" and

      c.  Boyer asked, "But again, how often is that training? Wouldn't it be more proactive to annually train members to recognize and avoid bias, instead of letting it get to the point where there are incidents having to be reviewed by Internal Affairs?"

156.    Evanchick's implementation of the annual ABT policy and/or practice would have assisted in preventing Rodriguez from discriminating and/or racially profiling and/or exercising bias-based policing against Mr. Garcia, a Hispanic American.

157.    As averred above, at this juncture, Evanchick's rationale and/or basis to forego immediate implementation of an annual ABT for PSP troopers and may only be obtained by Plaintiff through initial disclosure and/or discovery practice; specifically taking the deposition of Evanchick.

*42 U.S.C. §1988*

158.    Where applicable in the Counts relating civil rights below, Plaintiff is entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law.

## COUNT I

## [PLAINTIFF v. RODRIGUEZ, JENKINS & CASINO SECURITY]

**VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS, SPECIFICALLY, 42 U.S.C. §1983 AND THE FOURTH AND FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION**

**MALICIOIUS PROSECUTION**

159.    Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Amended Complaint as if fully set forth herein.

160.    Plaintiff claims and seeks recovery of damages for the injuries set forth herein under 42 U.S.C. §1983 against Defendants Rodriguez, Jenkins and Casino Security for violations of Plaintiff's constitutional rights under color of law.

161.    At all times relevant hereto, pursuant to 42 U.S.C. §1983 and the Fourth Amendment to the United States Constitution, Plaintiff had the right to be free from prosecution without probable cause.

162.    At all times relevant hereto, pursuant to 42 U.S.C. §1983 and the Fourteenth Amendment to the United States Constitution, Plaintiff had the right to equality under the law.

163.    Defendant Rodriguez, acting within the course and scope of his employment, under color of state law (as a Pennsylvania State Trooper stationed within the PSP's office in Wind Creek Casino) intentionally and maliciously fabricated evidence to create probable cause of a crime against Mr. Garcia.

164.    Defendant Rodriguez intentionally and maliciously caused Mr. Garcia to be criminally charged without probable cause and maliciously prosecuted Plaintiff in violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

165.    Defendants Jenkins and Casino Security, acting within the course and scope of their employment as agents and/or employees of Wind Creek Casino and acting under color as state law (as set forth with particularity throughout the Factual Allegations Section above) working in

tandem (joint action) with Rodriguez intentionally and maliciously fabricated evidence to create probable cause of a crime against Mr. Garcia.

166.    Defendants Jenkins and Casino Security intentionally and maliciously caused Mr. Garcia to be criminally charged <u>without probable cause</u> and maliciously prosecuted Plaintiff in violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

167.    Despite being an innocent individual, due to the willful and/or wanton and/or reckless conduct of Defendants Rodriguez, Jenkins and Casino Security, Mr. Garcia suffered a deprivation of liberty by (a) being imprisoned for 3 days; (b) have conditions of a bail bond imposed upon him; and (c) be expected to attend court hearings.

168.    All of the charges against Plaintiff were dismissed and the prosecution against him was terminated in Mr. Garcia's favor.

169.    The actions of Defendants, and each of them, were so malicious, intentional, willful, wanton and/or done with a reckless disregard for the rights of Plaintiff, thereby subjecting these Defendants to punitive damages.

170.    As a direct and proximate result of the acts committed and/or perpetrated by Defendants, Plaintiff suffered the following injuries and damages:

       a.   Plaintiff's rights under the Fourth and Fourteenth Amendments were violated;

       b.   fright, horror and shock;

       c.   emotional trauma and suffering;

       d.   damage to Plaintiff's reputation;

       e.   economic damages in the form of lost wages; and

       f.   economic damages related to any other consequential cost.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendants Rodriguez, Jenkins and Casino Security (once identified through disclosure and/or discovery), jointly and severally, in an amount in excess of the $150,000.00 arbitration limit for the United States District Court for the Eastern District of Pennsylvania, together with punitive damages, and other relief, including costs of suit, reasonable attorney and expert fees as well as all such further relief as this Honorable Court deems just and proper.

**COUNT II**

**[PLAINTIFF v. RODRIGUEZ, JENKINS & CASINO SECURITY]**

**VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS, SPECIFICALLY, 42 U.S.C. §1983 AND THE FOURTH AND FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION**

**<u>FALSE ARREST</u>**

171.    Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Amended Complaint as if fully set forth herein.

172.    As averred with particularity numerous times above, Rodriguez in tandem (joint action) with Jenkins and Casino Security, working under color of state law, caused the malicious prosecution, false arrest and false imprisonment of Plaintiff <u>without probable cause</u> or legal justification in violation of Mr. Garcia's right to be free from unreasonable seizures under the Fourth Amendment to the United States Constitution.

173.    Defendant Rodriguez, acting within the course and scope of his employment, under color of state law (as a Pennsylvania State Trooper stationed within the PSP's office in Wind Creek Casino), deprived Mr. Garcia of his rights, privileges and immunities under the Laws and Constitutions of the Commonwealth of Pennsylvania and the United States; in particular, the right to be free from false arrest by an officer and/or a person acting under color of state law;

which violated his rights under the Fourth and Fourteenth Amendments to the Constitution of the United States, the Constitution of the Commonwealth of Pennsylvania, the Laws of the United States and of the Commonwealth of Pennsylvania, and were in violation of 42 U.S.C. §1983.

174.     Defendants Jenkins and Casino Security, acting within the course and scope of their employment as agents and/or employees of Wind Creek Casino and acting under color as state law (as set forth with particularity throughout the Factual Allegations Section above) working in tandem (joint action) with Rodriguez, deprived Mr. Garcia of his rights, privileges and immunities under the Laws and Constitutions of the Commonwealth of Pennsylvania and the United States; in particular, the right to be free from false arrest by an officer and/or a person acting under color of state law; which violated his rights under the Fourth and Fourteenth Amendments to the Constitution of the United States, the Constitution of the Commonwealth of Pennsylvania, the Laws of the United States and of the Commonwealth of Pennsylvania, and were in violation of 42 U.S.C. §1983.

175.     Defendant Rodriguez, acting within the course and scope of his employment, under color of state law (as a Pennsylvania State Trooper stationed within the PSP's office in Wind Creek Casino), intentionally and maliciously caused Mr. Garcia to be arrested and prosecuted without probable cause, humiliated and insulted; and used his position of authority illegally and improperly to punish Plaintiff by the above described actions, all of which actions violated the Plaintiff's rights under the Fourth and Fourteenth Amendments to the Constitution of the United States, the Constitution of the Commonwealth of Pennsylvania, the Laws of the United States and of the Commonwealth of Pennsylvania, and were in violation of 42 U.S.C. §1983.

176.     Defendants Jenkins and Casino Security, acting within the course and scope of their employment as agents and/or employees of Wind Creek Casino and acting under color as state

law (as set forth with particularity throughout the Factual Allegations Section above) working in tandem (joint action) with Rodriguez, intentionally and maliciously caused Mr. Garcia to be arrested and prosecuted without probable cause, humiliated and insulted; and used their positions of authority, within the Wind Creek Casino, illegally and improperly to punish Plaintiff by the above described actions, all of which actions violated the Plaintiff's rights under the Fourth and Fourteenth Amendments to the Constitution of the United States, the Constitution of the Commonwealth of Pennsylvania, the Laws of the United States and of the Commonwealth of Pennsylvania, and were in violation of 42 U.S.C. §1983.

177.    The actions of Defendants, and each of them, were so malicious, intentional, willful, wanton and/or done with a reckless disregard for the rights of Plaintiff, thereby subjecting these Defendants to punitive damages

178.    As a direct and proximate result of the acts committed and/or perpetrated by Defendants, Plaintiff suffered the following injuries and damages:

        a.  Plaintiff's rights under the Fourth and Fourteenth Amendments were violated;

        b.  fright, horror and shock;

        c.  emotional trauma and suffering;

        d.  damage to Plaintiff's reputation;

        e.  economic damages in the form of lost wages; and

        f.  economic damages related to any other consequential cost.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendants Rodriguez, Jenkins and Casino Security (once identified through disclosure and/or discovery), jointly and severally, in an amount in excess of the $150,000.00 arbitration limit for the United States District Court for the Eastern District of Pennsylvania, together with

punitive damages, and other relief, including costs of suit, reasonable attorney and expert fees as well as all such further relief as this Honorable Court deems just and proper.

### COUNT III

### [PLAINTIFF v. RODRIGUEZ, JENKINS & CASINO SECURITY]

### VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS, SPECIFICALLY, 42 U.S.C. §1983 AND THE FOURTH AND FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION

### <u>FALSE IMPRISONMENT</u>

179.    Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Amended Complaint as if fully set forth herein.

180.    As averred with particularity numerous times above, Rodriguez in tandem (joint action) with Jenkins and Casino Security, working under color of state law, caused the malicious prosecution, false arrest and false imprisonment of Plaintiff <u>without probable cause</u> or legal justification in violation of Mr. Garcia's right to be free from unreasonable seizures under the Fourth Amendment to the United States Constitution.

181.    Defendant Rodriguez, acting within the course and scope of his employment, under color of state law (as a Pennsylvania State Trooper stationed within the PSP's office in Wind Creek Casino), deprived Mr. Garcia of his rights, privileges and immunities under the Laws and Constitutions of the Commonwealth of Pennsylvania and the United States; in particular, the right to be free from false imprisonment; which violated his rights under the Fourth and Fourteenth Amendments to the Constitution of the United States, the Constitution of the Commonwealth of Pennsylvania, the Laws of the United States and of the Commonwealth of Pennsylvania, and were in violation of 42 U.S.C. §1983.

182.    Defendants Jenkins and Casino Security, acting within the course and scope of their employment as agents and/or employees of Wind Creek Casino and acting under color as state law (as set forth with particularity throughout the Factual Allegations Section above) working in tandem (joint action) with Rodriguez, deprived Mr. Garcia of his rights, privileges and immunities under the Laws and Constitutions of the Commonwealth of Pennsylvania and the United States; in particular, the right to be free from false imprisonment; which violated his rights under the Fourth and Fourteenth Amendments to the Constitution of the United States, the Constitution of the Commonwealth of Pennsylvania, the Laws of the United States and of the Commonwealth of Pennsylvania, and were in violation of 42 U.S.C. §1983.

183.    Defendant Rodriguez, acting within the course and scope of his employment, under color of state law (as a Pennsylvania State Trooper stationed within the PSP's office in Wind Creek Casino), intentionally and maliciously caused Mr. Garcia to be falsely imprisoned without probable cause, humiliated and insulted; and used his position of authority illegally and improperly to punish Plaintiff by the above described actions, all of which actions violated the Plaintiff's rights under the Fourth and Fourteenth Amendments to the Constitution of the United States, the Constitution of the Commonwealth of Pennsylvania, the Laws of the United States and of the Commonwealth of Pennsylvania, and were in violation of 42 U.S.C. §1983.

184.    Defendants Jenkins and Casino Security, acting within the course and scope of their employment as agents and/or employees of Wind Creek Casino and acting under color as state law (as set forth with particularity throughout the Factual Allegations Section above) working in tandem (joint action) with Rodriguez, intentionally and maliciously caused Mr. Garcia to be falsely imprisoned without probable cause, humiliated and insulted; and used their positions of authority, within the Wind Creek Casino, illegally and improperly to punish Plaintiff by the

above described actions, all of which actions violated the Plaintiff's rights under the Fourth and Fourteenth Amendments to the Constitution of the United States, the Constitution of the Commonwealth of Pennsylvania, the Laws of the United States and of the Commonwealth of Pennsylvania, and were in violation of 42 U.S.C. §1983.

185.    The actions of Defendants, and each of them, were so malicious, intentional, willful, wanton and/or done with a reckless disregard for the rights of Plaintiff, thereby subjecting these Defendants to punitive damages.

186.    As a direct and proximate result of the acts committed and/or perpetrated by Defendants, Plaintiff suffered the following injuries and damages:

        a.   Plaintiff's rights under the Fourth and Fourteenth Amendments were violated;

        b.   fright, horror and shock;

        c.   emotional trauma and suffering;

        d.   damage to Plaintiff's reputation;

        e.   economic damages in the form of lost wages; and

        f.   economic damages related to any other consequential cost.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendants Rodriguez, Jenkins and Casino Security (once identified through disclosure and/or discovery), jointly and severally, in an amount in excess of the $150,000.00 arbitration limit for the United States District Court for the Eastern District of Pennsylvania, together with punitive damages, and other relief, including costs of suit, reasonable attorney and expert fees as well as all such further relief as this Honorable Court deems just and proper.

**COUNT IV**

**[PLAINTIFF v. RODRIGUEZ, JENKINS & CASINO SECURITY]**

**VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS, SPECIFICALLY, 42 U.S.C. §1983 AND THE FOURTH AND FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION**

## CONSPIRACY

187.    Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Amended Complaint as if fully set forth herein.

188.    The conspiracy allegations were averred with specificity and particularity in the Factual Allegations section above (¶¶68-87 (*Fabrication of Evidence to Create Probable Cause against Mr. Garcia*) and ¶¶88-103 (*Conspiracy & Acting Under Color of State Law*)).

189.    As set forth above, Defendants Rodriguez, Jenkins and Casino Security, for illegal and unconstitutional reasons, entered into a conspiracy to violate Mr. Garcia's Fourth Amendment right to be free from an unreasonable seizure.

190.    Defendants Rodriguez, Jenkins and Casino Security performed overt acts in furtherance of the conspiracy, including but not limited to reaching an agreement or meeting of the minds, to criminally charge and prosecute Mr. Garcia without probable cause for theft.

191.    The conspiracy directly and proximately resulted in harm to Mr. Garcia, including the deprivation of his rights and privileges under the Constitution of the United States.

192.    The actions of Defendants, and each of them, were so malicious, intentional, willful, wanton and/or done with a reckless disregard for the rights of Plaintiff, thereby subjecting these Defendants to punitive damages.

193.    As a direct and proximate result of the acts committed and/or perpetrated by Defendants, Plaintiff suffered the following injuries and damages:

        a.   Plaintiff's rights under the Fourth and Fourteenth Amendments were violated;

        b.   fright, horror and shock;

c.   emotional trauma and suffering;

d.   damage to Plaintiff's reputation;

e.   economic damages in the form of lost wages; and

f.   economic damages related to any other consequential cost.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendants Rodriguez, Jenkins and Casino Security (once identified through disclosure and/or discovery), jointly and severally, in an amount in excess of the $150,000.00 arbitration limit for the United States District Court for the Eastern District of Pennsylvania, together with punitive damages, and other relief, including costs of suit, reasonable attorney and expert fees as well as all such further relief as this Honorable Court deems just and proper.

## COUNT V

### [PLAINTIFF v. RODRIGUEZ, JENKINS & CASINO SECURITY]

### DISCRIMINATION ON THE BASIS OF RACE, COLOR, NATIONAL ORIGIN

### <u>VIOLATION OF 42 U.S.C. §1981</u>

194.   Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Amended Complaint as if fully set forth herein.

195.   As averred above, Mr. Garcia is of Mexican nationality.

196.   The discrimination allegations were averred with specificity and particularity in the Factual Allegations section above (¶¶65, 113, 117 and 143-151).

197.   The intentional discrimination manifested towards Mr. Garcia by Rodriguez and/or Jenkins and/or Casino Security (specifically David) was based on his race and/or color and/or national origin.

198.    The intentional exercise of racial profiling manifested towards Mr. Garcia by Rodriguez and/or Jenkins and/or Casino Security (specifically David) was based on his race and/or color and/or national origin.

199.    The intentional exercise of bias-based policing manifested towards Mr. Garcia by Rodriguez and/or Jenkins and/or Casino Security (specifically David) was based on his race and/or color and/or national origin.

200.    Defendants' conduct violated Plaintiff's equal right to recreate (make and enforce a contract) at the Casino as is enjoyed by white citizens.

201.    Defendants' conduct violated Plaintiff's equal right to recreate (make and enforce a contract) at the Casino as is enjoyed by white citizens who, unlike Mr. Garcia, were free from malicious prosecution.

202.    Defendants' conduct violated Plaintiff's equal right to recreate (make and enforce a contract) at the Casino as is enjoyed by white citizens who, unlike Mr. Garcia, were free from false arrest.

203.    Defendants' conduct violated Plaintiff's equal right to recreate (make and enforce a contract) at the Casino as is enjoyed by white citizens who, unlike Mr. Garcia, were free from false imprisonment.

204.    As a direct and proximate result of the intentional discrimination perpetrated by Defendants, Plaintiff suffered the following injuries and damages:

   a.  Plaintiff's rights under the Fourth Amendment were violated;

   b.  fright, horror and shock;

   c.  emotional trauma and suffering;

   d.  damage to Plaintiff's reputation;

    e.   economic damages in the form of lost wages; and

    f.   economic damages related to any other consequential cost.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendants Rodriguez, Jenkins and Casino Security (once identified through disclosure and/or discovery), jointly and severally, in an amount in excess of the $150,000.00 arbitration limit for the United States District Court for the Eastern District of Pennsylvania, together with punitive damages, and other relief, including costs of suit, reasonable attorney and expert fees as well as all such further relief as this Honorable Court deems just and proper.

## COUNT VI

## [PLAINTIFF v. RODRIGUEZ, JENKINS & CASINO SECURITY]

## DISCRIMINATION ON THE BASIS OF RACE, COLOR, NATIONAL ORIGIN

## <u>VIOLATION OF 42 U.S.C. §1982</u>

205.   Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Amended Complaint as if fully set forth herein.

206.   As averred above, Mr. Garcia is of Mexican nationality.

207.   The discrimination allegations were averred with specificity and particularity in the Factual Allegations section above (¶¶65, 113, 117 and 143-151).

208.   The intentional discrimination manifested towards Mr. Garcia by Rodriguez and/or Jenkins and/or Casino Security (specifically David) was based on his race and/or color and/or national origin.

209.   The intentional exercise of racial profiling manifested towards Mr. Garcia by Rodriguez and/or Jenkins and/or Casino Security (specifically David) was based on his race and/or color and/or national origin.

210.    The intentional exercise of bias-based policing manifested towards Mr. Garcia by Rodriguez and/or Jenkins and/or Casino Security (specifically David) was based on his race and/or color and/or national origin.

211.    Defendants' conduct violated Plaintiff's equal right to recreate (make and enforce a contract) at the Casino as is enjoyed by white citizens.

212.    Defendants' conduct violated Plaintiff's equal right to recreate (make and enforce a contract) at the Casino as is enjoyed by white citizens who, unlike Mr. Garcia, were free from malicious prosecution.

213.    Defendants' conduct violated Plaintiff's equal right to recreate (make and enforce a contract) at the Casino as is enjoyed by white citizens who, unlike Mr. Garcia, were free from false arrest.

214.    Defendants' conduct violated Plaintiff's equal right to recreate (make and enforce a contract) at the Casino as is enjoyed by white citizens who, unlike Mr. Garcia, were free from false imprisonment.

215.    As a direct and proximate result of the intentional discrimination perpetrated by Defendants, Plaintiff suffered the following injuries and damages:

        a.   Plaintiff's rights under the Fourth and Fourteenth Amendments were violated;

        b.   fright, horror and shock;

        c.   emotional trauma and suffering;

        d.   damage to Plaintiff's reputation;

        e.   economic damages in the form of lost wages; and

        f.   economic damages related to any other consequential cost.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendants Rodriguez, Jenkins and Casino Security (once identified through disclosure and/or discovery), jointly and severally, in an amount in excess of the $150,000.00 arbitration limit for the United States District Court for the Eastern District of Pennsylvania, together with punitive damages, and other relief, including costs of suit, reasonable attorney and expert fees as well as all such further relief as this Honorable Court deems just and proper.

## COUNT VII

## [PLAINTIFF v. RODRIGUEZ, JENKINS & CASINO SECURITY]

## DEPRAVATION OF RIGHT OR PRIVILEGE

## <u>VIOLATION OF 42 U.S.C. §1985</u>

216.    Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Complaint as if fully set forth herein.

217.    In relevant part, 42 U.S.C. §1985 (3) provides:

> "in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having or exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against one or more of the conspirators." 42 U.S.C. §1985 (3)

218.    Count IV above is a conspiracy claim.

219.    As averred above, Defendants Rodriguez, Jenkins and Casino Security were acting under color of state law at all times material hereto.

220.    As averred above, Defendants Rodriguez, Jenkins and Casino Security intentionally discriminated against Mr. Garcia on the basis of race and/or color a d/or national origin.

221.    As averred above, the intentional exercise of racial profiling manifested towards Mr. Garcia by Rodriguez and/or Jenkins and/or Casino Security (specifically David) was based on his race and/or color and/or national origin.

222.    As averred above, the intentional exercise of bias-based policing manifested towards Mr. Garcia by Rodriguez and/or Jenkins and/or Casino Security (specifically David) was based on his race and/or color and/or national origin.

223.    As a result of the Defendants discriminatory conduct, Mr. Garcia was (a) maliciously prosecuted; (b) falsely arrested; and (c) falsely imprisoned.

224.    As a direct and proximate result of Defendants' violation of 42 U.S.C. §1985, Plaintiff suffered the following injuries and damages:

        a.   Plaintiff's rights under the Fourth and Fourteenth Amendments were violated;

        b.   fright, horror and shock;

        c.   emotional trauma and suffering;

        d.   damage to Plaintiff's reputation;

        e.   economic damages in the form of lost wages; and

        f.   economic damages related to any other consequential cost

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendants Rodriguez, Jenkins and Casino Security (once identified through disclosure and/or discovery), jointly and severally, in an amount in excess of the $150,000.00 arbitration limit for the United States District Court for the Eastern District of Pennsylvania, together with punitive damages, and other relief, including costs of suit, reasonable attorney and expert fees as well as all such further relief as this Honorable Court deems just and proper.

**COUNT VIII**

**[PLAINTIFF v. RODRIGUEZ, JENKINS & CASINO SECURITY]**

**RACIAL & COLOR DISCRIMINATION UNDER COLOR OF STATE LAW**

**<u>VIOLATION OF 42 U.S.C. §1983</u>**

225.    Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Amended Complaint as if fully set forth herein.

226.    The discrimination allegations were averred with specificity and particularity in the Factual Allegations section above (¶¶65, 113, 117 and 143-151).

227.    As averred above, Defendants Rodriguez, Jenkins and Casino Security were acting under color of state law at all times material hereto

228.    As averred above, Defendants Rodriguez, Jenkins and Casino Security intentionally discriminated against Mr. Garcia on the basis of race and/or color a d/or national origin.

229.    As averred above, the intentional exercise of racial profiling manifested towards Mr. Garcia by Rodriguez and/or Jenkins and/or Casino Security (specifically David) was based on his race and/or color and/or national origin.

230.    As averred above, the intentional exercise of bias-based policing manifested towards Mr. Garcia by Rodriguez and/or Jenkins and/or Casino Security (specifically David) was based on his race and/or color and/or national origin.

231.    As a result of the Defendants discriminatory conduct, Mr. Garcia was (a) maliciously prosecuted; (b) falsely arrested; and (c) falsely imprisoned.

232.    As a direct and proximate result of Defendants' violation of 42 U.S.C. §1983, Plaintiff suffered the following injuries and damages:

        a.   Plaintiff's rights under the Fourth and Fourteenth Amendments were violated;

        b.   fright, horror and shock;

c.   emotional trauma and suffering;

d.   damage to Plaintiff's reputation;

e.   economic damages in the form of lost wages; and

f.   economic damages related to any other consequential cost

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendants Rodriguez, Jenkins and Casino Security (once identified through disclosure and/or discovery), jointly and severally, in an amount in excess of the $150,000.00 arbitration limit for the United States District Court for the Eastern District of Pennsylvania, together with punitive damages, and other relief, including costs of suit, reasonable attorney and expert fees as well as all such further relief as this Honorable Court deems just and proper.

## COUNT IX

## [PLAINTIFF v. EVANCHICK]

## FAILURE TO INSTRUCT, SUPERVISE AND/OR CONTROL

## <u>VIOLATION OF 42 U.S.C. §1983</u>

233.   Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Amended Complaint as if fully set forth herein.

234.   The allegations relating to Evanchick's failures were averred with specificity and particularity in the sections above (¶¶33-37, 146 and 152-157).

235.   As averred above, Defendant Evanchick (Commissioner of the PSP) has refused to immediately implement annual training to prevent bias-based policing.

236.   As averred, Evanchick believes that implementation of the foregoing recommendation is not necessary since (a) cadets receive anti-bias and implicit bias training at the academy; and (b) Internal Affairs Division and Heritage Affairs Section investigate bias complaints.

237.    Plaintiff believes and avers that Evanchick's implementation of the annual ABT policy and/or practice would have assisted in preventing Rodriguez from discriminating and/or racially profiling and/or exercising bias-based policing against Mr. Garcia, a Hispanic American.

238.    The failure of Evanchick to act to prevent and/or minimize constitutional violations by actions or conduct caused the constitutional deprivations sustained by Mr. Garcia.

239.    Had Evanchick affirmatively acted to ensure proper training and/or oversee and/or supervise members of the Bureau of Gaming Enforcement, like Rodriguez, the constitutional deprivations sustained by Mr. Garcia may not have occurred.

240.    Evanchick is aware that maliciously prosecuting (criminally charging) Mr. Garcia without probable cause would have resulted in constitutional violations, however, he failed to prevent and/or minimize the same.

241.    As a direct and proximate result of the foregoing Evanchick's constitutional violations, Plaintiff suffered the following injuries and damages:

      a.  Plaintiff's rights under the Fourth and Fourteenth Amendments were violated;

      b.  fright, horror and shock;

      c.  emotional trauma and suffering;

      d.  damage to Plaintiff's reputation;

      e.  economic damages in the form of lost wages; and

      f.  economic damages related to any other consequential cost.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Evanchick in an amount in excess of the $150,000.00 arbitration limit for the United States District Court for the Eastern District of Pennsylvania, together with punitive damages,

and other relief, including costs of suit, reasonable attorney and expert fees as well as all such further relief as this Honorable Court deems just and proper.

**COUNT X**

**[PLAINTIFF v. WIND CREEK]**

**<u>RESPONDEAT SUPERIOR</u>**

242.   Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Amended Complaint as if fully set forth herein.

243.   Wind Creek has a duty to oversee the activities of its employees and/or representatives and/or agents and is responsible for their actions and/or inactions during the scope of their employment at/with the Casino.

244.   These Wind Creek employees and/or representatives and/or agents include Jenkins and Casino Security as well as any other individual or entity whose identity is discovered during the course of litigation.

245.   The unlawful and/or tortious and/or negligent actions of Wind Creek's employees and/or representatives and/or agents were completed during the scope of their employment at/with the Casino.

246.   As a direct and proximate result of the unlawful and/or tortious and/or negligent actions of Wind Creek's employees and/or representatives and/or agents, Plaintiff suffered the following injuries and damages:

      a.   Plaintiff's rights under the Fourth Amendment were violated;

      b.   fright, horror and shock;

      c.   emotional trauma and suffering;

      d.   damage to Plaintiff's reputation;

    e.   economic damages in the form of lost wages; and

    f.   economic damages related to any other consequential cost

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Wind Creek in an amount in excess of the $150,000.00 arbitration limit for the United States District Court for the Eastern District of Pennsylvania, together with punitive damages, and other relief, including costs of suit, reasonable attorney and expert fees as well as all such further relief as this Honorable Court deems just and proper.

## COUNT XI

## [PLAINTIFF v. WIND CREEK]

## <u>NEGLIGENCE</u>

247.   Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Complaint as if fully set forth herein.

248.   Wind Creek, by and through its employees and/or representatives and/or agents, including but not limited to Jenkins and Casino Security, was negligent in one or more of the following respects:

    a.   failed to adequately train and/or educate its security personnel in the proper methods to conduct security at the entry point of the Casino;

    b.   failed to adequately train and/or educate its security personnel to check and/or verify the identification of incoming patrons;

    c.   failed to adequately train and/or educate its security personnel in the proper methods to conduct surveillance of the entry point of the Casino;

    d.   failed to adequately train and/or educate its security personnel in the proper methods to conduct surveillance of the Casino floor;

    e.   failed to adequately train and/or educate its security personnel in the proper methods to conduct an investigation of any complaints made by a patron;

f.   failed to adequately train and/or educate its security personnel in the proper methods to conduct an investigation of a theft complaint made by a patron;

g.   failed to adequately train and/or educate its security personnel in the areas of prudence, discretion and reasonable cause to evidence or support physical restraining/detaining persons;

h.   failed to adequately train and/or educate its security personnel in the care and custody given to persons physically restrained or detained;

i.   failed to adequately train and/or educate its security personnel in providing for the safety, health or well being of persons being detained;

j.   failed to adequately train and/or educate its security personnel to take into account the physical and/or mental condition of a person in determining when and whether a person should be detained;

k.   knew or should have known there was a reasonable likelihood of causing physical and/or mental injury to persons at the hands of the security personnel without proper training;

l.   failed to adequately train and/or educate its security personnel to refrain from or avoid verbal abuse of persons being detained;

m.   failed to adequately train and/or educate its security personnel to avoid discriminating and/or intimidating and/or instilling fear and/or manifesting mental abuse of persons being detained;

n.   failed to train and/or educate its security personnel to properly spot and/or recognize false identification and/or provide training, education or equipment in order to verify the authenticity of identification presented to gain access to the casino floor.

o.   failed to adequately train and/or educate its security personnel in the areas of prudence, discretion to consider the emphatic pleas of a patron who claims that he has been unlawfully restrained/detained;

p.   failed to adequately train and/or educate its security personnel in the areas of prudence, discretion to consider the emphatic pleas of a patron who claims that he has been unlawfully restrained/detained through false identification;

q.   failed to adequately train and/or educate its security personnel in the areas of prudence, discretion to review video surveillance so the emphatic pleas of a patron who claims that he has been unlawfully restrained/detained may be taken into consideration;

r.  failed to adequately train and/or educate its security personnel in the areas of prudence, discretion and reasonable cause to initiate a Wind Creek Eviction of a patron;

s.  failed to adequately train and/or educate its security personnel in the areas of prudence, discretion and reasonable cause to initiate a Wind Creek Eviction of a rewards member;

t.  failed to implement and/or follow the rules and/or regulations of the Pennsylvania Gaming Control Board relating to security;

u.  failed to adequately train and/or educate its security personnel in providing accurate information and/or documentation to members of the Bureau of Gaming Enforcement;

v.  failed to adequately train and/or educate its security personnel in providing truthful information and/or documentation to the Bureau of Gaming Enforcement;

w.  failed to adequately train and/or educate its security personnel the significance and/or consequence of providing inaccurate information to the Bureau of Gaming Enforcement;

x.  failed to adequately train and/or educate its security personnel the significance and/or consequence of providing false information to the Bureau of Gaming Enforcement;

y.  failed to adequately train and/or educate its security personnel to perform their security duties in a manner which prevents manifest injustice; and

z.  failed to implement an anti-bias training program;

aa.  failed to implement an implicit-bias training program; and

bb.  failed to implement a training program to prevent bias-based policing.

249.   At the time and place herein mentioned, Wind Creek, by and through its employees and/or representatives and/or agents, had a duty to the general public, including Mr. Garcia, to be adequately trained, educated, supervised, to avoid manifesting conduct which results in injuries and damages as those sustained by Plaintiff.

250.    At the time and place herein mentioned, Wind Creek, by and through its employees and/or representatives and/or agents, had a duty to the general public, including Mr. Garcia, to be adequately trained, educated, supervised, to avoid manifesting conduct which results in constitutional violations and deprivations as those sustained by Plaintiff.

251.    At the time and place herein mentioned, Wind Creek, by and through its employees and/or representatives and/or agents, had a duty to the general public, including Mr. Garcia to follow minimum policies and procedures which prevent injuries and/or damages as those sustained by Plaintiff.

252.    At the time and place herein mentioned, Wind Creek, by and through its employees and/or representatives and/or agents, had a duty to the general public, including Mr. Garcia to follow minimum policies and procedures which prevent constitutional violations and deprivations as those sustained by Plaintiff.

253.    As a direct and proximate result of the negligence and/or actions or omissions of one or more of Wind Creek's employees and/or representatives and/or agents, Plaintiff was (a) maliciously prosecuted; (b) falsely arrested; and (c) falsely imprisoned.

254.    As a direct and proximate result of the negligence and/or actions or omissions of one or more of Wind Creek's employees and/or representatives and/or agents, Plaintiff suffered injuries and sustained damages.

255.    As a direct and proximate result of the negligence and/or actions or omissions of one or more of Wind Creek's employees and/or representatives and/or agents, Plaintiff, as more fully set forth below, suffered humiliation and mental anguish.

256.    As a direct and proximate result of Wind Creek's negligence, Plaintiff suffered the following injuries and damages:

a.  Plaintiff's rights under the Fourth and Fourteenth Amendments were violated;

b.  fright, horror and shock;

c.  emotional trauma and suffering;

d.  damage to Plaintiff's reputation;

e.  economic damages in the form of lost wages; and

f.  economic damages related to any other consequential cost

257.  As a further direct and proximate result of Casino's conduct which was outrageous because of Wind Creek's evil motive or reckless indifference to the rights of others and/or which showed complete indifference to or conscious disregard for the safety of others. Plaintiff is entitled to punitive/exemplary damages which will serve to punish Wind Creek and to deter it and other casinos from like conduct in an amount to be determined at trial.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Wind Creek in an amount in excess of the $150,000.00 arbitration limit for the United States District Court for the Eastern District of Pennsylvania, together with punitive damages, and other relief, including costs of suit, reasonable attorney and expert fees as well as all such further relief as this Honorable Court deems just and proper.

## COUNT XII

## [PLAINTIFF v. JENKINS, CASINO SECURITY & WIND CREEK]

## STATE LAW

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

258.  Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Amended Complaint as if fully set forth herein.

259.    As averred numerous times above, the actions and conduct manifested towards Mr. Garcia by Jenkins and Casino Security were so malicious, intentional, willful, wanton and/or done with a reckless disregard for the rights of Plaintiff.

260.    The conduct and/or actions of Jenkins and Casino Security was extreme and outrageous.

261.    The conduct and/or actions of the Casino Defendants which was extreme and outrageous occurred during the scope of their employment at Wind Creek.

262.    The conduct and/or actions of the Casino Defendants to forego reviewing its own surveillance was intentional, or, at the very least, reckless.

263.    The conduct and/or actions of the Casino Defendants caused Mr. Garcia to be (a) maliciously prosecuted; (b) falsely arrested; and (c) falsely imprisoned.

264.    The conduct and/or actions of the Casino Defendants intended to create significant emotional distress for Plaintiff.  In the alternative, the Casino Defendants acted in deliberate disregard of a high degree of probability that emotional distress would occur.

265.    Mr. Garcia did experience grave emotional distress (a) immediately when he was falsely arrested and falsely imprisoned; (b) when his reputation at his workplace became known as the "criminal" during the pendency of the malicious prosecution; (c) continues until this day and it such that no reasonable person should be reasonably expected to endure.

266.    Mr. Garcia's response to the extreme and outrageous conduct of the Casino Defendants is consistent with the response of the average person placed in such an unjust situation.

267.    The aforementioned actions of Defendants Rodriguez, Jenkins and Casino Security constituted a conspiracy to arrest, detain and/or prosecute Mr. Garcia.

268.    As a direct and proximate result of the extreme and outrageous conduct of the Casino Defendant, Plaintiff suffered the following injuries and damages:

   a.   Plaintiff's rights under the Fourth and Fourteenth Amendments were violated;

   b.   fright, horror and shock;

   c.   emotional trauma and suffering;

   d.   damage to Plaintiff's reputation;

   e.   economic damages in the form of lost wages; and

   f.   economic damages related to any other consequential cost

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendants Jenkins, Casino Security (once identified through disclosure and/or discovery) and Wind Creek, jointly and severally, in an amount in excess of the $150,000.00 arbitration limit for the United States District Court for the Eastern District of Pennsylvania, together with punitive damages, and other relief, including costs of suit, reasonable attorney and expert fees as well as all such further relief as this Honorable Court deems just and proper.

## COUNT XIII

## [PLAINTIFF v. RODRIGUEZ, JENKINS & CASINO SECURITY]

## STATE LAW

## <u>MALICIOIUS PROSECUTION</u>

269.   Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Amended Complaint as if fully set forth herein.

270.   As averred above, Defendants Rodriguez, Jenkins and Casino Security intentionally, recklessly, maliciously and without probable cause, caused Mr. Garcia to be subjected to criminal proceedings.

271.   The above-mentioned criminal proceedings were terminated in Mr. Garcia's favor.

272.    As a direct and proximate result of the malicious and intentional actions of the Defendants Rodriguez, Jenkins and Casino Security, Mr. Garcia suffered injuries and damages which are described above.

273.    The above-described actions of Defendants Rodriguez, Jenkins and Casino Security were so malicious and intentional and displayed such a reckless indifference to Mr. Garcia rights and wellbeing that the imposition of punitive damages is warranted.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendants Rodriguez, Jenkins and Casino Security (once identified through disclosure and/or discovery), jointly and severally, in an amount in excess of the $150,000.00 arbitration limit for the United States District Court for the Eastern District of Pennsylvania, together with punitive damages, and other relief, including costs of suit, reasonable attorney and expert fees as well as all such further relief as this Honorable Court deems just and proper.

<strong>COUNT XIV</strong>

<strong>[PLAINTIFF v. RODRIGUEZ, JENKINS & CASINO SECURITY]</strong>

<strong>STATE LAW</strong>

<strong><u>FALSE ARREST</u></strong>

274.    Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Amended Complaint as if fully set forth herein.

275.    As averred above, Defendants Rodriguez, Jenkins and Casino Security intentionally, recklessly, maliciously caused Mr. Garcia to be falsely arrested.

276.    The above-mentioned criminal proceedings were terminated in Mr. Garcia's favor.

277.    As a direct and proximate result of the malicious and intentional actions of the Defendants Rodriguez, Jenkins and Casino Security, Mr. Garcia suffered injuries and damages which are described above.

278.    The above-described actions of Defendants Rodriguez, Jenkins and Casino Security were so malicious and intentional and displayed such a reckless indifference to Mr. Garcia rights and wellbeing that the imposition of punitive damages is warranted.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendants Rodriguez, Jenkins and Casino Security (once identified through disclosure and/or discovery), jointly and severally, in an amount in excess of the $150,000.00 arbitration limit for the United States District Court for the Eastern District of Pennsylvania, together with punitive damages, and other relief, including costs of suit, reasonable attorney and expert fees as well as all such further relief as this Honorable Court deems just and proper.

## COUNT XV

## [PLAINTIFF v. RODRIGUEZ, JENKINS & CASINO SECURITY]

## STATE LAW

## **FALSE IMPRISONMENT**

279.    Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Amended Complaint as if fully set forth herein.

280.    As averred above, Defendants Rodriguez, Jenkins and Casino Security intentionally, recklessly, maliciously caused Mr. Garcia to be falsely imprisonment.

281.    The above-mentioned criminal proceedings were terminated in Mr. Garcia's favor.

282.    As a direct and proximate result of the malicious and intentional actions of the Defendants Rodriguez, Jenkins and Casino Security, Mr. Garcia suffered injuries and damages which are described above.

283.    The above-described actions of Defendants Rodriguez, Jenkins and Casino Security were so malicious and intentional and displayed such a reckless indifference to Mr. Garcia rights and wellbeing that the imposition of punitive damages is warranted.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendants Rodriguez, Jenkins and Casino Security (once identified through disclosure and/or discovery), jointly and severally, in an amount in excess of the $150,000.00 arbitration limit for the United States District Court for the Eastern District of Pennsylvania, together with punitive damages, and other relief, including costs of suit, reasonable attorney and expert fees as well as all such further relief as this Honorable Court deems just and proper.

## COUNT XVI

## [PLAINTIFF v. ALL DEFENDANTS]

## <u>LOST WAGES</u>

284.    Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Amended Complaint as if fully set forth herein

285.    As a result of the malicious prosecution, false arrest and false imprisonment, Mr. Garcia was compelled to miss five (5) days at work.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against All Defendants, jointly and severally, in an amount that makes Plaintiff whole for his lost wages to be determined at trial.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

KOTSATOS LAW, PLLC

Date: <u>03/30/22</u>                    */s/ John E. Kotsatos*

                                        _____

                    By:   John E. Kotsatos, Esquire
                          PA Identification No.: 92807
                          Kotsatos Law, PLLC
                          717 Washington St.
                          Easton, PA 18042
                          Phone: 484-403-6214
                          Fax: 610-438-6351
                          Email: jk@lawjek.com

                          Mark Louis Minotti, Esquire
                          PA Identification No.: 063984
                          717 Washington St.
                          Easton, PA 18042
                          Phone: 610-258-0455
                          Fax: 610-438-6351
                          Email: info@minottilawoffices.com

                          *Counsel for Plaintiff*