UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

| | | |
|---|---|---|
| MIGUEL GARCIA, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 5:22-cv-00292 |
| | : | |
| WIND CREEK BETHLEHEM, LLC,; | : | |
| KENT JENKINS; JOHN DOE SECURITY | : | |
| OFFICERS 1-10; TPR. JOHNNY RODRIGUEZ; | : | |
| and COL. ROBERT EVANCHICK, | : | |
| Defendants. | : | |

_____

**O P I N I O N**
**Defendants Rodriguez and Evanchick Motion to Dismiss, ECF No. 18 - Granted**
**Defendants Wind Creek Bethlehem and Jenkins Motion to Dismiss, ECF No. 19 - Granted**

**Joseph F. Leeson, Jr.**                                                    **September 12, 2022**
**United States District Judge**

## I.      INTRODUCTION

This case arose after Plaintiff Miguel Garcia was charged for a theft at the Wind Creek

casino ("Wind Creek") in Bethlehem, Pennsylvania.  The charges were subsequently dropped

after it was determined that Garcia was misidentified.  Garcia filed suit against several

Defendants: Wind Creek; Kent Jenkins, a Wind Creek Surveillance Operator; ten unidentified

Wind Creek security officers ("John Doe Security Officers"); Trooper Johnny Rodriguez, a

Pennsylvania State Trooper stationed at Wind Creek; and Colonel Robert Evanchick, the

Commissioner of the Pennsylvania State Police. Currently pending are motions to dismiss filed

by the named Defendants.  For the reasons set forth below, the motions will be granted and all

claims against the named Defendants will be dismissed.  Because Garcia has failed to allege a

sufficient basis for the claims against the John Doe Security Officers, they will be dismissed *sua*

*sponte* and the case will be closed.

II.     **BACKGROUND**

    A.     **Factual Allegations**

The factual allegations, taken from the Amended Complaint, *see* Am. Compl., ECF No. 16, are as follows:

On October 3, 2020, Miguel Garcia, a Hispanic male of Mexican nationality, entered the Wind Creek casino around midnight "mere moments" after a group of males that "appeared to be Hispanic in nature just like Mr. Garcia."  *See id*. ¶¶ 2, 54-59, 134.  Garcia had waited in line behind these Hispanic males so casino security could verify his identification by checking his driver's license.  *Id.* ¶ 57. Inside the casino, Garcia gambled at a slot machine for approximately three hours using his Wind Creek Rewards Member card. *Id.* ¶¶ 60-61. During his visit, a casino patron ("victim"), who was playing the slot machines in the same area as Garcia and the other Hispanic males whom Garcia entered behind, had his wallet stolen. *Id.* ¶¶ 62, 134. Casino Surveillance Operator, Kent Jenkins, along with other unidentified casino security employees, created a report regarding the theft. *Id.* ¶ 77. Jenkins reported that the POI (person of interest in the theft) left the property after the theft, and that he (Jenkins) tracked the POI back on surveillance to identify him and confirmed the POI's identity to be Garcia. *Id.* The report also noted that Trooper Rodriguez, a Pennsylvania State Police officer stationed at the Wind Creek, responded to take a report from the victim. *Id.* ¶¶ 77, 88.

On December 10, 2020, Trooper Rodriguez filed a criminal complaint against Garcia, charging him with theft of property lost, mislaid, or delivered by mistake pursuant to 18 Pa. C.S. § 3924. *Id.* ¶ 71. The criminal complaint stated that casino surveillance was able to identify Garcia by the identification he provided upon entering the casino. *Id.* ¶ 74. Garcia was not arrested on the charges filed by Trooper Rodriguez, but a preliminary hearing was scheduled for

January 21, 2021. *Id.* ¶ 104. Garcia did not receive notice of the hearing and failed to appear. *Id.* ¶¶ 104-107. As a result of his nonappearance, a bench warrant was issued for Garcia's arrest. *Id.* ¶ 108. Garcia was arrested on the bench warrant on February 14, 2021, by the Bethlehem Police Department.  *Id.* ¶¶ 120-121.

On that date, Garcia, unaware of the pending criminal charges or bench warrant, returned to Wind Creek. *Id.* ¶ 108. After gambling for twenty minutes, Garcia was confronted by a casino security employee and informed that he had been evicted from the casino for stealing another patron's wallet. *Id.* ¶¶ 110-112. The security employee showed Garcia a picture of the thief from the surveillance video, to which Garcia told the employee that he had been misidentified. *Id.* ¶¶ 112-114.  Garcia called the Bethlehem Police Department to explain that he had been falsely accused of theft, but the responding officer arrested Garcia on the outstanding bench warrant. *Id.* ¶¶ 118-121. Garcia was then transported to the Bethlehem Police Department and subsequently transferred to Northampton County Prison, where he was held for three days. *Id.* ¶¶ 123-125.

On February 16, 2021, the Northampton County District Attorney filed a *Nolle Prosequi* dropping all charges against Garcia due to the misidentification. *Id.* ¶¶ 129-131. According to Garcia, the casino video surveillance shows that the person who actually stole the victim's wallet was one of the Hispanic males that entered the casino "mere moments before Mr. Garcia."  *Id.* ¶ 134.  The surveillance video shows that Garcia, the Hispanic Male who stole the wallet, and the victim were all in the slot machine area, but that Garcia was seated separately playing the slots. *Id.*  The video shows the victim depart the slot-machine area, leaving his wallet behind.  *Id.* Garcia alleges that the Hispanic Male who stole the wallet is seen in the video casing the victim's wallet, which was laying on an unoccupied slot-machine chair.  *Id.*  The surveillance

video shows the Hispanic Male steal the wallet and depart the area, all while Garcia continued to play his slot machine. *Id.*

B.       **Procedural History**

On January 22, 2022, Garcia brought suit against Wind Creek, Jenkins, John Doe Security Officers, Trooper Rodriguez, and Colonel Evanchick, alleging that Rodriguez, working in tandem with Jenkins and Wind Creek security officers, fabricated probable cause by alleging that the surveillance video confirmed the identity of the Hispanic male that stole the victim's wallet to be Garcia and, also, failed to properly review the video surveillance. *See* ECF No. 1.  The Complaint raised claims: (1) against all Defendants for lost wages and for violations of the Fourth Amendment under 42 U.S.C. § 1983 related to false arrest, false imprisonment, malicious prosecution, and conspiracy, as well as for violations of 42 U.S.C. §§ 1981, 1982, and 1985 for discrimination; (2) against Colonel Evanchick for a violation of the Fourth Amendment under 42 U.S.C. § 1983 for failure to supervise and train; (3) against Trooper Rodriguez for a violation of the Fourth Amendment under 42 U.S.C. § 1983 related to discrimination; (4) against Wind Creek for respondeat superior and negligent failure to train; and (5) against Jenkins, Wind Creek, and John Doe Security Officers for intentional infliction of emotional distress ("IIED") under Pennsylvania law. *See id.* Trooper Rodriguez and Colonel Evanchick filed a motion to dismiss,[1]

---

[1]       The motion to dismiss filed by Trooper Rodriguez and Colonel Evanchick argued that they were entitled to qualified immunity; that they were protected by Eleventh Amendment immunity in their official capacities; that Garcia failed to state a claim under §§ 1981, 1982, 1983, 1985, IIED, and for punitive damages, or that these counts failed as a matter of law. *See* ECF No. 10.

as did Jenkins and Wind Creek.[2]  *See* ECF Nos. 10, 12-14.  In response, Garcia filed an

Amended Complaint on March 30, 2022.  *See* Am. Compl.

The Amended Complaint, which is based on essentially the same facts as the original

Complaint, includes all the original counts but not as to all Defendants, and includes three

additional state law claims.  Specifically, Counts I, II, and III of the Amended Complaint allege

violations of the Fourth Amendment under 42 U.S.C. § 1983 against Trooper Rodriguez,

Jenkins, and John Doe Security Officers for false arrest, false imprisonment, and malicious

prosecution. *See* Am. Compl. ¶¶ 159-186. Count IV alleges a conspiracy between Trooper

Rodriguez, Jenkins, and John Doe Security Officers to violate Garcia's Fourth Amendment

rights under § 1983. *Id.* ¶¶ 187-193.  Counts V and VI allege violations of 42 U.S.C. §§ 1981 and

1982 for discrimination on the basis of race, color, and/or national origin against Trooper

Rodriguez, Jenkins, and John Doe Security Officers. *Id.* ¶¶ 194-218. Count VII alleges a

conspiracy between Trooper Rodriguez, Jenkins, and John Doe Security Officers to intentionally

discriminate against Garcia under 42 U.S.C. § 1985. *Id.* ¶¶ 187-193, 216-224. Count VIII alleges

a § 1983 claim against Trooper Rodriguez for discrimination on the basis of race, color, and/or

national origin. *Id.* ¶¶ 225-232. Count IX is a claim under § 1983 for failure to train or supervise

against Colonel Evanchick for not implementing annual anti-bias training for state troopers,

despite recommendations from the State Law Enforcement Citizens Advisory Commission,

which was formed by the governor. *Id.* ¶¶ 35, 223-241. Counts X and XI against Wind Creek

allege liability via respondeat superior and negligence for failure to train its employees,

respectively. *Id.* ¶¶ 242-257. Count XII alleges a claim for IIED under Pennsylvania law against

---

[2]     The motion to dismiss filed by Jenkins and Wind Creek asserted that Garcia failed to
state a claim under §§ 1981 and 1982 and for punitive damages; and that the claims under §§
1983, 1985, and IIED failed as a matter of law.  *See* ECF Nos. 12-14.

Jenkins, John Doe Security Officers, and Wind Creek. *Id.* ¶¶ 258-268. Counts XIII, XIV, and

XV against Trooper Rodriguez, Jenkins, and John Doe Security Officers bring claims for false

arrest, false imprisonment, and malicious prosecution under Pennsylvania state law, such claims

were not in the original Complaint. *Id.* ¶¶ 269-283. Finally, Count XVI alleges a claim for lost

wages against all Defendants. *Id.* ¶¶ 284-285.

On April 8, 2022, Trooper Rodriguez and Colonel Evanchick filed a motion to dismiss

the Amended Complaint. *See* Police Mot., ECF No. 18. In this motion, Trooper Rodriguez and

Colonel Evanchick reassert each of the arguments from their motion to dismiss the Complaint,

and present two additional arguments: that the policy claims against Colonel Evanchick should

be dismissed for lack of factual support and that the state-law claims are barred by sovereign

immunity. *See id.* On April 13, 2022, Jenkins and Wind Creek filed a motion to dismiss the

Amended Complaint, asserting that it should be dismissed for the same reasons as the Complaint

and asserting the following additional arguments: the allegations are insufficient to state any

claim under Pennsylvania law and the allegations do not show the existence of any policy,

custom, or practice on the part of Wind Creek Bethlehem, LLC that would warrant the

imposition of liability. *See* Casino Mot., ECF No. 19. Garcia filed a response in opposition to

both motions to dismiss. S*ee* Pl.'s Resp. Police Mot., ECF No. 20; Pl.'s Resp. Casino Mot., ECF

No. 21. Trooper Rodriguez and Colonel Evanchick filed a reply. *See* Police Reply, ECF No. 22.

## III.   LEGAL STANDARDS

### A.      Rule 12(b)(6) Motion to Dismiss – Review of Applicable Law

Under Rule 12(b)(6), the court must "accept all factual allegations as true [and] construe

the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d

224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir.

2002)) (internal quotation marks omitted). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense").

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Additionally, "a document integral to or explicitly relied upon in the complaint may be considered." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotations omitted). The defendant bears the burden of proving that a plaintiff has failed to state a claim upon which relief can be granted. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

A district court may also *sua sponte* dismiss a complaint or claims therein against a non-moving defendant "provided that the complaint affords a sufficient basis for the court's action." *See Bryson v. Brand Insulations, Inc.*, 621 F.2d 556, 559 (3d Cir. 1980). However, certain protections are guaranteed to the plaintiff. *See id.* "A court may not dismiss a complaint on the pleadings unless no set of facts could be adduced to support the plaintiff's claim for relief." *Id.*

(citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  Additionally, "the plaintiff must be given

the safeguard of having all its allegations taken as true and all inferences favorable to plaintiff

will be drawn." *Id.* (internal quotations omitted).

### B.      Rule 12(b)(1) Motion to Dismiss – Review of Applicable Law

"[T]here are two types of Rule 12(b)(1) motions: those that attack the complaint on its

face and those that attack subject matter jurisdiction as a matter of fact." *Petruska v. Gannon*

*Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006) (citing *Mortensen v. First Fed. Sav. & Loan*, 549

F.2d 884, 891 (3d Cir. 1977)).  "[A] court must first determine whether the movant presents a

facial or factual attack" because the distinction determines the standard of review.  *In re Schering*

*Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012).  A

facial attack "challenges subject matter jurisdiction without disputing the facts alleged in the

complaint, and it requires the court to 'consider the allegations of the complaint as true.'" *Davis*

*v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (quoting *Petruska*, 462 F.3d at 302 n.3).  "In a

facial attack, the court applies the same standard as under Rule 12(b)(6)."  *Jones v. PI Kappa*

*Alpha Int'l Fraternity, Inc.*, 765 F. App'x 802, 806 (3d Cir. 2019).  A factual attack challenges

"subject matter jurisdiction because the facts of the case . . . do not support the asserted

jurisdiction." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014).  A factual

attack "cannot occur until plaintiff's allegations have been controverted[,]" *Mortensen*, 549 F.2d

at 892 n.17, which occurs when the movant files an answer or "otherwise presents competing

facts."  *Aichele*, 757 F.3d at 358.  "When a factual challenge is made, 'the plaintiff will have the

burden of proof that jurisdiction does in fact exist,' and the court 'is free to weigh the evidence

and satisfy itself as to the existence of its power to hear the case.'"  *Davis*, 824 F.3d at 346

(quoting *Mortensen*, 549 F.2d at 891).  "[N]o presumptive truthfulness attaches to [the]

plaintiff's allegations. . . ."  *Id.* (quoting *Mortensen*, 549 F.2d at 891) (alterations in original).

Under either challenge, "the plaintiff will have the burden of proof that jurisdiction does in fact

exist."  *Mortensen*, 549 F.2d at 891.  When a motion to dismiss is based on lack of subject matter

jurisdiction in addition to other defenses, "[a]n actual determination must be made whether

subject matter jurisdiction exists before a court may turn to the merits of the case."  *Tagayun v.*

*Stolzenberg*, 239 F. App'x 708, 710 (3d Cir. 2007).

       **C.**        **Immunity – Review of Applicable Law**

       "[T]he Eleventh Amendment prohibits federal courts from entertaining suits by private

parties against States and their agencies."  *Alabama v. Pugh*, 438 U.S. 781, 782 (1978).

"Individual state employees sued in their official capacity are [] entitled to Eleventh Amendment

immunity because 'official-capacity suits generally represent only another way of pleading an

action' against the state."  *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 (3d Cir. 2010)

(quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991)).

       Pursuant to section 11 of Article 1 of the Constitution of Pennsylvania, the

"Commonwealth, and its officials and employees acting within the scope of their duties, shall

continue to enjoy sovereign immunity and official immunity and remain immune from suit

except as the General Assembly shall specifically waive the immunity."  *See* 1 Pa. C.S. § 2310.

A state's waiver of immunity must "be unequivocally expressed."  *Pennhurst State Sch. & Hosp.*

*v. Halderman*, 465 U.S. 89, 99 (1984). *See also* 42 Pa. C.S. § 8522(b) (listing the nine areas in

which immunity has been waived).  "Pennsylvania has accepted the Restatement (Second) of

Agency's definition of conduct 'within the scope of employment.'"  *Brumfield v. Sanders*, 232

F.3d 376, 380 (3d Cir. 2000) (citing *Butler v. Flo-Ron Vending Co.*, 557 A.2d 730 (Pa. Super.

1989)).  The Restatement provides: "Conduct of a servant is within the scope of employment if,

but only if: (a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; [and] (c) it is actuated, at least in part, by a purpose to serve the master. . . ." Restat 2d of Agency, § 228.  "Sovereign immunity applies to claims advanced against Commonwealth employees in both their official and their individual capacities." *Maples v. Boyd*, No. 03-6325, 2004 U.S. Dist. LEXIS 15988, at *25 (E.D. Pa. Aug. 9, 2004).

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  A court must consider whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled on other grounds* by *Pearson,* 555 U.S. 223.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.*  To be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011).  "[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014).

### D. Section 1983 – Review of Applicable Law

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

The first step for the court analyzing a claim under § 1983 "is to identify the exact contours of the underlying right said to have been violated." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998).[3]  The court must determine "whether the plaintiff has alleged a deprivation of a constitutional right at all." *See Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (quoting *Id.*). Section "1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotations omitted).

The court must also determine whether a defendant is acting under color of state law, i.e., whether the defendant is a state actor, which depends on whether there is "such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted).

> To answer that question, [the United States Court of Appeals for the Third Circuit has] outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity.

*Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotations and alteration omitted).

---

[3]     In the instant action, all the § 1983 claims are based on alleged violations of the Fourth and Fourteenth Amendments related to false arrest, false imprisonment, and malicious prosecution.  The standards for these federal claims are discussed below as part of the standard for the corresponding state-law claim. *See also Simonson v. Borough of Taylor*, 839 F. App'x 735, 738 (3d Cir. 2020) (holding that Fourth Amendment claims for unlawful search and seizure based on malicious prosecution, false arrest, and false imprisonment all require the plaintiff to establish that the defendant lacked probable cause to believe the plaintiff committed a crime).

A "defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. There are two theories of supervisory liability: (1) the defendant-supervisor participated in violating the plaintiff's rights, directed others to violate them, or had knowledge of and acquiesced in his subordinates' violations; and (2) the defendant, in his role as policymaker, acted with deliberate indifference in establishing and maintaining a policy, practice, or custom[4] which directly caused the plaintiff's constitutional harm. *See A.M. v. Luzerne County Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). Under the first theory, "[a]lthough a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). When relying on policy or practice pursuant to the second theory of liability, the plaintiff must:

> (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure.

---

[4] "A municipal policy, for purposes of Section 1983, is a statement, ordinance, regulation, or decision officially adopted and promulgated by a government body's officers." *Torres v. City of Allentown*, No. 07-1934, 2008 U.S. Dist. LEXIS 50522, at *10-11 (E.D. Pa. June 30, 2008) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)). A custom, although not authorized by written law, has the force of law because it is such a permanent and well-settled practice. *Monell*, 436 U.S. at 690. A "custom may be established by proving knowledge of, and acquiescence to, a practice." *Watson v. Abington Twp.*, 478 F.3d 144, 156 (3d Cir. 2007).

*Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001).  Additionally, a "plaintiff must

specifically identify the acts or omissions of the supervisors that show deliberate indifference,

and suggest to the Court a relationship between the 'identified deficiency' of a policy or custom

and the injury suffered."  *Cain v. Nutter*, No. 16-1614, 2016 U.S. Dist. LEXIS 166071, at *7

(E.D. Pa. Nov. 30, 2016).

> An unconstitutional custom may be inferred under a "failure to train" theory where
>
> a municipality so failed to train its employees as to display deliberate indifference
> to the constitutional rights of those within its jurisdiction or in its custody. When
> policymakers are on actual or constructive notice that a particular omission in their
> training program causes their employees to violate constitutional rights, the
> municipality may be deemed deliberately indifferent if it chooses to retain that
> program.

*Peters v. Community Educ. Centers*, Inc. No. 11–CV–850, 2014 WL 981557 at*5 (E.D. Pa. Mar.

13, 2014). When there is no pattern of violations,

> [t]he likelihood that the situation will recur and the predictability that an officer
> lacking specific tools to handle that situation will violate citizens' rights could
> justify a finding that policymakers' decision not to train an officer reflected
> "deliberate indifference" to the obvious consequence of the policymakers'
> choice—namely, a violation of a specific constitutional or statutory right.

*Kline ex rel. Arndt v. Mansfield*, 255 Fed. Appx. 624, 629 (3rd Cir. 2007).

"To demonstrate a conspiracy under § 1983, a plaintiff must show that two or more

conspirators reached an agreement to deprive him or her of a constitutional right 'under color of

law.'"  *Parkway Garage, Inc. v. City of Phila.*, 5 F.3d 685, 700 (3d Cir. 1993) (citing *Adickes v.

S.H. Kress & Co.*, 398 U.S. 144, 150 (1970)).  "Only allegations of conspiracy which are

particularized, such as those addressing (1) the period of the conspiracy, (2) the object of the

conspiracy, and (3) certain actions of the alleged conspirators taken to achieve that purpose, will

be deemed sufficient."  *Schlichter v. Limerick Twp.*, No. 04-CV-4229, 2005 U.S. Dist. LEXIS

7287, at *32-33 (E.D. Pa. Apr. 26, 2005) (explaining that "the plaintiffs must plead the

circumstances of the alleged wrong with particularity so as to place the defendants on notice of the precise misconduct with which they are charged"). "While the existence of a conspiracy otherwise may supply the element of state action and expand the scope of liability through the concept of imputation, § 1983 does not provide a cause of action per se for conspiracy to deprive one of a constitutional right. Without an actual deprivation, there can be no liability under § 1983." *Defeo v. Sill*, 810 F. Supp. 648, 658 (E.D. Pa. 1993).

### E.    Sections 1981 and 1982 – Review of Applicable Law

Section 1981 provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).  To state a discrimination claim under § 1981, the plaintiffs must allege facts showing: (1) they are members of a racial minority; (2) the defendant(s) had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in § 1981.  *See Brown v. Philip Morris, Inc.*, 250 F.3d 789, 797 (3d Cir. 2001).

Section 1982 states: "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."  42 U.S.C. § 1982.  In order to bring an action under the civil rights statute which prohibits racial discrimination in transactions relating to real and personal property, a plaintiff must allege with specificity facts sufficient to show or raise a plausible inference of: (1) the defendant's racial animus; (2) intentional discrimination; and (3) that the defendant deprived plaintiff of his rights because of race.  *See* 42 U.S.C. § 1982.

In *Jett v. Dallas Independent School District,* the Supreme Court held that while § 1981 and § 1982 provide extensive rights, they do not provide a remedy against state actors.  *See Jett v. Dallas Independent School District,* 491 U.S. 701 (1989).  In other words, the fact that these sections establish a private right of action against private defendants does not lead to the conclusion that a parallel right must exist for suits against state defendants.  *See id*.

**F.       Section 1985 – Review of Applicable Law**

Section 1985(3) proscribes conspiracies between "two or more persons . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws. . . ."  42 U.S.C. § 1985(3).  Section 1985 "does not create any substantive rights, but permits individuals to enforce substantive rights against conspiring private parties."  *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006).  "[T]o make out a violation of § 1985(3), . . . the plaintiff must allege and prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States."  *United Bhd. of Carpenters & Joiners, Local 610 v. Scott*, 463 U.S. 825, 828-29 (1983).  "The language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."  *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).  A "plaintiff must allege both that the conspiracy was motivated by discriminatory animus against an identifiable class and that the discrimination against the identifiable class was invidious."  *Farber*, 440 F.3d at 135.  "With near unanimity, the courts have rejected complaints containing mere conclusory

allegations of deprivations of constitutional rights protected under § 1985(3)." *Robinson v. McCorkle*, 462 F.2d 111, 113 (3d Cir. 1972).

Generally, to assert a claim of conspiracy, a plaintiff must show: (1) "a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose," (2) "an overt act done in pursuance of the common purpose," and (3) "actual legal damage." *Schlichter*, 2005 U.S. Dist. LEXIS 7287, at *31. A plaintiff must assert "specific factual allegations of combination, agreement, or understanding among all or between any defendants to plot, plan, or conspire to carry out the alleged chain of events." *Germantown Cab Co. v. Phila. Parking Auth.*, No. 14-4686, 2015 WL 4770722, at *10 (E.D. Pa. Aug. 12, 2015) (quoting *Hammond v. Creative Fin. Planning Org.*, 800 F. Supp. 1244, 1248 (E.D. Pa. 1992)).

### G.     False Arrest – Review of Applicable Law

"Pennsylvania state law false arrest claims and federal constitutional false arrest claims are co-extensive both as to elements of proof and elements of damages." *Russoli v. Salisbury Twp.*, 126 F. Supp. 2d 821, 869 (E.D. Pa. 2000). "In Pennsylvania, a 'false arrest is defined as 1) an arrest made without probable cause or 2) an arrest made by a person without privilege to do so.'" *Id.* (quoting *McGriff v. Vidovich*, 699 A.2d 797, 799 (Pa. Commw. 1997)). Similarly, to prevail on a claim for false arrest for violation of one's right to be free from unreasonable seizure under the Fourth Amendment, a plaintiff must demonstrate that the police lacked probable cause to make the arrest. *Groman v. Township of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995). "Probable cause exists when the facts and circumstances which are within the knowledge of the police officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed

or is committing a crime." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994) (internal

citations omitted); *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995). "The test for an

arrest without probable cause is an objective one, based on the facts available to the officers at

the moment of arrest." *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994) (internal

quotations omitted). "The Pennsylvania and federal standards regarding the existence of

probable cause are the same." *Debellis v. Kulp*, 166 F. Supp. 2d 255, 280 (E.D. Pa. 2001).

### H.      False Imprisonment – Review of Applicable Law

Under Pennsylvania law, the "elements of false imprisonment are (1) the detention of

another person, and (2) the unlawfulness of such detention." *Renk*, 641 A.2d at 293. "A false

imprisonment claim under 42 U.S.C. § 1983 is based on the Fourteenth Amendment protection

against deprivations of liberty without due process of law." *Groman*, 47 F.3d at 636. To succeed

on a claim for false imprisonment, a plaintiff must establish that he was unlawfully detained,

which, in the context of an arrest, generally depends on whether the detention was supported by

probable cause. *See James v. City of Wilkes-Barre*, 700 F.3d 675, 682-83 (3d Cir. 2012).

"[W]here the police lack probable cause to make an arrest, the arrestee has a claim under § 1983

for false imprisonment based on a detention pursuant to that arrest." *Groman*, 47 F.3d at 636.

### I.      Malicious Prosecution – Review of Applicable Law

To state a claim for malicious prosecution under Pennsylvania law, the plaintiff "must

demonstrate that (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding

ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; and (4)

the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice."

*Hilfirty v. Shipman*, 91 F.3d 573, 579 (3d Cir. 1996) (citing *Haefner v. Burkey*, 626 A.2d 519,

521 (Pa. 1993)). Under federal law, a plaintiff must also show that the plaintiff suffered

deprivation of liberty consistent with the concept of seizure as a consequence of a proceeding. *See McKenna v. City of Phila.*, 582 F.3d 447, 461 (3d Cir. 2009). Pursuant to the first element, "only a person who initiates criminal proceedings may be liable for malicious prosecution." *Taylor v. City of Phila.*, No. 96-740, 1998 U.S. Dist. LEXIS 4295, at *25-26 (E.D. Pa. Apr. 1, 1998). Police officers, as opposed to prosecutors, may be liable for malicious prosecution if they conceal or misrepresent material facts to the prosecutor. *Halsey v. Pfeiffer*, 750 F.3d 273, 297 (3d Cir. 2014). In particular, an officer is liable if he fails to disclose exculpatory evidence to prosecutors, makes false or misleading reports to the prosecutor, omits material information from the reports, or otherwise interferes with the prosecutor's ability to exercise independent judgment in deciding whether to prosecute. *Finnemen v. SEPTA*, 267 F. Supp. 3d 639, 644 (E.D. Pa. 2017). A private party may be liable for malicious prosecution in two circumstances: (1) the private individual provides knowingly false statements to an official, or (2) the private individual directs or pressures an official to initiate charges, thereby making the officer's intelligent use of discretion impossible. *See Bradley v. Gen. Accident Ins. Co.*, 778 A.2d 707, 711 (Pa. Super. 2001). The purpose of the second element, referred to as the favorable termination rule, "is to avoid 'the possibility of the claimant [sic] succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction.'" *Kossler v. Crisanti*, 564 F.3d 181, 187 (3d Cir. 2009) (quoting *Heck v. Humphrey*, 512 U.S. 477, 484 (1994)). As to the third element, probable cause is "defined in terms of facts and circumstances 'sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" *Gerstein v. Pugh*, 420 U.S. 103, 111-12 (1975) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).

**J.**      **Negligence – Review of Applicable Law**

To state a claim for negligence under Pennsylvania law, a plaintiff must show: (1) the defendant owed the plaintiff a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages. *Martinez v. United States*, 682 F. App'x 139, 141 (3d Cir. 2017) (citing *Pittsburgh Nat'l Bank v. Perr*, 637 A.2d 334, 336 (Pa. Super. Ct. 1994)). "Whether the defendant owed a duty of care under the first element is a question of law." *Sabric v. Martin*, 532 F. App'x 286, 289 (3d Cir. 2013) (citing *Matharu v. Muir*, 29 A.3d 375, 384 (Pa. Super. Ct. 2011)). "Generally, there is no duty to control the acts of a third party unless the 'defendant stands in some relationship with either the person whose conduct needs to be controlled or in a relationship with the intended victim of the conduct'. . . . A special relationship is limited to the relationships described in Sections 316-319 of the Restatement (Second) of Torts." *See Brisbine v. Outside in Sch. of Experiential Educ., Inc.*, 799 A.2d 89, 93 (Pa. Super. 2002).

An employer may be liable "for harm resulting from [its employee's] conduct if [it] is negligent or reckless '... in the supervision of the activity." *Doe v. Liberatore*, 478 F. Supp. 2d 742, 760 (M.D. Pa. 2007) (quoting *R.A. ex rel. N.A.*, 748 A.2d 692, 697 (Pa. Super. Ct. 2000)). To prove a prima facie case for state-law negligence based on a failure to train theory, a plaintiff must show that the defendant: (1) had a duty to train its employees; (2) breached that duty; and (3) the breach of that duty caused the plaintiff's harm. *See Oldham v. Pa. State Univ.*, No. 4:20-CV-02364, 2022 U.S. Dist. LEXIS 87272, at *58 (M.D. Pa. May 13, 2022). To support a negligent supervision claim under Pennsylvania law, a plaintiff must show that his injury resulted from: "(1) a failure to exercise ordinary care to prevent an intentional harm by an employee acting outside the scope of his employment; (2) that is committed on the employer's

premises; (3) when the employer knows or has reason to know of the necessity and ability to control the employee." *Belmont v. MB Inv. Partners*, 708 F.3d 470, 487–88 (3d Cir. 2013) (citing *Dempsey v. Walso Bureau, Inc.*, 246 A.2d 418, 420 (Pa. 1968)).

###### K.    Intentional Infliction Emotional Distress (IIED) - Review of Applicable Law

"Under Pennsylvania law, a claim for intentional infliction of emotional distress requires a plaintiff to establish the following elements: '(1) the conduct must be extreme or outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe.'" *Rosembert v. Borough of E. Lansdowne*, 14 F. Supp. 3d 631, 645 (E.D. Pa. 2014) (quoting *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1273 (3d Cir. 1979)).   Pennsylvania courts have been reluctant to declare conduct "outrageous," requiring that "the conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988) (quoting *Buczek v. First Nat'l Bank*, 531 A.2d 1122, 1125 (Pa. Super. 1987)).   "Additionally, Pennsylvania law requires that some type of physical harm be shown in order to satisfy the severe emotional distress element." *Villarosa v. N. Coventry Twp.*, No. 15-4975, 2016 U.S. Dist. LEXIS 98499, at *34 (E.D. Pa. July 28, 2016).

## IV.    ANALYSIS

### A.    The official capacity claims under §§ 1981, 1982, 1983, and 1985 against Trooper Rodriguez and Colonel Evanchick are barred by the Eleventh Amendment.

Counts I through VIII of Garcia's Amended Complaint allege violations of federal law against Trooper Rodriguez in both his official and individual capacities.   Garcia does not clarify whether the federal claim in Count IX asserted against Colonel Evanchick is in his individual or

official capacity.  The Court will assume for purposes of this Opinion that it was brought in both capacities.

As employees of the Pennsylvania State Police, the official capacity claims against Rodriguez and Evanchick may not proceed because they are entitled to immunity under the Eleventh Amendment of the United States Constitution.  *See A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003) (holding that suits against state officials acting in their official capacity are really suits against the employing government agency and are barred by the Eleventh Amendment).  Pennsylvania has not waived its immunity under Sections 1981, 1982, 1983, or 1985.  *See Collins v. Sload*, 212 F. App'x 136, 140 n.5 (3d Cir. 2007) (holding that "Eleventh Amendment immunity provided the defendants a similar shield against the claims for damages against them in their official capacities under §§ 1983, 1985, & 1986"); *Bartlett v. Kutztown Univ.*, No. 13-4331, 2015 U.S. Dist. LEXIS 21665, at *38 (E.D. Pa. Feb. 23, 2015) ("Pennsylvania has not waived its immunity under Section 1983."); *Tariq-Shuaib v. City of Camden*, No. 09-4760 (RBK), 2011 U.S. Dist. LEXIS 10514, at *10 (D.N.J. Feb. 3, 2011) ("There is no indication that the State has used such language to waive its immunity from § 1982 claims.").

Garcia's suggestion in response to the Motion to Dismiss that "Eleventh Amendment Immunity [is] Inapplicable" is meritless.  *See* Resp. 27, ECF No. 20.  To support this argument, Garcia discusses sovereign immunity, which has no bearing on the Eleventh Amendment analysis regarding the federal claims.  Garcia also cites a case stating that the Eleventh Amendment does not bar *individual* capacity claims against state officials; however, Defendants have not moved for, and this Court is not granting, dismissal of the federal claims against the Police Defendants in their individual capacities based on the Eleventh Amendment.

The official capacity claims in the federal claims, Counts I through IX, are dismissed with prejudice.[5]

**B.    Because Garcia has not sufficiently pled a violation of his rights, the Court need not reach the Police Defendants' qualified immunity defense.**

Under the two-step qualified immunity determination, the court asks: (1) whether the plaintiff's factual allegations make out a violation of a constitutional or statutory right; and if the plaintiff satisfies step one, (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct. *See Pearson*, 555 U.S. at 232. The "judges of the district courts and the courts of appeals are in the best position to determine the order of decisionmaking that will best facilitate the fair and efficient disposition of each case." *Id.* at 242. Where the claims are for false arrest, false imprisonment, and malicious prosecution, which are each based on a lack of probable cause, the constitutional violation question "turns on whether a reasonable officer could have believed that probable cause existed to arrest the plaintiff at that time." *See Pinkney v. Meadville*, No. 21-1051, 2022 U.S. App. LEXIS 13824, at *2-3 (3d Cir. May 23, 2022) (internal quotations omitted).

For the reasons set forth below, Garcia has failed to show that his Fourth Amendment rights were violated and the claims based on such a violation will be dismissed. Similarly, Garcia has failed to show that he was discriminated against in violation of his statutory or

---

[5]      Police Defendants also raised Eleventh Amendment immunity in their motion to dismiss the original Complaint, which put Garcia on notice of the deficiencies in his pleadings before he filed the Amended Complaint that is the subject of this Opinion. *See Krantz v. Prudential Invs. Fund Mgmt. LLC*, 305 F.3d 140, 144-45 (3d Cir. 2002) ("A District Court has discretion to deny a plaintiff leave to amend where the plaintiff was put on notice as to the deficiencies in his complaint, but chose not to resolve them."), *cert. denied* 537 U.S. 1113 (2003). This Court finds that based on the facts presented here allowing Garcia to file a second amended complaint would be futile. *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (holding that a district court must permit a curative amendment "unless an amendment would be inequitable or futile").

constitutional rights.  The claims will be dismissed for the reasons discussed below.  It is

therefore unnecessary to reach the qualified immunity analysis.  *See Damico v. Harrah's Phila.*

*Casino & Racetrack*, 674 F. App'x 198, 202-03 (3d Cir. 2016) (declining to reach the question of

qualified immunity because the federal claims must be dismissed where the defendant-officer

had probable cause to arrest the plaintiff); *Burnett v. Springfield Twp.*, No. 13-1646, 2014 U.S.

Dist. LEXIS 92216, at *34 (E.D. Pa. July 8, 2014) (finding it unnecessary to reach the

defendants' qualified immunity arguments because the plaintiff failed to plead sufficient facts to

state a claim for intentional race discrimination); *Van Valen v. Lanigan*, No. 18-11441(RMB),

2019 U.S. Dist. LEXIS 49112, at *29 (D.N.J. Mar. 25, 2019) (determining that there was no

reason to address the qualified immunity defense because the plaintiff failed to state a cognizable

§ 1983 claim based on failure to train or failure to supervise).

      **C.**    **The state law claims against Trooper Rodriguez are barred by Pennsylvania sovereign immunity.**

      Counts XIII, XIV, and XV of Garcia's Amended Complaint allege state law claims

against Trooper Rodriguez, in both his official and individual capacities, for malicious

prosecution, false arrest, and false imprisonment.

      Trooper Rodriguez has moved to dismiss these claims as barred by sovereign immunity.

*See* Police Mot. 20-21.  In opposition to the Motion to Dismiss, Garcia asserts that sovereign

immunity is not applicable to officials acting outside the scope of their employment.  *See* Resp.

27, ECF No. 20.  However, Garcia repeatedly alleges under the federal counts, which are

specifically based on malicious prosecution, false arrest, and false imprisonment, that Rodriguez

was "acting within the course and scope of his employment."  *See* Am. Compl. ¶¶ 163, 173, 181,

183.  Although he leaves this specific phrase out of the allegations under the state law counts,

Garcia does allege under the state law counts that he "incorporates by reference and re-alleges all

prior paragraphs of the Amended Complaint as if fully set forth herein." *See id.* ¶¶ 269, 274, 279. Moreover, all counts are based on the same factual allegations. This defense to sovereign immunity is therefore without merit.

Without question, a police officer's acts of investigating criminal conduct, filing criminal charges, and arresting individuals suspected to have committed crimes are within the scope of his employment. *See, e.g. Ginter v. Skahill*, No. 04-2444, 2006 U.S. Dist. LEXIS 77038, at *39 (E.D. Pa. Oct. 17, 2006) (holding that the trooper "was acting within the scope of his duties as a Pennsylvania State Trooper when he investigated and applied for arrest warrants for Plaintiffs" and was immune from "claims of false imprisonment, false arrest and malicious prosecution"). "Under Pennsylvania law, even unauthorized acts may be within the scope of employment 'if they are clearly incidental to the master's business.'" *Brumfield*, 232 F.3d at 381 (quoting *Shuman Estate v. Weber*, 419 A.2d 169 (Pa. Super. 1980)). "Where a state trooper is on duty and investigating a crime throughout the duration of the alleged offenses, [he] is acting within the scope of his employment and sovereign immunity will require the dismissal of state law claims against [him]." *DeForte v. Borough of Worthington*, 364 F. Supp. 3d 458, 487 (W.D. Pa. 2019). *See also La Frankie v. Miklich*, 618 A.2d 1145, 1149 (Pa. 1992) (holding that a state trooper was immune from liability for false prosecution, false arrest, and abuse of process claims).

Accordingly, Counts XIII, XIV, and XV against Trooper Rodriguez are dismissed with prejudice as barred by sovereign immunity.

**D.     Counts I, II, and III pursuant to § 1983 are dismissed with prejudice because the allegations are insufficient to show a Fourth Amendment violation.**

Counts I, II, and III of Garcia's Amended Complaint allege violations of the Fourth and Fourteenth Amendments under 42 U.S.C. § 1983 against Trooper Rodriguez, Jenkins, and John Doe Security Officers for malicious prosecution, false arrest, and false imprisonment

**1.     Claims against Trooper Rodriguez**

All three claims require Garcia to establish that Trooper Rodriguez lacked probable cause to believe Garcia committed a crime. *See Simonson*, 839 F. App'x at 738. In determining whether there is probable cause to arrest, an officer is entitled to rely on the reports of other officers, law enforcement bodies, and seemingly credible eyewitnesses. *See Porter v. Gray*, No. 05-231 Erie, 2007 U.S. Dist. LEXIS 10143, at *25-26 (W.D. Pa. Feb. 13, 2007) (collecting cases); *Karkut v. Target Corp.*, 453 F. Supp. 2d 874, 884 (E.D. Pa. 2006) (holding that the police officer, who relied solely on the report of the store security personnel, had probable cause to arrest the plaintiff). *See also Tisdale v. City of Philadelphia*, 688 Fed. Appx. 136, 138 (3d Cir. 2017) (holding that a positive identification by a witness is considered strong inculpatory evidence). Once probable cause exists, a police officer has no constitutional obligation to investigate further. *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 790 n.8 (3d Cir. 2000) (concluding that the arresting officer had probable cause based on the report of an eyewitness and "was not required to undertake an exhaustive investigation in order to validate the probable cause that, in [the officer's] mind, already existed"). The probable cause standard does not require that officers' "determinations of credibility, were, in retrospect, accurate." *See Wright v. City of Phila.*, 409 F.3d 595, 603 (3d Cir. 2005). Similarly, the "validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later

acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest."
*Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979).

The Amended Complaint alleges that Trooper Rodriguez lacked probable cause and, instead, fabricated evidence to create probable cause. These allegations are based solely on the misidentification of Garcia as the person responsible for stealing the victim's wallet. There are no factual allegations to suggest that Trooper Rodriguez's misidentification was intentional, that he acted with any ill will, or that he had any reason to question the reliability of Jenkins' report. Accordingly, Trooper Rodriguez's decision to rely on Jenkins' report as to the identity of the person that stole the victim's wallet, even if later determined to be inaccurate, does not eliminate the fact that he had probable cause at the time charges were filed, thereby defeating the claims based on false arrest and false imprisonment. *See Damico*, 674 F. App'x at 202 (holding that even if casino staff misinformed the officer about the plaintiff's behavior, the officer had no reason to disbelieve the information, which provided probable cause for the arrest); *Pinkney v. Meadville*, No. 1:19-cv-167, 2020 U.S. Dist. LEXIS 60081, at *24-25 (W.D. Pa. Apr. 3, 2020) (dismissing the Fourth Amendment, false arrest, false imprisonment, and malicious prosecution claims with prejudice because despite the plaintiff's subsequent exoneration for mistaken identity, there was probable cause to charge and arrest).

Moreover, when Garcia failed to appear at his preliminary hearing, a judge issued a bench warrant for his arrest. It was on this warrant that Garcia was arrested by Bethlehem Police when he returned to the casino in February and it was on this warrant that he was held in jail for three days. Bethlehem Police had probable cause for Garcia's arrest based solely on this warrant. *See In re Grand Jury Proceedings Harrisburg Grand Jury 79-1*, 658 F.2d 211, 214 (3d Cir. 1981) ("The simple fact of nonappearance provided the government with probable cause to

apply for a bench warrant. . . .  The authority of a court to issue bench warrants to arrest [persons] who fail to appear is, in fact, unquestioned.").

   The bench warrant, in addition to providing an independent source of probable cause, precludes a finding that Trooper Rodriguez was the proximate cause of Garcia's injury.  *See Johnson v. Provenzano*, 646 F. App'x 279, 281-82 (3d Cir. 2016) (holding that the charging officer was not the proximate cause of the plaintiff's harm because he was arrested on a failure-to-appear warrant).  Garcia "must demonstrate that defendants' actions were the proximate cause of the harm he suffered. . . . However, an intervening act of a third party, which actively operates to produce harm after the first person's wrongful act has been committed, is a superseding cause which prevents the first person from being liable for the harm which his antecedent wrongful act was a substantial factor in bringing about."  *Egervary v. Young*, 366 F.3d 238, 246 (3d Cir. 2004).  Trooper Rodriguez also had no personal involvement with Garcia's arrest and imprisonment on the bench warrant.

   The Fourth Amendment claim based on malicious prosecution also fails because although Trooper Rodriguez filed charges, a police officer may only be liable if he concealed or misrepresented material facts to the prosecutor.  *See Halsey*, 750 F.3d at 297.  There are no allegations that Trooper Rodriguez provided false information to or withheld information from the prosecutor.  *See Dreibelbis v. Clark*, 813 F. App'x 64, 66-67 (3d Cir. 2020) (agreeing with the district court that a reasonable jury could not find for the plaintiff, whose claims included malicious prosecution, because there was no evidence that the arresting officer acted from any malicious motive, but, instead, relied on reports from the security guards to support probable cause for the charges); *Taylor*, 1998 U.S. Dist. LEXIS 4295, at *25-26 (holding that officers who

simply participated in an investigation did not "initiate proceedings" and thus, could not be liable for malicious prosecution).

For all these reasons, Garcia has failed to show that his Fourth Amendment rights were violated by Trooper Rodriguez.  Counts I, II, and III as to Trooper Rodriguez are dismissed with prejudice.[6]

### 2.    Claims against Casino Defendants

For the reasons just explained as to why the allegations are insufficient to show a Fourth Amendment violation by Trooper Rodriguez, Garcia's allegations are also insufficient to show a violation of his Fourth Amendment rights by Jenkins and John Doe Security Officers. Specifically, there was probable cause for the charges to be filed and independent probable cause for his arrest on the bench warrant.  Despite Garcia's allegation that Wind Creek security told Bethlehem Police to arrest Garcia, there are no allegations to show Wind Creek security had any control over the Bethlehem Police Department.  Garcia's arrest by Bethlehem Police on the bench warrant precludes the Casino Defendants from being the proximate cause of Garcia's harm.  Further, there are no factual allegations in the Amendment Complaint to show that Jenkins knew he wrongly identified Garcia as the person responsible for the theft or that he knowingly provided false or incomplete information to Trooper Rodriguez.[7]  *See Giddens v.*

---

[6]    This Court finds that based on the facts presented here allowing Garcia to file a second amended complaint would be futile.  *See Alston*, 363 F.3d at 235 (holding that a district court must permit a curative amendment "unless an amendment would be inequitable or futile"). Further, Defendants' motions to dismiss the original Complaint put Garcia on notice of the deficiencies in his pleadings before he filed the Amended Complaint that is the subject of this Opinion.  *See Krantz*, 305 F.3d at 144-45 ("A District Court has discretion to deny a plaintiff leave to amend where the plaintiff was put on notice as to the deficiencies in his complaint, but chose not to resolve them."), *cert. denied* 537 U.S. 1113 (2003).

[7]    Garcia's allegation that Casino Security recklessly disregarded his claim that he was not the person in the surveillance video is immaterial.  *See Lewis v. Montgomery Cty.*, No. 01-3193, 2002 U.S. Dist. LEXIS 11256, at *5 (E.D. Pa. Apr. 8, 2002) ("It is not reasonable to expect

*Stewart*, No. 20-cv-01474, 2021 U.S. Dist. LEXIS 137061, at *17-20 (E.D. Pa. July 22, 2021)

(dismissing the malicious prosecution claim because the complaint alleged the defendant

watched a video of an assault and identified the plaintiff to the police from that video and from a

photograph, but did not plausibly allege the defendant knew this identification was false); *Doby*

*v. Decrescenzo*, No. 94-3991, 1996 WL 510095, at *13 (E.D. Pa. Sept. 9, 1996) (explaining that

a private individual can only be liable if he has either knowingly provided false information to

authorities or knowingly provided incomplete, misleading information to the authorities which

resulted in the detention of another).

      Additionally, Garcia has failed to allege sufficient facts to show that Jenkins and John

Doe Security Officers were state actors.  *See* 42 U.S.C. § 1983 (providing a remedy for

deprivations of rights that take place "under color of any statute, ordinance, regulation, custom,

or usage, of any State").  A private party may act under color of state law if that party acted

"jointly," "in concert," or "in conspiracy" with state officials.  *See Cruz v. Donnelly*, 727 F.2d

79, 80 (3d Cir. 1984).  The fundamental inquiry analyzes whether "there is such a close nexus

between the State and the challenged action that seemingly private behavior may be fairly treated

as that of the State itself." *Kach*, 589 F.3d at 646.

      In *Cruz v. Donnelly*, the Third Circuit found that "a store and its employees cannot be

liable as state actors under § 1983 unless: (1) the police have a pre-arranged plan with the store;

and (2) under the plan, the police will arrest anyone identified as a shoplifter by the store without

independently evaluating the presence of probable cause."  *Cruz*, 727 F.2d at 81 (*citing Lugar v.*

*Edmondson Oil Co.*, 457 U.S. 922 (1982)).  The "critical issue . . . is whether the state, through

_____

police officers to fail to make an arrest simply because the arrestee claims that a warrant was
issued in error.").

its agents or laws, has established a formal procedure or working relationship that drapes private actors with the power of the state." *See id.* at 82; *Pugh v. Downs*, 641 F. Supp. 2d 468, 475 (E.D. Pa. 2009) ("[T]he deciding inquiry was whether the state official surrendered the exercise of its official judgment to a private party, either pursuant to an agreement or statute, thus turning the private party into a state actor.").  Accordingly, under this test, to demonstrate that Jenkins acted under the color of state law, Garcia must allege facts that would establish that there was a "preexisting arrangement whereby the discretionary judgment of [PSP troopers] employed in effectuating arrests of casino patrons would be substituted with that of [Jenkins]." *See Pugh*, 641 F. Supp. 2d at 475.  Garcia's Amended Complaint is devoid of any allegations that would suggest any pre-existing agreement or other formal working procedure, let alone one in which in the discretionary judgment of PSP would be substituted for that of casino security.  *See id.* at 475 ("Applying the teachings of *Cruz*" to reject the plaintiff's allegations of "a tenuous arrangement whereby [PSP] and [casino security] worked in concert to enforce security at the casino").

The allegations are also insufficient to show Jenkins and John Doe Security Officers conspired with the state so as to render them state actors.  The Amended Complaint does not allege specific facts to demonstrate that there was any understanding or meeting of the minds to violate Garcia's constitutional rights or that Defendants worked together with the intent to deprive him of his constitutional rights.  *See Kost v. Kozakiewicz*, 1 F.3d 176, 185 (3d Cir. 1993) (concluding the plaintiff failed to show the "understanding" between private parties and state actors to violate the plaintiff's § 1983 rights to establish a conspiracy).  Rather, the allegations show that Trooper Rodriguez merely responded to the casino to take the report of the theft and spoke with witnesses (the victim and casino surveillance), then more than two months later filed criminal charges.  "Merely calling the police, furnishing information to the police, or

communicating with a state official does not rise to the level of joint action necessary to transform a private entity into a state actor." *Cooper v. Muldoon*, No. 05-4780, 2006 U.S. Dist. LEXIS 23388, at *7 (E.D. Pa. Apr. 26, 2006).  There are no allegations that anyone from PSP had any communication with anyone at Wind Creek during this time frame, prior to the theft report, or after charges were filed.  Garcia's mere conclusory allegations of joint action and of conspiracy are not entitled to the presumption of truth and are insufficient to render Jenkins and/or John Doe Security Officers state actors.  *See Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010) (refusing to consider the plaintiff's conclusory allegations that there was a "corrupt conspiracy," "an agreement," or "an  understanding in place," between the private-party defendants and state actors).

Garcia relies on *Luck v. Mount Airy #1, LLC*, 901 F. Supp. 2d 547 (M.D. Pa. 2012), to support his argument of a conspiracy, but *Luck* is distinguishable.  In *Luck*, casino security asked the plaintiffs to leave because they were talking about unions and making the security guards nervous.  The plaintiffs voluntarily left the casino, but were not told they were permanently evicted.  A few weeks later, the plaintiffs returned to the casino.  After playing the slots for about an hour, the plaintiffs were "surrounded" by three security guards who demanded identification. When the plaintiffs were advised by security that they were not permitted on the premises because of the previous incident, the plaintiffs stated that they did not want any trouble and would voluntarily leave.  However, the casino security supervisor "said they could not leave and that he was calling the Pennsylvania State Police."  Casino security then escorted the plaintiffs to the front of the casino where PSP troopers were waiting to question the plaintiffs, "prompted the troopers to arrest and issue plaintiffs citations" for criminal trespass, and then, along with the PSP troopers, escorted the plaintiffs out of the casino.  Based on these allegations, the *Luck* court

inferred a conspiratorial agreement.  *See id.* at 551, 559 (concluding that the factual allegations "demonstrate cooperation between casino security and the troopers and suggest that the troopers only consulted security and received a command to arrest plaintiffs").

In contrast to *Luck*, Garcia was not evicted from the premises because he made casino security nervous; rather, he was evicted because he stole another patron's wallet.  The theft charges against Garcia were filed after the third-party victim made a complaint to PSP, unlike the criminal trespass charges in *Luck* for which the casino was the victim/complainant.  Although Wind Creek security contacted PSP on the day of the theft, this is insufficient.  *See Cooper*, 2006 U.S. Dist. LEXIS 23388, at *7 (holding that merely calling and furnishing information to the police does not transform a private entity into a state actor).  Garcia makes no factual allegations to show that the Casino Defendants had any involvement or control in the decision to file charges, whereas the casino security in *Luck* "prompted" PSP to file charges for which the casino was the sole complainant.  Although Garcia alleges that Wind Creek security told Bethlehem Police (not PSP) that Garcia was a thief and should be arrested, *see* Am. Compl. ¶ 120, charges had already been filed by PSP and a bench warrant for Garcia's arrest, on which he was arrested, had previously been issued.  Also, on the day of Garcia's arrest, Wind Creek security simply told him that he had been evicted, after which "Garcia stepped out of the Casino to voluntarily contact the Bethlehem Police Department."  *See* Am. Compl. ¶ 118.  This is distinguishable from *Luck*, in which the casino security detained the plaintiffs, refusing to allow them to voluntarily leave, until PSP arrived and they were charged.  Accordingly, the allegations in *Luck* are significantly different and do not support a finding of cooperation between Defendants here.

Garcia also cites to *Luck* to support his assertion of a symbiotic relationship between Wind Creek and the PSP.  However, the Third Circuit has explained that although the "symbiotic

relationship test" announced in *Burton*[8] remains good law, "it was crafted for the unique set of facts presented." *See Crissman v. Dover Downs Entm't*, 289 F.3d 231, 242 (3d Cir. 2002). Specifically, the *Burton* Court found that there was a mutually-beneficial relationship between the state of Delaware and a privately-owned restaurant located within an off-street parking building that was owned and operated by an agency of the state, such that the state became a joint participant in the discriminatory behavior of the restaurant. The Court concluded "the state would not have been able to finance or pay for the parking facility absent the restaurant's lease, the demand for its parking was potentially increased by the restaurant's presence, and, as noted above, it financially benefitted directly from the specific discriminatory conduct." *See id.* at 244. The Third Circuit in *Crissman* concluded that the state and Dover Downs did not have a "symbiotic relationship" because, unlike *Burton*, the state "was not conducting any operation together with the race track at Dover Downs[- i]t was not operating a mutually beneficial business there." *See id.* at 242-43. Similar to *Crissman*, Wind Creek does not have a symbiotic relationship with the state of Pennsylvania. Garcia's inclusion of some allegations, such as the PSP office being located inside the casino and having sole police authority to investigate criminal activity inside of the casino, that the *Luck* court determined "may have supported the application of the symbiotic relationship test" is insufficient because additional facts present in *Luck*, including that casino security and state troopers located inside of the casino work "so closely together" that PSP are "dependent" on casino security, are missing in the instant action. *See Luck*, 901 F. Supp. 2d at 561 and n.6. Counts I, II, and III are therefore also subject to dismissal as to Jenkins and John Doe Security Officers for lack of state action.

---

[8]      *Burton v. Wilmington Parking Auth.*, 365 U.S. 715 (1961).

For all these reasons, Counts I, II, and III against Jenkins and John Doe Security Officers are dismissed with prejudice.[9]

### E.    The factual allegations do not show a conspiracy under 42 U.S.C. § 1983, and Count IV is dismissed with prejudice.

Count IV under 42 U.S.C. § 1983 alleges that Trooper Rodriguez, Jenkins, and John Doe Security Officers conspired to violate Garcia's Fourth Amendment right to be free from an unreasonable seizure.

Because, for the reasons set forth above, Garcia has failed show that his Fourth Amendment rights were violated, his § 1983 conspiracy claim must be dismissed. *See Sweetman v. Borough of Norristown, Pa.*, 554 F. App'x 86, 90 (3d Cir. 2014) (holding that a "§ 1983 conspiracy claim is viable only if there has been an actual deprivation of a constitutional right"). The claim must also be dismissed because, for the reasons set forth above, the Amended Complaint fails to set forth any detailed factual allegations to show that Trooper Rodriguez, Jenkins, and John Doe Security Officers reached any agreement or meeting of the minds to deprive Garcia of his constitutional rights. *See Chruby v. Kowaleski*, 534 F. App'x 156, 160 (3d Cir. 2013) (affirming dismissal of the § 1983 conspiracy claim because the plaintiff "failed to allege any facts to substantiate an allegation of conspiracy").

---

[9]    Considering the facts of this case, this Court finds that leave to file a second amended complaint would be futile. *See Alston*, 363 F.3d at 235.  Furthermore, Jenkins and Wind Creek argued the same deficiencies in their Motion to Dismiss the original Complaint.  Garcia was on notice when he filed the Amended Complaint that his allegations in Counts I, II, and III were insufficient, but failed to cure the same. *See Krantz*, 305 F.3d at 144-45.
    Although John Doe Security Officers have not moved to dismiss these counts, because the Court finds that an amendment would be futile, it dismisses them *sua sponte*. *See Conley*, 355 U.S. at 45-46 (allowing for *sua sponte* dismissal if "no set of facts" in support of the claim could entitle the plaintiff to relief).

Count IV is therefore dismissed with prejudice[10] as to all Defendants.

**F.     Count V under 42 U.S.C. § 1981 is dismissed with prejudice.**

Count V of the Amended Complaint alleges a violation of 42 U.S.C. § 1981 against Trooper Rodriguez, Jenkins, and John Doe Security Officers for intentional discrimination on the basis of Garcia's race and/or color and/or national origin.  Garcia asserts that these Defendants subjected him to racial profiling and bias-based policing that violated his equal right to recreate (make and enforce a contract) at Wind Creek.  The claim fails for the following reasons.

**1.     Section 1981 does not provide a remedy against state actors.**

"[B]ecause Congress neither explicitly created a remedy against state actors under § 1981(c), nor expressed its intent to overrule *Jett*,[11] . . . 'the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units.'"  *McGovern v. City of Phila.*, 554 F.3d 114, 120-21 (3d Cir. 2009) (quoting *Jett*, 491 U.S. at 733, and affirming the district court's decision to dismiss the § 1981 claim).  *See also Goodall-Gaillard v. N.J. Dep't of Corr.*, 625 F. App'x 123, 128 (3d Cir. 2015) (The "District Court properly noted, § 1981 does not provide a private right of action against state actors.").

Therefore, the § 1981 claim fails as a matter of law as to Trooper Rodriguez.  The claim is also insufficient as to all Defendants for the following reasons.

---

[10]     For the reasons set forth above, leave to amend would be futile, *see Alston*, 363 F.3d at 235, and may denied within the Court's discretion, *see Krantz*, 305 F.3d at 144-45.  The John Doe Security Officers are therefore dismissed *sua sponte*.  *See Conley*, 355 U.S. at 45-46.

[11]     *Jett*, 491 U.S. 701 (holding "that the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units").

## 2.      Garcia fails to sufficiently allege Defendants had an intent to discriminate.

Section 1981 requires a plaintiff to show the defendant had an intent to discriminate on the basis of race.  *See Brown*, 250 F.3d at 797.  Although a plaintiff is not required to prove discriminatory intent at the motion to dismiss stage, the plaintiff must set "forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (internal quotations omitted). Unsupported, conclusory, and speculative allegations are insufficient.  *See Bridgeforth v. Am. Educ. Servs*., 412 F. App'x 433, 435 (3d Cir. 2011) (affirming dismissal of the § 1981 claim).

Here, the Amended Complaint fails to allege sufficient facts to show that any Defendant had an intent to discriminate.  Garcia asserts that Defendants discriminated against him by "clustering" him with other Hispanic males, one of whom stole the victim's wallet; however, the allegations clearly show that Garcia entered the casino of his own accord "mere moments" after the Hispanic males to whom he refers and voluntarily chose to play the slot machines in the same area of the casino as these other Hispanic males.  Defendants had no involvement in any physical clustering of Garcia.  To the extent Garcia suggests Defendants engaged in bias-based policing by clustering / confusing him with the Hispanic male that actually committed the theft, the allegations are insufficient to show any intentional discrimination.  According to the Amended Complaint, a Hispanic male was responsible for the theft.  The fact that PSP filed charges against Garcia, another Hispanic male, is therefore not evidence of any bias or discrimination.  *See Pinkney*, 2020 U.S. Dist. LEXIS 242848, at *35 (concluding that the fact the plaintiff was "black and was arrested is insufficient, standing alone, to show a discriminatory intent or effect" under § 1981 where the complaint acknowledged the attacker was described as a black male).

Further, Jenkins tracked that Hispanic male on surveillance from the location of the theft back to when that male entered the casino and presented identification. That male entered Wind Creek "mere moments before" Garcia.  There are no allegations to show that Jenkins' identification of Garcia, whose driver's license was presented "mere moments" later, was anything more than a mistake.  There are also no allegations to show that Trooper Rodriguez was aware of Jenkins' mistake but nevertheless decided to file charges against Garcia.  Garcia does not allege that any discriminatory statements were made, that Defendants had a history of discriminatory behavior, or any other facts that would support his conclusory allegations of intentional discrimination.  *Cf. Clark v. Reczek*, No. 85-0137, 1985 U.S. Dist. LEXIS 18518, at *2-3 (E.D. Pa. June 26, 1985) (dismissing the § 1981 claim, which arose after the plaintiff's arrest allegedly without probable cause, because "[o]ther than an allegation that he is a black male, plaintiff has alleged no facts that show an intentional or purposeful discrimination against plaintiff based on his race as required by § 1981"), *with Joyce v. City of Sea Isle City*, No. 04-5345 (RBK), 2008 U.S. Dist. LEXIS 56524, at *12-13 (D.N.J. July 23, 2008) (reasoning that a jury could find a discriminatory motive based on evidence that the plaintiff was racially harassed by the defendant- police force and that the defendants made up facts to support the warrant).

Moreover, Garcia alleges that such purported discrimination resulted in his arrest, but does not allege that the discrimination related to one of the activities enumerated in § 1981, specifically his right to make and enforce contracts.[12] *See Bailey v. Harleysville Nat'l Bank &*

---

[12]     Although not alleged, the Court notes that Garcia's claim could not be based on the "full and equal benefit" clause because "only state actors can be sued under the 'full and equal benefit' clause of § 1981." *Brown*, 250 F.3d at 799.  As previously discussed, neither Jenkins nor John Doe Security Officers are state actors and the claim against Trooper Rodriguez fails as a matter of law.  Moreover, there are no allegations to suggest that Trooper Rodriguez had any involvement with the casino's decision to evict Garcia or otherwise prevented him from gambling, which is the alleged activity covered by § 1981.

*Tr. Co.*, No. 04-1541, 2005 U.S. Dist. LEXIS 17527, at *14 (E.D. Pa. Aug. 22, 2005) (explaining

that "the plaintiff must establish . . . the discrimination concerned one or more of the activities

enumerated in [section 1981]").  Garcia's allegation that he has a contractual right to "recreate"

at Wind Creek because he was a Wind Creek Rewards Member is unsupported.  Regardless, no

Defendant ever prevented Garcia from entering the casino and Wind Creek only evicted Garcia

after he had been charged with stealing another patron's wallet.  There are no allegations linking

Garcia's eviction to his race or suggesting that Wind Creek permitted white persons to patronize

the casino despite theft charges.  *Accord Broomes v. Schmidt*, No. 95-4845, 1996 U.S. Dist.

LEXIS 5957, at *9 (E.D. Pa. May 3, 1996) (commenting the plaintiff "alleged that defendant

affirmatively offered to contract with individuals similarly situated to plaintiff and refused

to contract with her on a comparable basis because of her race").  An inference of discrimination

is therefore not supported.

Count V is dismissed with prejudice as to Trooper Rodriguez, Jenkins, and John Doe

Security Officers.[13]

> **G.     Count VI under 42 U.S.C. § 1982 is dismissed with prejudice.**

Count VI of the Amended Complaint alleges a violation of 42 U.S.C. § 1982 against

Trooper Rodriguez, Jenkins, and John Doe Security Officers.  Section 1982 prohibits racial

discrimination in transactions relating to real and personal property.  *See* 42 U.S.C. § 1982.

Garcia claims he was a Wind Creek Rewards member and, as a result of discrimination, was

permanently evicted from the premises.

---

[13]     Defendants raised the same deficiencies in the motions to dismiss the original Complaint.
For this reason and those discussed herein, this Court finds that leave to amend would be futile,
*see Alston*, 363 F.3d at 235, and may be denied in the Court's discretion, *see Krantz*, 305 F.3d at
144-45.  John Doe Security Officers are dismissed *sua sponte*.  *See Conley*, 355 U.S. at 45-46.

### 1.    Section 1982 may not provide a remedy against state actors.

There is support for the Police Defendants' argument that § 1982 does not apply to state actors.  *See Jett,* 491 U.S. 701 (holding that while § 1981 and § 1982 provide extensive rights, they do not provide a remedy against state actors); *Robinson v. Pa. Dep't of Corr.*, No. 19-CV-1689, 2019 U.S. Dist. LEXIS 80915, at *4 (E.D. Pa. May 13, 2019) ("Sections 1981 and 1982 prohibit private acts of race discrimination.").  However, the Third Circuit Court of Appeals has not spoken directly about the applicability of § 1982 to state actors, *accord McGovern*, 554 F.3d at 120-21 (discussing *Jett* in the context of § 1981), and some courts in this district have refused to dismiss § 1982 claims against state actors, *see Gonzalez v. City of Bethlehem*, No. 93-1445, 1993 U.S. Dist. LEXIS 13050, at *6-7 (E.D. Pa. July 12, 1993) ("Numerous courts have found both state actors and private actors liable for their discriminatory conduct under § 1982.").  Regardless, Garcia's allegations are insufficient to state a claim.

### 2.    Garcia fails to sufficiently allege Defendants had an intent to discriminate.

As a threshold matter, Garcia's allegations of a property interest are misplaced. Indeed, the Third Circuit has stated "there is no constitutionally protected property interest in the opportunity to gamble."  *Husain v. Casino Control Comm'n*, 265 F. App'x 130, 134 (3d Cir. 2008).  The claim also fails because, for the reasons set forth in the previous section, Garcia fails to allege sufficient facts showing intentional discrimination on behalf of any Defendant or that any such alleged discrimination related to a property transaction.  Finally, as to Trooper Rodriguez, there are no allegations to show that he had any personal involvement with Wind Creek's decision to evict Garcia from the casino or otherwise interfere with his alleged rights as a Wind Creek Rewards member.

Count VI is dismissed with prejudice as to Trooper Rodriguez, Jenkins, and John Doe Security Officers.[14]

### H. Count VII under 42 U.S.C. § 1985 is dismissed with prejudice.

In Count VII, against Trooper Rodriguez, Jenkins, and John Doe Security Officers, the Amended Complaint alleges a violation of 42 U.S.C. § 1985 for conspiracy to engage in bias-based policing and discriminatory conduct that resulted in Garcia's arrest.  For the reasons set forth above, Garcia has failed to allege any facts from which a conspiratorial agreement can reasonably be inferred or of any discriminatory conduct.  *See D.R. v. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d 1364, 1377 (3d Cir. 1992) (agreeing with the district court that plaintiffs failed to assert any facts from which any type of conspiratorial agreement could be inferred and the mere conclusory allegations were insufficient to state a § 1985 claim); *Groce v. City of Phila. Law Dep't*, No. 21-cv-5132, 2022 U.S. Dist. LEXIS 28550, at *18-19 (E.D. Pa. Feb. 17, 2022) (dismissing the § 1985 claim because the plaintiff's conspiracy allegations are wholly conclusory).  He does not allege, for example, the duration of the conspiracy, any communications between the alleged coconspirators that would show a meeting of the minds, or any acts or statements in furtherance of the conspiracy aside from Jenkins' report and Trooper Rodriguez's criminal complaint, which in themselves are evidence of nothing more than a mistaken identification.  Garcia's entire case is premised solely on the fact that he is Hispanic and was arrested, irrespective of the fact that the person who was responsible for the theft was also Hispanic and was identified by Jenkins based on when he presented identification to enter

---

[14]     Under the facts of this case and given Garcia's failure to cure any deficiencies after the first motions to dismiss raised the same, the Court finds that leave to amend would be futile, *see Alston*, 363 F.3d at 235, and may denied within the Court's discretion, *see Krantz*, 305 F.3d at 144-45.  John Doe Security Officers are dismissed *sua sponte*.  *See Conley*, 355 U.S. at 45-46.

the casino "mere moments" before Garcia.  This is insufficient to state a claim.  *See Alexander v. City of S. Bend*, 433 F.3d 550, 557 (7th Cir. 2006) (concluding the evidence was insufficient to show a § 1985 conspiracy because although the police stopped the plaintiff because of his race, it was not because of any racial animus, but because he fit the general description of the black male they were looking for).

Count VII is dismissed with prejudice.[15]

**I.      Count VIII under 42 U.S.C. § 1983 is dismissed with prejudice.**

Count VIII of the Amended Complaint alleges a violation of 42 U.S.C. § 1983 under the Fourth and Fourteenth Amendments against Trooper Rodriguez, Jenkins, and John Doe Security Officers for discriminatory conduct resulting in Garcia's malicious prosecution, false arrest, and false imprisonment.  As previously explained, Garcia has failed to allege sufficient facts to show that Jenkins and John Doe Security Officers were state actors.  Count VIII against Jenkins and John Doe Security Officers is dismissed with prejudice.[16]

The claim is also subject to dismissal against all Defendants because Garcia has failed to state a discrimination claim or any violation of his rights.  Garcia's allegations of racial profiling and bias-based policing are wholly conclusory allegations.  Garcia, who matched the race and

---

[15]      Defendants also challenged the §1985 conspiracy claim in the motions to dismiss the original Complaint, but the Amended Complaint still does not include the particularized allegations of a conspiracy that are required.  Further leave to amend would be futile, *see Alston*, 363 F.3d at 235, and is denied within the Court's discretion, *see Krantz*, 305 F.3d at 144-45. John Doe Security Officers are dismissed *sua sponte*.  *See Conley*, 355 U.S. at 45-46.

[16]      Although Jenkins and John Doe Security Officers were not named in this count in the original Complaint, Garcia had notice of the deficiencies in the count by Trooper Rodriguez's motion to dismiss and also had notice that his allegations of state action and discrimination as to Jenkins and John Doe Security Officers was insufficient in other counts.  Leave to amend would therefore be futile, *see Alston*, 363 F.3d at 235, and may denied within the Court's discretion, *see Krantz*, 305 F.3d at 144-45.  John Doe Security Officers are dismissed *sua sponte*.  *See Conley*, 355 U.S. at 45-46.

gender of the Hispanic male that stole a casino patron's wallet, entered the casino with identification "mere moments" after that Hispanic male, voluntarily chose to play the slot machines in the same area of the casino as that Hispanic male at the time of the theft, and was simply misidentified by Jenkins in the video, which led to his charges.  The allegations are insufficient to show any intentional discrimination or other violation of Garcia's constitutionally protected civil rights.

Count VIII is dismissed with prejudice as to Trooper Rodriguez, Jenkins, and John Doe Security Officers.[17]

**J.      Count IX under 42 U.S.C. § 1983 is dismissed with prejudice.**

In Count IX, Garcia alleges that Colonel Evanchick is liable under § 1983 for violations of the Fourth and Fourteenth Amendments related to his failure to supervise and train state troopers.  Specifically, Garcia alleges that Evanchick, as Commissioner of PSP, was charged with the duty to supervise and train PSP troopers, but failed to implement annual anti-bias training despite recommendations from an advisory commission formed by the governor.  The allegations are insufficient to state a claim.

There are no allegations that Evanchick had any knowledge of or involvement in any of the events leading to the arrest of Garcia.  *See Bangura v. City of Phila.*, 338 F. App'x 261, 265 (3d Cir. 2009) (concluding that the plaintiff failed to allege any facts to state a claim against the police commissioner demonstrating that the commissioner had personal involvement in the allegedly deficient training); *Gallagher v. Green*, No. 12-3840, 2014 U.S. Dist. LEXIS 140740,

---

[17]      Although Count VIII was not the subject of the motions to dismiss the original Complaint, Garcia was on notice of the deficiencies in this claim based on arguments for the dismissal of other counts.  *See Krantz*, 305 F.3d at 144-45.  Regardless, based on the allegations and events here, the Court finds that leave to amend would be futile.  *See Alston*, 363 F.3d at 235.  John Doe Security Officers are dismissed *sua sponte*.  *See Conley*, 355 U.S. at 45-46.

at *12-16 (E.D. Pa. Oct. 2, 2014) (determining that the complaint did not allege any facts

showing that the PSP commissioner was involved in the detention and search of the plaintiff or

any knowledge that casino patrons would be treated in the manner in which the plaintiff was

treated). There are also no factual allegations to show that the failure to implement annual anti-

bias training, which all troopers received in the academy, created an unreasonable risk of injury.

For example, there is no suggestion that Trooper Rodriguez or other PSP troopers previously

engaged in discriminatory behavior. *See Connick v. Thompson*, 563 U.S. 51, 131 (2011)

(holding that "ordinarily, [a] pattern of similar constitutional violations by untrained employees

is necessary to demonstrate deliberate indifference for purposes of failure to train"). Although

the need for training can be "so obvious, that failure to do so could properly be characterized as

deliberate indifference to constitutional rights" even without a pattern of behavior, the facts do

not illustrate an obvious failure that can be characterized as an absolute disregard for

constitutional rights. Garcia's reliance on the opinion of a politically-formed commission as to

proper training is not sufficient. Liability in single-incident cases depends on "[t]he likelihood

that the situation will recur and the predictability that an officer lacking specific tools to handle

that situation will violate citizens' rights." *Bd. of Cty. Commrs of Bryan Cty., Okl. v. Brown*, 520

U.S. 397, 409 (1997). For the reasons previously set forth, the allegations do not show that

Trooper Rodriguez engaged in any discriminatory behavior. Rather, the allegations show that

after taking the victim's report of a stolen wallet, Trooper Rodriguez spoke with Jenkins, who

stated that he had viewed casino surveillance video and tracked the Hispanic male that stole the

wallet back to when he entered the casino and presented identification. There is nothing to

suggest that Trooper Rodriguez had any reason to question the reliability of Jenkins, who

identified a different Hispanic male that entered the casino "mere moments" before Garcia. The

allegations show nothing more than an honest mistake, which while unfortunate, did not violate

Garcia's rights.  Garcia has therefore also failed to show that the absence of annual anti-bias

training caused harm.  *See Harris*, 489 U.S. at 388 (holding that "the deficiency in training [must

have] actually caused" the constitutional violation); *City of L.A. v. Heller*, 475 U.S. 796, 799

(1986) (holding that the police commission could not be legally responsible for an officer's

actions under a failure-to-train theory if the officer inflicted no constitutional injury on the

plaintiff).

      Count IX is dismissed with prejudice.[18]

### K.     Count X "Respondeat Superior" is dismissed with prejudice.

      Count X of the Amended Complaint, brought against Wind Creek, is titled Respondeat

Superior and alleges that Wind Creek is responsible for its employees' unlawful and/or tortious

and/or negligent actions, which allegedly violated Garcia's Fourth Amendment rights.  However,

there are no specific allegations in this count as to what Wind Creek did or should have done

differently or any specification as to the alleged unlawful and/or tortious and/or negligent actions

of Wind Creek employees.  Garcia also fails to identify any policy, custom, or practice of Wind

Creek, let alone one that caused a constitutional violation.  The claim is entirely conclusory and

must be dismissed.

      Moreover, to the extent the count is brought under § 1983, "liability cannot be predicated

solely on the operation of respondeat superior." *See Rode*, 845 F.2d at 1207.  To the extent the

claim is based on Pennsylvania law, "[r]espondeat superior merely connotes a doctrine of

---

[18]    Garcia had notice of the deficiencies in this count from the previous motion to dismiss, which challenged whether the police Defendants violated Garcia's rights and the personal involvement of Colonel Evanchick, but the Amended Complaint did not cure the deficiencies. Leave to amend would therefore be futile, *see Alston*, 363 F.3d at 235, and may denied within the Court's discretion, *see Krantz*, 305 F.3d at 144-45.

imputation once an underlying theory of liability has been established. It is not a separate cause of action." *Simcox v. Nat'l Rolling Mills, Inc.*, No. 90-1295, 1990 U.S. Dist. LEXIS 6757, at *7 (E.D. Pa. June 4, 1990). Garcia's allegations are insufficient to show that any Wind Creek employee violated his rights; therefore, there is no basis to hold Wind Creek liable.

Count X is dismissed with prejudice.[19]

**L.**      **Count XI for negligence is dismissed with prejudice.**

Count XI of the Amended Complaint alleges that Wind Creek is negligent for failure to train and supervise its employees. Garcia makes numerous allegations of how Wind Creek should have trained its employees differently; however, many of these allegations have no relationship to this case. For example, Garcia alleges Wind Creek "failed to adequately train and/or educate its security personnel to refrain from or avoid verbal abuse of persons being detained," *see* Am. Compl. ¶ 248(j), but there are no allegations of any verbal abuse in this case. Other suggested areas of training are completely unsupported. Garcia alleges, for example, that Wind Creek "failed to adequately train and/or educate its security personnel in the areas of prudence, discretion to consider the emphatic pleas of a patron who claims that he has been unlawfully restrained/detained," *see id.* ¶ 248(o), but not even police officers are expected to take into account a person's emphatic pleas of innocence. *See Lewis*, 2002 U.S. Dist. LEXIS 11256, at *5 ("It is not reasonable to expect police officers to fail to make an arrest simply because the arrestee claims that a warrant was issued in error."). Garcia's suggestion that Wind Creek had a duty to train in each of these areas and breached that duty is conclusory. There are also no

---

[19]      Leave to amend would be futile. *See Alston*, 363 F.3d at 235; *Gorrio v. Francis*, No. 2:19-1297, 2021 U.S. Dist. LEXIS 87570, at *30 (W.D. Pa. May 7, 2021) (dismissing the Respondeat Superior claim "with prejudice because 'Respondeat Superior' is not a viable cause of action").

allegations that would suggest Wind Creek knew of the need for training in each of the suggested areas or of the need to supervise its employees in such respects.

Moreover, the claim fails because Garcia has not shown that his rights were violated.  In the absence of a violation, Garcia cannot show a causal connection between any breach by Wind Creek (failure to train or to supervise[20]) and harm to Garcia.  *See Greenberg v. Caesars Entm't Corp.*, No. 14-4796, 2016 U.S. Dist. LEXIS 36410, at *35-36 (E.D. Pa. Mar. 21, 2016) (finding that the complaint provided no factual allegations to support claims for negligence and negligent supervision under Pennsylvania law, and given probable cause to arrest the plaintiff, there was no evidence of breach or of any actual loss or damages resulted from such a breach).

For all these reasons, Count XI is dismissed with prejudice.[21]

**M.    Count XII for IIED is dismissed with prejudice.**

The Amended Complaint alleges in Count XII that Wind Creek, Jenkins, and John Doe Security Officers committed IIED for foregoing review of its own surveillance and causing Garcia to be maliciously prosecuted, falsely arrested, and falsely imprisoned.

As has been repeatedly explained, this is an unfortunate case of mistaken identity.  There are absolutely no allegations that would suggest any Defendant's behavior was "so outrageous" and "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."  *Cf. Eck v. Oley Valley Sch. Dist.*, No. 19-1873, 2019 U.S. Dist. LEXIS 137743, at *20-21 (E.D. Pa. Aug. 15, 2019) (giving examples

---

[20]    The failure to supervise claim also fails because Wind Creek must have failed to prevent an intentional harm by its employee "acting *outside* the scope of his employment."  But the Amended Complaint repeatedly alleges that Jenkins and Casino Security were "acting *within* the course and scope of their employment as agents and/or employees of Wind Creek Casino."  *See* Am. Compl. ¶¶ 165, 174, 176, 182, 184, 261.

[21]    In the absence of a sufficiently pled violation causing harm/injury to Garcia, leave to amend would be futile.  *See Alston*, 363 F.3d at 235.

of such conduct as "mishandling of a corpse, reckless diagnosis of a fatal disease, and having sexual contact with young children"), *with Villarosa*, 2016 U.S. Dist. LEXIS 98499, at *33-34 (dismissing the IIED claim because "being prosecuted with probable cause cannot be considered extreme and outrageous conduct"); *Suero v. Watkins*, No. 5:13-cv-7181, 2016 U.S. Dist. LEXIS 19176, at *34-35 (E.D. Pa. Feb. 12, 2016) (dismissing the IIED claim with prejudice where the plaintiff was mistakenly arrested on a warrant issued for his brother); *Whiting v. Bonazza*, No. 09-1113, 2011 U.S. Dist. LEXIS 13194, at *42-43 (W.D. Pa. Feb. 10, 2011) (dismissing the IIED claim because the allegations, that the plaintiff was arrested without probable cause and with excessive force, forced to ride in the back seat of the police car that drove at a high rate of speed, and harassed for refusing to plead guilty did not go beyond all possible bounds of decency). *See also Hargraves v. City of Phila.*, No. 05-CV-4759, 2007 U.S. Dist. LEXIS 31951, at *10 (E.D. Pa. Apr. 26, 2007) ("Courts in this District have repeatedly found that racial discrimination alone does not meet the 'extreme and outrageous conduct' standard necessary to state a claim for intentional infliction of emotional distress.").

The IIED claim must also be dismissed because Garcia does not allege that he suffered any physical harm. *See Reedy v. Evanson*, 615 F.3d 197, 231 (3d Cir. 2010) (holding that to recover on an IIED claim, the "plaintiff must suffer some type of resulting physical harm due to the defendant's outrageous conduct." (citing *Swisher v. Pitz*, 868 A.2d 1228, 1230 (Pa. Super. 2005)). To the contrary, the harm alleged is "fright, horror and shock," "emotional trauma and suffering," and "damage to Plaintiff's reputation." *See* Am. Comp. ¶ 268. This is insufficient to state a claim.

Count XII is dismissed without prejudice as to Jenkins, Wind Creek, and John Doe Security Officers.[22]

**N.      Counts XIII, XIV, and XV for false arrest, false imprisonment, and malicious prosecution under Pennsylvania law are dismissed with prejudice.**

Counts XIII, XIV, and XV of Garcia's Amended Complaint allege state law claims against Trooper Rodriguez, Jenkins, and John Doe Security Officers for malicious prosecution, false arrest, and false imprisonment.  The absence of probable cause is an element in all three causes of action.  For the reasons discussed regarding Counts I, II, and III, which are the federal counterparts to the state law claims, there was probable cause for the theft charges to be filed against Garcia and independent probable cause for his arrest on the bench warrant.

The false arrest and false imprisonment claims also fail because none of the Defendants arrested or imprisoned Garcia.  Rather, he was arrested by the Bethlehem Police Department on the bench warrant and he remained in custody for three days solely on the bench warrant.  The malicious prosecution claim also fails because none of the Defendants knowingly provided false or incomplete information to continue the prosecution.

Counts XIII, XIV, and XV are dismissed with prejudice.[23]

---

[22]      In the first motion to dismiss, the Casino Defendants presented a nearly identical argument for dismissing the IIED claim as in the current motion.  Garcia was therefore on notice of the deficiencies, but failed to correct them in the Amended Complaint.  Leave to amend again would be futile, *see Alston*, 363 F.3d at 235, and may denied within the Court's discretion, *see Krantz*, 305 F.3d at 144-45.  The John Doe Security Officers are therefore dismissed *sua sponte*. *See Conley*, 355 U.S. at 45-46.

[23]      Although the state law claims were not raised in the original Complaint, the allegations therein are based on the same facts as Counts I, II, and III.  The earlier motions to dismiss did challenge the lack of probable cause in these counts.  Accordingly, Garcia had notice that his allegations failed to show a lack of probable cause and further leave to amend would be futile, *see Alston*, 363 F.3d at 235, and may denied within the Court's discretion, *see Krantz*, 305 F.3d at 144-45.  The John Doe Security Officers are therefore dismissed *sua sponte*.  *See Conley*, 355 U.S. at 45-46.

**O.      Count XVI for lost wages is dismissed with prejudice.**

Count XVI brings a claim against all Defendants for lost wages.  Defendants have not moved to dismiss this claim; however, because lost wages represents a potential remedy rather than a separate cause of action, it may not be asserted in a separate count.  Moreover, having dismissed all other claims, there is no available avenue for damages.  The lost wages claim is dismissed with prejudice.

**V.      CONCLUSION**

The Police Defendants' Motion to Dismiss is granted and all claims against Trooper Rodriguez and Colonel Evanchick are dismissed with prejudice.  As to these Defendants, the Eleventh Amendment bars the official capacity claims in Counts I through IX.  The individual capacity claims against these Defendants in Counts I, II, III, and IV are dismissed because Garcia failed to sufficiently allege a violation of his Fourth Amendment rights.  Count V is dismissed as to Trooper Rodriguez because a state actor may not be held liable under § 1981.  Garcia's failure to show Trooper Rodriguez's personal involvement with any interference to his alleged rights as a Wind Creek Rewards member requires dismissal of Count VI against him.  Garcia also fails to sufficiently allege a conspiracy or any race discrimination, which requires dismissal of Counts VII and VIII against Trooper Rodriguez.  In the absence of any violation of Garcia's rights, Count IX must be dismissed as to Colonel Evanchick.  Counts XIII, XIV, and XV are dismissed as to Trooper Rodriguez based on sovereign immunity and would fail regardless for the same reasons as the Fourth Amendment claim.  Count XVI, which presents only a type of damages, is also dismissed.

The Casino Defendants' Motion to Dismiss is also granted and the claims against Wind Creek and Jenkins are dismissed with prejudice.  The Court *sua sponte* dismisses the John Doe

Security Officers because there is an insufficient basis for the claims.  Counts I, II, III, and IV are dismissed as to the Casino Defendants because Garcia fails to sufficiently allege a violation of his Fourth Amendment rights and, also, because they are not state actors.  Count V and VI are dismissed because Garcia's allegations are insufficient to show that he experienced intentional discrimination related to his alleged rights as a Wind Creek Rewards member.  Garcia also fails to sufficiently allege a conspiracy or any race discrimination, which requires dismissal of Counts VII and VIII.  In the absence of any violation of Garcia's rights, Counts X and XI against Wind Creek for the acts of its employees or for failing to train/supervise the same are dismissed. Count XII is dismissed because the alleged behavior does not rise to the level of outrageousness needed to state an IIED claim.  Counts XIII, XIV, and XV are dismissed for the same reasons as the Fourth Amendment claim.  Finally, Count XVI, for lost wages, is dismissed.

A separate order follows.

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge